**LAW OFFICES OF YONI WEINBERG, P.C.**
Yoni Weinberg, Esq. (306357)
11601 Wilshire Blvd., #500
Los Angeles, CA 90025
Telephone: (818) 697-1079
Facsimile: (855) 682-4983
E-mail: yoni@yoniweinberg.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PSARA ENERGY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> SPACE SHIPPING LTD., GEDEN HOLDINGS LTD.; ADVANTAGE SPRING SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; TUGRUL TOKGOZ; MEHMET MAT; FLEETSCAPE SPRING, LLC; FLEETSCAPE ADVANTAGE HOLDINGS, LLC; <br><br> Defendants. | Case No. 20-cv-4102 <br><br><br> **PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT** |

Plaintiff PSARA ENERGY, LTD., by and through undersigned counsel, for its Verified Complaint against Defendants: SPACE SHIPPING, LTD.; GEDEN HOLDINGS, LTD.; ADVANTAGE SPRING SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMAEHMET-WILLIAMS; TUĞRUL TOKGÖZ; MEHMET MAT; FLEETSCAPE SPRING, LLC; FLEETSCAPE ADVANTAGE HOLDINGS, LLC alleges and

1

pleads as follows:

## I.  <u>JURISDICTION, VENUE, AND PARTIES</u>

1.      This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract, *i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel.  This case also falls under this court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provisions of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims, and Asset Forfeiture Actions (hereinafter "Supplemental Rule B") and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.      At all times material hereto Plaintiff, PSARA ENERGY, LTD. (hereinafter "PSARA" or "Plaintiff"), was a corporation organized under the laws of the Republic of the Marshall Islands and the registered owner of the Motor Tanker CV STEALTH (hereinafter "CV STEALTH" or "Vessel") - now demolished by ship-breakers - a crude oil tanker vessel registered in Malta.

3.      At all times material hereto Defendant, SPACE SHIPPING, LTD. (hereinafter "SPACE"), was a foreign company organized under the laws of Malta and the bareboat charterer of the M/T CV STEALTH under a bareboat charter party contract dated February 23, 2010 ("the bareboat charter").  A copy of the bareboat charter and addenda thereto are attached to this Original Verified Complaint as **EXHIBIT 1**.[1]  Though SPACE is incorporated in Malta, the business of SPACE was actually carried on entirely by Defendant GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES (hereinafter "GEDEN LINES") from the office facilities of GEDEN LINES at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

---

[1] All EXHIBITS to this complaint are authenticated by the Attorney Declaration of George A. Gaitas, filed herewith, and are referred to in the consecutive numerical order as in the said declaration.

4.      At all times material hereto GEDEN HOLDINGS, LTD. (hereinafter "GEDEN HOLDINGS"), was and is a foreign company organized under the laws of Malta with its operating office at the office facilities of GEDEN LINES at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey. Though GEDEN HOLDINGS is incorporated in Malta, its business is actually carried on entirely by GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

5.      At all times material hereto Defendant ADVANTAGE SPRING SHIPPING, LLC (hereinafter "ADVANTAGE SPRING SHIPPING"), was and is a limited liability company organized under the laws of the Republic of the Marshall Islands, and the former registered owner and current bareboat charterer of the Motor Tanker ADVANTAGE SPRING, a tanker vessel registered in the Marshall Islands, with IMO No.  9466582 and international call sign V7LO4. Though ADVANTAGE SPRING SHIPPING is incorporated in the Marshall Islands, its business is actually carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Turkey.

6.      At all times material hereto Defendant GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES, was and is a foreign corporate entity organized under the laws of Turkey with its principal place of business located at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Tukey.

7.      At all times material hereto ADVANTAGE TANKERS, LLC (hereinafter "ADVANTAGE TANKERS"), was a foreign limited liability company organized under the laws of the Marshall Islands.  ADVANTAGE TANKERS is a holding company that owns 100% of Defendant ADVANTAGE SPRING SHIPPING. Though ADVANTAGE TANKERS is incorporated in the Marshall Islands, its business is actually carried on entirely by Defendant GEDEN LINES from its office facilities at Buyukdere Cad., Yapi Kredi Plaza, A Blok K:12 34330

Levent-Istanbul-Turkey.

8.   At all times material hereto MEHMET EMIN KARAMEHMET (hereinafter "EMIN KARAMEHMET"), is an individual person and a citizen and resident of the Republic of Turkey and, respectively, through a Panamanian corporation that he entirely controls - Buselten Finance, S.A - is the 100% shareholder of GEDEN HOLDINGS and SPACE SHIPPING. Through another Turkish business entity he controls - Cukurova Holdings - he is 100% shareholder of Defendant GEDEN LINES.

9.   At all times material hereto, Tuğrul Tokgöz (hereinafter "TOKGÖZ") is an individual person and a citizen of the Republic of Turkey and a resident of Turkey. TOKGÖZ is the Chief Executive Officer of ADVANTAGE SPRING SHIPPING; ADVANTAGE TANKERS; and a director of GEDEN HOLDINGS and GEDEN LINES and, through the intermediary holding companies FORWARD HOLDINGS, LLC and ADVANTAGE HOLDINGS, LLC, is 15% controlling shareholder of ADVANTAGE TANKERS.

10.  At all times material hereto, GULSUN NAZLI KARAMEHMET–WILLIAMS (hereinafter "KARAMEHMET WILLIAMS") is an individual person and a dual citizen of the Republic of Turkey and the Swiss Confederation, and a resident of the United Kingdom. KARAMEHMET WILLIAMS is the adult daughter and only child of EMIN KARAMEHMET, and through the intermediary holding companies FORWARD HOLDINGS, LLC and ADVANTAGE HOLDINGS, LLC, she is the 85% controlling shareholder of ADVANTAGE TANKERS.

11.  At all times material hereto, defendant FLEETSCAPE SPRING, LLC (hereinafter "FLEETSCAPE SPRING") is a limited liability company organized in the Marshall Islands on or about October 11, 2018, and since March 8, 2019, has been the registered owner of the motor tanker ADVANTAGE SPRING.

12.     At all times material hereto Defendant FLEETSCAPE ADVANTAGE HOLDINGS, LLC (hereinafter "FLEETSCAPE ADVANTAGE") is a limited liability company organized in the Marshall Islands where it came into existence on October 11, 2018 and is the sole limited liability company member of ADVANTAGE SPRING SHIPPING.

13.     The jurisdiction of this Court is founded on the presence within the District of property of the Defendants, to wit: the M/T ADVANTAGE SPRING that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions as pled more fully in Section VI of this Verified Complaint.

## II.     THE UNDERLYING SUBSTANTIVE CLAIMS

14.     Under the bareboat charter party dated February 23, 2010 and addenda thereto, Plaintiff chartered its vessel CV STEALTH for a "a term of 5 years straight period +/- 30 days in Charterer's option plus 1 or 2 years optional year(s) declaration by Charterers 5 months prior end of the firm period" to "Geden Holdings Limited,[2] Malta or nominee always guaranteed by Geden Line."  *See* **EXHIBIT 1**, box 21.  The vessel was delivered to the service of the nominee of GEDEN HOLDINGS, *i.e.* SPACE, and to GEDEN LINES, and was used and operated for profit by them as part of GEDEN HOLDINGS' non-owned, chartered-in fleet.

15.     By subsequent addendum to the bareboat charter, GEDEN HOLDINGS became the performance guarantor of SPACE.  *See* **EXHIBIT 1**.  *See* also Addendum dated June 2, 2010, and performance guarantee of GEDEN HOLDINGS, dated March 4, 2010 hereto attached as **EXHIBIT 2.**

16.     Under Part II Clause 10 of the bareboat charter, SPACE was obligated to maintain

---

[2] Geden Holdings was a holding company incorporated in Malta. It held 100% of the shares of SPACE and 100% of the shares of several one-ship-companies as is more specifically pled in this Original Verified Complaint.

the vessel in a good state of repair, with all of her class certificates up to date.  *See* **EXHIBIT 1.**

17.     Under Part II Clause 15 of the bareboat charter, SPACE was obligated to redeliver the vessel at the end of the bareboat charter party term "…in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted."  Moreover, the same clause provides that "…upon redelivery shall have her survey cycles up to date and trading and class certificates valid for at least the number of months agreed…". *Id.*

18.     Under Part II Clause 17 of the bareboat charter, SPACE was obligated "to indemnify the Owners against any loss, damage or expense incurred by the Owners arising out of or in relation to the operation of the vessel by the Charterers..." and under Rider Clause 9, SPACE, as charterer undertook to indemnify the owners of the vessel "against, all costs charges, expenses, claims proceedings (whether civil or criminal), liabilities, losses, penalties, duties and fees…and taxes thereon suffered or incurred by the Owners arising directly or indirectly in any manner out of the possession, management, control, chartering, sub-chartering…use, operation, return, redelivery…of the Vessel…and regardless of when the same shall arise". *Id.*

19.     Pursuant to clause 7 of a Settlement Agreement dated 8 December 2016, and entered into between Plaintiff as Owners, in settlement of interim disputes regarding an outstanding arbitration award in favor of Owners for unpaid charter hire; and Defendant SPACE as Charterers, and GEDEN HOLDINGS as performance guarantors, the hire amount payable under the Charterparty was amended to USD 9,875 per day from 1 January 2017 onwards.

20.      Plaintiff delivered the vessel into the bareboat chartered service and rendered the contractual performance required of it.  However, Defendant SPACE has failed and refused to perform several of its obligations under the bareboat charter party contract and was in breach thereof as is further pled below.

21.     On April 10, 2014, SPACE time chartered the Vessel to ST Shipping & Transport Pte. Ltd. (hereinafter "ST"), a Singapore business entity, for a term of approximately twelve months. ST operated out of its Stamford, Connecticut branch office.  ST sub-chartered the vessel on a voyage charter party dated September 4, 2014 to lift a cargo of Venezuelan crude oil from Puerto La Cruz for discharge at a terminal in the U.S.A.

22.     ST directed the Vessel to Puerto la Cruz, Venezuela to load her cargo.  There, after arriving, and tendering her notice of readiness to load, she was boarded by local police and prosecutorial authorities on or about September 13, 2014 and was detained by them on suspicion of attempting to carry a stolen cargo of crude oil.

23.     At Puerto La Cruz, the CV STEALTH was further detained by court order, and at the request of the prosecutorial authorities, for a period exceeding three years, which was beyond the agreed bareboat charter party contractual redelivery date.

24.     Under the terms of the bareboat charter, the latest date for the redelivery of the CV STEALTH to Plaintiff was on June 22, 2015.  However, SPACE failed to redeliver her to Plaintiff - her lawful owner - and at the same time was failing to pay hire as the bareboat charter requires.

25.     Owners commenced London maritime arbitration to enforce their claims against SPACE for unpaid hires. The arbitration tribunal, with an award dated Nov. 1, 2016 ruled in favor of Plaintiff, requiring SPACE to keep paying monthly bareboat charter hire until the Vessel was released and was actually redelivered to Plaintiff.

26.     On October 3, 2017, SPACE claimed the Venezuelan authorities' detention of the CV STEALTH had terminated and gave PSARA notice of its intent to redeliver the Vessel within approximately 30 days. However, the Vessel was incapable of being redelivered as she was out of class with her attending classification society the American Bureau of Shipping. Moreover, the Vessel was so extensively damaged due to SPACE's failure to provide maintenance throughout her

3 years long detention that she was incapable of sailing under her own power and was in need of extensive repairs.

27. Ultimately, SPACE arranged to have the vessel towed from Puerto La Cruz, Venezuela to Port of Spain, Trinidad where she was redelivered and taken over by Plaintiff's personnel on or about March 24, 2018 out of class, and in the same heavily damaged condition as she was before she was towed by SPACE to Port of Spain.

*i.* **Breach of Charterers' Maintenance/Redelivery Obligations**

28. Pursuant to Clause 10(a) of Part II the bareboat charter, SPACE was under an obligation to keep the Vessel well maintained and in a good state of repair throughout the duration of the charter. *See* **EXHIBIT 1.** SPACE was also under an obligation to keep the Vessel's Class fully up to date and to maintain all other necessary certificates in full force at all times.

29. Further, pursuant to Clause 15 of Part II of the bareboat charter, SPACE was obliged to: redeliver the Vessel to Owners "in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted", with her survey cycles up to date and trading and class certificates valid. *Id.* Box 17 of part I of the bareboat charter required the Vessel to have passed her Special Survey dry docking without extensions. *Id.*

30. In breach of Clauses 10(a) and/or 15 of Part II and/or Box 17 of the bareboat charter, SPACE did not undertake any (or any non-negligible) maintenance on the Vessel, which since September 2014, failed to pass her Special Survey dry docking, and instead redelivered the Vessel in a severely damaged condition on 24 March 2018 with all Class and statutory certificates expired. *Id.*

31. The work needed in order for the Vessel to be restored to the required redelivery condition; to pass Special Survey; and to have all Class and statutory certificates reinstated, includes the following non-exhaustive list of works:

(i)      complete overhauling and/or repair and/or replacement of all machinery and equipment and extensive renewals of major and miscellaneous spares;

(ii)     extensive piping system renewals, overhauling of valves, sensors and gauges;

(iii)    full hull and deck blasting and extensive steel renewals and recoating;

(iv)    extensive renewal of outfitting, supports, ladders;

(v)     extensive steel renewals in cargo and ballast tanks;

(vi)    re-tubing and/or replacement of auxiliary boilers and exhaust gas boilers;

(vii)   overhauling and renewal of cargo system, cargo piping, cargo monitoring and cargo equipment and machinery;

(viii)  steam lines and heating coils renewals;

(ix)    deck machinery overhauling and renewal including cranes and their hydraulic systems;

(x)     electrical, electronics and automation system service, repair and renewal;

(xi)    extensive rewiring;

(xii)   bridge navigation and communication equipment service and renewals;

(xiii)  overhauling, repairs and renewal of steering and shafting system;

(xiv)  overhauling, service, repair and renewals of all safety equipment, firefighting systems and appliances including lifesaving equipment; and

(xv)   fitting of ballast water treatment system.

32.   As a consequence of the extensive damage to the Vessel, it would have cost considerably more than the repaired market value of the vessel to tow her to repair facilities and repair her. Plaintiff, accordingly, sold the vessel for demolition (scrap) for USD 3,500,000

(THREE MILLION FIVE HUNDERD THOUSAND DOLLARS).   Plaintiff, the Owner of the Vessel, has submitted in the London Maritime arbitration a claim for damages in an amount equivalent to the (repaired) market value of the Vessel, which is USD 18,000,000.00 (EIGHTEEN MILLION DOLLARS).

### ii.      *Unpaid Bareboat Charter Hire*

33.     SPACE has failed to pay outstanding hire that was earned during the month of February 2018, for which PSARA has obtained an award from the London maritime arbitration tribunal - that has jurisdiction over the merits of the case - in the amount of USD 276,500. In addition to this amount, the arbitration tribunal has awarded PSARA Pounds Sterling 4,550.00 (USD 5,562.50) by way of arbitration costs for this particular reference relating to the February 2018 charter hire, with annual interests on each of the two amounts at the rate of 5%, compounded semiannually.

34.     SPACE has also failed to pay Plaintiff the charter hire for the month of March 2018 in the amount of USD 233,708.33, which Plaintiff is claiming in the ongoing London maritime arbitration.

### III.     <u>UNDERLYING PROCEEDINGS ON THE MERITS</u>

35.     Box 35 and clause 30(a) of the bareboat charter party provide for arbitration of all disputes arising out of the contract in London.  *See* **EXHIBIT 1.**

36.     Plaintiff is claiming in London maritime arbitration the amount of USD 18,000,000.00 (EIGHTEEN MILLION DOLLARS) as the repaired value of the vessel; and the unpaid hire for the month of March 2018 in the amount of USD 233,708.33 (TWO HUNDRED THIRTY-THREE THOUSAND SEVEN HUNDRED AND EIGHT DOLLARS AND THIRTY-THREE CENTS), together with interest and costs.

37.     Plaintiff is also owed charter hire for the month of February 2018 under the London

maritime arbitration award in this regard, together with arbitration costs in the total amount of USD 283,015.50 (TWO HUNDRED EIGHTY-THREE THOUSAND FIFTEEN DOLLARS AND FIFT CENTS).

38.    Plaintiff estimates its legal costs that will be incurred to pursue these claims in London maritime arbitration proceedings will be approximately USD 300,000.00 (THREE HUNDRED THOUSAND DOLLADS). As it is customary in London arbitration, legal costs, including lawyers' fees, are awarded to the prevailing party.

39.    This action is an ancillary proceeding, brought to obtain jurisdiction over Defendant Charterer and its performance guarantor GEDEN HOLDINGS to obtain security for Plaintiff's claims in the London maritime arbitration proceedings[3], and to ensure that the award Plaintiff expects to recover, against its obligors SPACE and GEDEN will be collectible.

### IV.    THE FIRST RESTRUCTURING OF OWNERSHIP IDENTITY OF THE CORPORATE AND INDIVIDUAL DEFENDANTS AND THEIR INTERRELATIONSHIPS

40.    In June of 2015, when SPACE had fallen substantially in arrears in its bareboat charter hire payment obligations, and the contractual redelivery of the Vessel to Plaintiff was approaching, Plaintiff became concerned and made enquiries regarding the status of the CV STEALTH and the other crude oil tanker vessels that were being operated by Defendant GEDEN HOLDINGS.   Plaintiff was astounded to discover the entire "owned" – as opposed to the "chartered-in" fleet – of GEDEN HOLDINGS had been surreptitiously transferred to new owners, as shown in **TABLE I** below:

---

[3] Plaintiff in Maritime attachment proceedings in the United States District court for the Eastern District of Texas, in the case styled *Psara Energy Limited v. Space Shipping, Ltd. et al*.  No, 18-cv-00178, obtained substitute security in the form of surety bonds in the amount of USD 4,800,000 (FOUR MILLION EIGHT HUNDRED THOUSAND DOLLARS) which, however, was set before the scrap sale of the vessel was actually made.  The security obtained does not cover the full amount of Plaintiff's claim in arbitration.  In the meantime, ownership of all of the vessels held by Advantage Tankers, LLC was transferred to a new holding company Fleetscape Advantage Holdings, LLC.

**TABLE I**

| VSL FORMER NAME | FORMER OWNER | VSL NEW NAME | NEW OWNER |
|---|---|---|---|
| PROFIT | Profit Shipping, Ltd. | ADVANTAGE SOLAR | Advantage Solar Shipping, LLC |
| TARGET | Target Shipping, Ltd. | ADVANTAGE ARROW | Advantage Arrow Shipping, LLC |
| TRUE | True Shipping, Ltd. | ADVANTAGE AVENUE | Advantage Avenue Shipping, LLC |
| BLUE | Blue Shipping, Ltd. | ADVANTAGE SKY | Advantage Sky Shipping, LLC |
| PINK | Pink Shipping, Ltd. | ADVANTAGE SUMMER | Advantage Summer Shipping, LLC |
| BLANK | Blank Shipping, Ltd. | ADVANTAGE START | Advantage Start Shipping, LLC |
| REEF | Reef Shipping, Ltd. | ADVANTAGE SPRING | Advantage Spring Shipping, LLC |
| BRAVO | Bravo Shipping, Ltd. | ADVANTAGE ATOM | Advantage Atom Shipping, LLC |
| POWER | Barbaros Maritime, Ltd. | ADVANTAGE ANTHEM | Advantage Anthem Shipping, Ltd. |
| VALUE | Value Shipping, Ltd. | ADVANTAGE AWARD | Advantage Award Shipping, LLC |
| ROYAL | Prima Shipping, Ltd. | ADVANTAGE SUN | Advantage Sun Shipping, Ltd. |

41.     Not only had the said vessels been transferred to new corporate owners, but they had been renamed and reflagged from the Maltese shipping register to that of the Marshall Islands.

42.     Investigation into the ship register/ship mortgage record of the Republic of the Marshall Islands revealed that all of the above 11 crude oil tanker vessels which were formerly owned by one-ship-companies, and in turn, 100% controlled by shareholder GEDEN HOLDINGS, had been transferred in approximately the first 5 months of 2015 - without any notice to or the knowledge of Plaintiff - to new one-ship-companies, 100% controlled by a new holding company - ADVANTAGE TANKERS.  ADVANTAGE TANKERS is ultimately 85% controlled by the daughter and only child of Defendant EMIN KARAMEHMET, *i.e.* Defendant KARAMEHMET WILLIAMS and 15% by Defendant TOKGÖZ.  The said ship mortgage records contain a

diagrammatic representation of the said new ownership structure which is hereto attached as **EXHIBIT 3**.

43.　　The transfer to a third party of all of its trading assets by Plaintiff's performance guarantor GEDEN was extremely concerning to Plaintiff.　Defendant SPACE did not own any tangible assets, and Plaintiff had relied on the representation of GEDEN that it owned 100% of the vessels shown in TABLE I above, and by reason of this it was a reliable performance guarantor.

*i.*　　***Successor Corporation Relationship***

44.　　The grouping of the following corporate entities: ADVANTAGE TANKERS, its subsidiary ADVANTAGE SPRING SHIPPING, and 10 other one-ship-company entities that are subsidiaries of ADVANTAGE TANKERS[4] (said grouping hereinafter collectively referred to for the sake of brevity as "Advantage-Group") comprise, respectively, successor corporate business entities of the grouping formerly constituted of: GEDEN  HOLDINGS; REEF SHIPPING, LTD., GEDEN LINES; SPACE SHIPPING; and 10 other former one-ship-companies[5], as shown above in TABLE I  (hereinafter collectively referred to, for the sake of brevity, as "Geden-Group").

45.　　As particularized in the following paragraphs, the Advantage-Group corporate entities are successor corporations of the Geden-Group corporate entities in that: a) the former acquired and are respectively in possession of the trading assets of the latter[6] (hereinafter "the 11 Tanker Vessels"), as illustrated in the foregoing Table I;  b) they occupy and carry on business from

---

[4] Foreign limited liability companies: Advantage Solar Shipping, LLC; Advantage Sky Shipping, LLC; Advantage Start Shipping, LLC; Advantage Arrow Shipping, LLC; Advantage Avenue Shipping, LLC; Advantage Award Shipping, LLC; Advantage Atom Shipping, LLC; Advantage Summer Shipping, LLC; Advantage Spring Shipping, LLC; Advantage Sun Shipping, LLC

[5] Foreign limited liability companies: Profit Shipping, Ltd.; Blue Shipping, Ltd.; Blank Shipping, Ltd.; Target Shipping, Ltd.; True Shipping Ltd.; Value Shipping, Ltd; Bravo Shipping, Ltd; Barbaros Maritime, Ltd; Pink Shipping, Ltd; Reef Shipping Ltd.; Prima Shipping, Ltd.

[6] The said assets are the tankers: PROFIT now renamed ADVANTAGE SOLAR; BLUE now renamed ADVANTAGE SKY; BLANK now renamed ADVANTAGE START; TARGET now renamed ADVANTAGE ARROW; TRUE now renamed ADVANTAGE  AVENUE;  VALUE  now  renamed  ADVANATGE  AWARD;  BRAVO  now  renamed ADVANTAGE ATOM; POWER now renamed ADVANTAGE ANTHEM; PINK now renamed ADVANTAGE SUMMER; REEF now renamed ADVANTAGE SPRING; ROYAL now renamed ADVANATGE SUN.

the same business premises, *i.e.* Buyukdere Cad., Yapi  Kredi Plaza, A Blok K:12 34330 Levent-Istanbul-Tukey;  c) they transact their business by and through identical personnel as the latter;  d) they share common officers and directors with the latter;  e) they have taken over and are servicing the same customers as were being served by the latter;  f) they have had virtually the same financing banks financing their business as the latter;   g) they have assumed numerous of the latter's obligations, including long term charter parties with Shell Western Supply and Trading, Ltd.;  h) there is continuity of shareholders (GEDEN HOLDINGS has represented it retains ultimate control over the corporate entities of the Advantage-Group that owned the 11 Tanker Vessels); i) the controlling shareholder of GEDEN HOLDINGS and GEDEN LINES - EMIN KARAMEHMET – continues to maintain a substantial financial interest in the Advantage-Group companies, as GEDEN LINES (which is 100% controlled by him) manages and operates all of its 11 Tanker Vessels formerly held by the one-ship-companies of the Geden-Group; j) GEDEN LINES exercises complete control over all of the corporate entities of the Advantage-Group as its administrative, operations, technical, commercial, and safety manager;  k) following the purported sale of the 11 Tanker Vessels, GEDEN HOLDINGS formally ceased its ordinary business operations, through its subsidiary one ship companies and wound down its remaining business of operating chartered-in tonnage.

46.      As part of a business reorganization arrangement conceived and implemented by the management of the Geden-Group, in concert with EMIN KARAMEHMET, KARAMEHMET WILLIAMS, TOKGÖZ, and MAT, the one-ship-companies of the Geden-Group purportedly "sold" the respective vessels each one of them had owned to its homologous Advantage-Group one-ship-company, with these transactions occurring approximately during the first and second quarter of 2015.  The said purported "sales", were in actual fact part of a "reorganization" and makeover of the ownership structure, whereby newly minted corporate one-ship-companies of the

Advantage-Group would take over ownership of the assets with the control, however, remaining with GEDEN HOLDINGS. *See* "Consent Letter" agreement dated February 6, 2015 between GEDEN HOLDINGS and Shell Western Supply and Trading, Ltd. hereto attached as **EXHIBIT 4** at Bates No. D01248, at ¶ 2 thereof, wherein GEDEN HOLDINGS assures Shell Western Supply and Trading, Ltd that each of the Advantage-Group one-ship-companies would be "wholly owned by the Shareholder", *i.e.* GEDEN HOLDINGS.

47.     Notwithstanding the transfer of ownership of the respective vessels from the Geden-Group one-ship-companies, to the respective Advantage-Group one-ship-companies, all of the time charter parties under which the said respective vessels, before and at the time of the transfer, were being employed by Shell Western Supply and Trading, Ltd. continued seamlessly with the Advantage-Group one-ship-companies. This was accomplished under contractual arrangements with Shell Western, worked out by GEDEN HOLDINGS / GEDEN LINES, KARAMEHMET-WILLIAMS, TOKGÖZ, and MAT whereby the said charter parties, several of which had significant unexpired terms, were renewed for a 5-year period, at rates and on such other terms as were agreed on behalf of the Advantage-Group one-ship-companies by GEDEN HOLDINGS. **EXHIBIT 4** at D01248 - D01250.

48.     Notwithstanding the purported transfer of ownership of the respective vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, GEDEN HOLDINGS represented and warranted to the Geden-Group's sole customer - Shell Western Supply and Trading, Ltd - that it retained ownership over the Advantage-Group one-ship-companies. **EXHIBIT 4** at Bates No. D01248, at ¶ 2 thereof. Said representations and warranties regarding the ultimate ownership and control of the Advantage-Group one-ship-companies by GEDEN HOLDINGS were accepted by Shell Western Supply and Trading, Ltd in agreeing to enter into new time charters with the said Advantage-Group one-ship-companies. *See* relevant extract

from the deposition of the General Manager of Shell Western Supply & Trading, Ltd. specifically identifying GEDEN HOLDINGS as the "shareholder" retaining the ultimate control over the Advantage-Group one-ship-companies, hereto attached as **EXHIBIT 5.**

49.     Notwithstanding the transfer of ownership of the respective vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, all day-to-day shore-side operations of the 11 Tanker Vessels continue to be performed by and through GEDEN LINES, including safety management, security management, crewing, victualing, supplying, technical monitoring and supervision, drydocking, repairs, accounting, insuring, and generally every function necessary in order to keep and maintain the said vessels trading as merchant vessels in the same manner and to the same extent that GEDEN LINES had performed before the said transfer of ownership of the 11 Tanker Vessels.  *See e.g.* Ship Management Agreement for the M/T ADVANTAGE SPRING dated April 30, 2015 signed by Defendant MAT, hereto attached as **EXHIBIT 6** at pp. GH 03229-GH 03233;  *See also* extract from Loan Agreement dated April 30 , 2015 of Hayfin Bank Loan Agreement with ADVANTAGE SPRING SHIPPING extract hereto attached as **EXHIBIT 7**  at p. GH 03098**,** defining "Manager" as "Genel Denizzcilik Nakliyati A.S. in its capacity as both the commercial and technical manager of the Vessels and the corporate Administrator of the Borowers and the Guarantor..." (also signed by Defendant MAT at GH 03224)

50.     Under the first restructuring, the operation and management of the 11 Tanker Vessels of the Advantage-Group continued being performed by EMIN KARAMEHMET's GEDEN LINES, using the same employees; operating out of the same address (Buyukdere Ca., Yapi Kredi Plaza, A Blok K: 12 34330-Levent-Istanbul-Turkey), as previously, before the same 11 Tanker Vessels were transferred to the Advantage-Group.

51.     Notwithstanding the transfer of ownership of the 11 Tanker Vessels from the Geden-Group one-ship-companies to the respective Advantage-Group one-ship-companies, the majority

of the lenders that financed the acquisition of the vessels by the Advantage-Group one-ship companies remained the same, with new rollover-like refinancing arrangements and ship mortgaging arrangements having been negotiated and worked out by GEDEN HOLDINGS / GEDEN LINES executives and directors on behalf of ADVANTAGE TANKERS. *See* **EXHIBIT 4** at ANNEX I.

52.     Notwithstanding the transfer of the 11 Tanker Vessels from the Geden-Group to the Advantage-Group, GEDEN LINES, which is controlled by EMIN KARAMAHMET, continues to maintain a substantial financial interest in the 11 Tanker Vessels enjoying a significant economic benefit as operator and manager of the ADVANTAGE TANKERS fleet.

53.     Notwithstanding the transfer of the 11 tanker vessels from the Geden-Group to the Advantage-Group, GEDEN LINES, in its capacity as the sole operator and manager of the 11 Tanker Vessels, and thereby its controlling shareholder EMIN KARAMEHMET, exercise complete control over all of the operational, technical, and all other business activities of the 11 one-ship-companies of the Advantage-Group.

54.     GEDEN HOLDINGS, GEDEN LINES, ADVANTAGE TANKERS, and the respective one-ship-companies of the Geden-Group and Advantage-Group have in common key management personnel including: the same Chief Executive Officer, who is also a director of GEDEN HOLDINGS, GEDEN LINES and ADVANTAGE TANKERS; and the same Chief Financial Officer, who is also a director of GEDEN HOLDINGS.

55.     Following the purported "sale" of the 11 Tanker Vessels, their respective former one-ship-company owners ceased to own vessels and were wound up.

56.     The holding company role of GEDEN HOLDINGS and the one-ship-companies of the Geden-Group, following the transfer of the 11 Tanker Vessels, was taken over by ADVANTAGE TANKERS and its subsidiary one-ship-companies. ADVANTAGE TANKERS

and its subsidiary one-ship-companies thereby assumed the obligations previously incumbent on GEDEN HOLDINGS and its one-ship-subsidiaries.

57.     By reason of the foregoing facts pled in averments ¶¶ 44-56, ADVANTAGE TANKERS and the one-ship-companies it holds, and GEDEN HOLDINGS and the one-ship-companies and single-vessel chartering companies it holds, have either entered into a *de facto* merger; or ADVANTAGE TANKERS and the one-ship-companies it holds are a mere continuation of the business of GEDEN HOLDINGS.

58.     In the alternative the transfer of the assets of the Geden-Group to the Advantage-Group in the manner set out in the foregoing averments ¶¶ 45-46 was a transaction entered into by the parties involved to avoid liabilities, including the substantial liabilities to Plaintiff.

59.      The one-ship companies that formerly owned the 11 Tanker Vessels were absorbed by the Advantage-Group, as evidenced by the identity of assets, location, management, personnel, and stockholders.

60.     Accordingly, ADVANTAGE TANKERS and the one-ship-companies it holds, including ADVANTAGE SPRING SHIPPING, are liable for Plaintiff's claims respectively as the successor corporations of EMIN KARAMEHMET - controlled GEDEN HOLDINGS, SPACE SHIPPING and REEF SHIPPING, LTD, and the M/T ADVANTAGE SPRING may be attached as security for Plaintiff's claims.

***ii.       Fraudulent Transfer Allegations***

61.     Plaintiff realleges ¶¶ 1-60 of the above and foregoing Original Verified Complaint and further avers as follows:

62.     In agreeing to bareboat charter its vessel the CV STEALTH to SPACE, a Maltese corporation without any known tangible assets or business performance record, and to accept the performance guarantee of GEDEN HOLDINGS, Plaintiff relied on express affirmative

representations of fact made on behalf of GEDEN HOLDINGS / GEDEN LINES by their common CEO and director TOKGÖZ.  Specifically, TOKGÖZ represented that GEDEN HOLDINGS was the parent company of the "special purpose companies", *i.e.* the-one-ship companies which at the time owned the 11 Tanker Vessels.  A Copy of the March 4, 2010 letter of GEDEN HOLDINGS containing such representations in writing is hereto attached as **EXHIBIT 8**.

63.   The performance guarantee of GEDEN HOLDINGS (**EXHIBIT 2**) contemporaneously issued with the March 4, 2010 letter, is a continual guarantee extending over the entire duration of the performance of the charter party.  It specifically provides in relevant part that that it is given in consideration of Plaintiff's refraining from arresting or otherwise detaining any of the assets of GEDEN HOLDINGS.

64.   Plaintiff relied on the representations made in the March 4, 2010 letter (**EXHIBIT 8**), particularly the representation that GEDEDN HOLDINGS owned and would continue to own through its one-ship-companies the 11 Tanker Vessels, and thereby agreed to continue chartering the CV STEALTH to SPACE and accept the performance guarantee of GEDEN HOLDINGS.

65.   GEDEN HOLDINGS purports that during the first 5 months of 2015 it divested itself of its entire interest in the 11 Tanker Vessels and "sold" same to the Defendants comprising the Advantage-Group through legitimate arm's length transactions. In actual fact, the Defendants implemented a fraudulent restructuring scheme that had been in their planning and contemplation as pled below[7].

66.   During 2012 and 2013, as a result of a faltering tanker market, the high prices it had paid for the construction of the 11 Tanker Vessels and the acquisition of other tonnage, the Geden-Group experienced severe economic difficulties and pressing demands by various creditors that

---

[7] In a similar manner, GEDEN HOLDINGS purportedly "sold" its fleet of product carrier tankers to new buyers while it continued to maintain control over their operation and to profit from trading same under FUTURE HOLDINGS, LTD. a management company controlled by Defendants KARAMEHMET-WILLIAMS and TOKGÖZ.

included attachment of vessels of the group.  In consultation with the group's lending banks, GEDEN LINES commissioned business restructuring specialist AlixPartners UK LLP to develop a proposed plan for the restructuring of their business.  A report was prepared by AlixPartners, dated March 6, 2013 under the title "Project Hermitage Restructuring".  *See* Report of AlixPartners hereto attached as **EXHIBIT 9**[8]  (hereinafter referred to as "Project Hermitage").

67.      Project Hermitage recommended the replacement of GEDEN HOLDINGS as the group's holding company by another new business entity - a "newco" - which, under the recommended plan, "[p]rovides for recategorization of exposure from "Geden Holdings Ltd." to Newco where equity is "in-the-money" and shareholders are better incentivized to provide ongoing support." *See* **EXHIBIT 9** at Bates No. P-001870.   The plan of Project Hermitage also recommended the sale of the vessels or the one-ship-companies to "Newco"; the continuation of the management of the vessels by GEDEN LINES; the rollover financing of the existing debt to the financing banks; the retention of the equity of GEDEN HOLDINGS; the transfer of the surplus of equity in the assets to Newco (**EXHIBIT 9** (flow chart) Bates No. P-001846); and the ring-fencing of potential sources of disruption (such as arrests and sister-ship arrests.  *Id*. at Bates No. P-001870.

68.      Even though the recommendations of Project Hermitage were not adopted by Defendants in their exact proposed form, they were nonetheless substantially adopted and implemented as evidenced by the following events: a) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, caused the

---

[8] The Alix Partners' report specifically states: "This report ("Report") was prepared by AlixPartners UK LLP ("AlixPartners") exclusively for the sole benefit and internal use of <u>GENEL Denizcilik Nakliyati A.S. – GEDEN Lines (the "Company")</u> pursuant to a client relationship between AlixPartners and the Company stipulated in the agreement for the provision of consulting services dated 22 November 2012 (the "Engagement Letter"). EXHIBIT 10 at Bates No.  P-001832.  As to the factual content of the AlixPartners report it provides in relevant part: "The information contained in this Report is based upon financial and other data provided to AlixPartners and the representation made to AlixPartners by the management and staff of the Company" *Id*. at Bates No. P-001833. *Emphasis added.*

incorporation of ADVANTAGE TANKERS, in the Marshall Islands, *i.e.*  the "Newco" contemplated by Project Hermitage[9];  b)  GEDEN HOLDINGS / GEDEN LINES, by and through their common chief executive officer and chief financial officer, made arrangements for the rollover financing of the loans of GEDEN HOLDINGS' one-ship-companies with ADVANTAGE TANKERS taking on the role of corporate guarantor; c) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, caused the one-ship-companies controlled by GEDEN HOLDINGS to "sell" their vessels to newly minted Marshall Islands corporate entities that comprise the Advantage-Group shown in the foregoing TABLE I;  d) GEDEN HOLDINGS / GEDEN LINES, acting by and through their common chief executive officer and chief financial officer, arranged for the management of the 11 Tanker Vessels to continue being performed by GEDEN LINES under new 5 year contracts; e) by transferring all of the tangible operating assets of GEDEN HOLDINGS to the ADVANTAGE TANKERS one-ship-companies, *i.e.* the 11 Tanker Vessels, GEDEN HOLDINGS  effectively "ringfenced" them, thereby blocking creditors of GEDEN HOLDINGS from seeking recourse against its assets.

69.     Project Hermitage specifically referred to the bareboat charter of the CV STEALTH and other chartered-in tonnage of other owners in the following terms: "Group D, Geden Oldco: 11 Group D vessels make up the residual fleet and are not part of the Company's future. These include the vessels funded by FSL, Icon, Octavian and Stealth when traditional financing was unavailable." With specific reference to Plaintiff's vessel the CV STEALTH Project Hermitage notes: "not ours".  *See* **EXHIBIT 9** at P-001856.

70.     The actions of the Defendants in implementing the recommendations of Project Hermitage in the manner described in the foregoing, manifests the design, plan, and intent of the

---

[9] At all times material hereto, all  Defendants have the same Chief Executive officer - Tugrul Tokgoz- and the same Chief Financial Officer -Mehmet Matt - who also hold overlapping roles as directors and /or officers of the respective corporate Defendants of the one-ship-companies controlled by ADVANTAGE TANKERS.

Defendants to deal with their assets in a fraudulent manner to the detriment and prejudice of their creditors, specifically including Plaintiff as noted in ¶ 68 and 69 *supra*.

71.   At all times material hereto and as pled in the foregoing, GEDEN HOLDINGS through the machinations of its equity holder EMIN KARAMEHMET "restructured" the ownership of its assets, by arranging their transfer to ADVANTAGE TANKERS, a company 85% controlled by his only child KARAMEHMET WILLIAMS, and 15% by his hand-picked CEO of GEDEN LINES and GEDEN HOLDINGS, TOKGÖZ.  As a result, Plaintiff was left without any of the recourse that it had agreed to forego (*i.e.* the attachment of Geden Holdings' owned vessels) in consideration for GEDEN HOLDING's performance guarantee.

72.   Notwithstanding the fraudulent restructuring of the ownership of its shipping assets, GEDEN HOLDINGS provided in confidence express assurances to Shell Western Supply & Trading, Ltd. that it remained the controlling shareholder of the same 11 tanker vessels through its complete control of the Advantage-Group one-ship companies.

73.   Though Defendants KARAMEHMET WILLIAMS and TOKGÖZ have warranted to the lenders of the Advantage-Group that they hold respectively 85% and 15% of the ultimate beneficial interest in ADVANTAGE TANKERS, which, in turn,  warrants it controls 100% of the 11 Tanker Vessels (**EXHIBIT 3**), TOKGÖZ, who is the Chief Executive Officer of ADVANTAGE TANKER and a director of GEDEN HOLDINGS, has also warranted to Shell Western Supply & Trading, Ltd. that it is actually GEDEN HOLDINGS, which controls the   Advantage-Group corporate entities, that own the same vessels even after their purported transfer to the Advantage Group.  Based on the foregoing and the conflicting representations of Defendants, the ownership of the ADVANTAGE SPRING (ex.  REEF) was fraudulently transferred to the detriment of unsecured creditors.

## V.     THE SECOND RESTRUCTURING – FLEETSCAPE ADVANTAGE HOLDINGS, LLC

74.     Plaintiff repeats and re-alleges ¶¶1-73 of the foregoing and with reference to its claim for the attachment of the M/T ADVANTAGE SPRING further avers as follows.

75.     Plaintiff has been pursuing claims: in London arbitration against Defendant SPACE under the BBCP for the redelivery of its vessel in severely damaged condition as averred in foregoing;  in the United States District Courts for the Eastern District of Texas against the same Defendant and its performance guarantor GEDEN HOLDINGS, where it has obtained in ancillary Rule B proceedings partial security for its said claims in London arbitration, in the form of surety bonds in the amount of USD 4,800,00, in civil action styled *Psara Energy Limited v. Space Shipping, Ltd. et al*. No, 18-cv-00178, which, however, is not adequate to cover its claim in London arbitration; and in the High Court in London for a claim under marine and war risks insurance.

76.     As Plaintiff identified ADVANTAGE TANKERS as a successor corporation of performance guarantor GEDEN HOLDINGS, it monitored ADVANTAGE TANKERS' ownership structure and activity.  In late December 2018, Plaintiff learned the vessel ADVANTAGE ARROW had been transferred to Fleetscape Arrow, LLC, a Marshall Islands, business entity, some time in 2015.  Plaintiff knew that this could not be correct because this limited liability company did not exist on that date.

77.     From monitoring public records showing vessel registrations, Plaintiff, in due course, learned that the legal ownership of the one-ship-companies that owned the 11 Tanker Vessels as their respective "new owners" as per Table I above, had changed in February-March 2019 as follows:

**TABLE II**

| VSL NAME | FORMER OWNER | CHANGE DATE | NEW OWNER |
|---|---|---|---|
| ADVANTAGE SOLAR | Advantage Solar Shipping, LLC | Feb. 15, 2019 | Fleetscape Solar, LLC |
| ADVANTAGE ARROW | Advantage Arrow Shipping, LLC | Feb. 15,2019 | Fleetscape Arrow, LLC |
| ADVANTAGE AVENUE | Advantage Avenue Shipping, LLC | Feb. 15, 2019 | Fleetscape Avenue, LLC |
| ADVANTAGE SKY | Advantage Sky Shipping, LLC | N/A | Advantage Sky Shipping, LLC |
| ADVANTAGE SUMMER | Advantage Summer Shipping, LLC | Feb. 28, 2019 | Fleetscape Summer, LLC |
| ADVANTAGE START | Advantage Start Shipping, LLC | Feb. 15, 2019 | Fleetscape Start, LLC |
| ADVANTAGE SPRING | Advantage Spring Shipping, LLC | March 8, 2019 | Fleetscape Spring Shipping, LLC |
| ADVANTAGE ATOM | Advantage Atom Shipping, LLC | Feb.12, 2019 | Fleetscape Atom, LLC |
| ADVANTAGE ANTHEM | Advantage Anthem Shipping, LLC. | Feb. 12, 2019 | Fleetscape Anthem, LLC. |
| ADVANTAGE AWARD | Advantage Award Shipping, LLC | Feb. 12,2019 | Fleetscape Award, LLC |
| ADVANTAGE SUN | Advantage Sun Shipping, LLC. | Feb. 15, 2019 | Fleetscape Sun, LLC |

78.     In addition, the following changes in the ultimate beneficial ownership of the above vessels,  their ultimate financing structure and their ultimate legal ownership were altered as averred below and supported with reference to the loan agreements and the ship mortgages registered in the Marshall Islands relating to the vessel ADVANTAGE SPRING, and the vessels noted in the foregoing TABLE II , hereto attached as **EXHIBIT 10**.

79.     Pursuant to   private   restructuring   arrangements   (hereinafter   "the   Second Restructuring") made between:  Defendants ADVANTAGE TANKERS,  the respective registered former owners of the 11 Tanker Vessels (hereinafter the Advantage Owners), and Fleetscape Capital Holdings, Limited of the Cayman Islands, a new limited liability Company was organized

in the Marshall Islands by the name of Fleetscape Advantage Holdings, LLC. *See* **EXHIBIT 10**, First Addendum dated January 31, at p.2.

80.    Pursuant to the said Second Restructuring, the Advantage Owners entered into Memoranda of Agreement with the respective "new owners" (hereinafter the "Fleetscape Owners") as shown in the foregoing **TABLE II** whereby the legal ownership to the respective 11 Tanker Vessels was transferred to the said respective Fleetscape Owners. *See* **EXHIBIT 10**, Appendix Form at pp.30 -36.

81.    Pursuant to the said Second Restructuring, FLEETSCAPE ADVANTAGE became the entity by and through which ADVANTAGE TANKERS and Fleetscape Capital Holdings, Ltd. agreed to carry on business as a joint venture.   On information and belief, ADVANTAGE TANKERS and Fleetscape Capital Holdings, Ltd. are respectively, directly or indirectly, the members of FLEETSCAPE ADVANTAGE.

82.    Pursuant to the Second Restructuring, each of the Advantage Owners has become and possesses its formerly owned respective tanker as bareboat charterer from its respective buyer (one of the 11 Fleetscape Owners).   Thus, the ADVANTAGE SRING is bareboat chartered to ADVANTAGE SPRING SHIPPING from its new owner, Fleetscape Spring, LLC. *See* **EXHIBIT 10** at p. 34.

83.    Pursuant to the Second Restructuring, Fleetscape Capital Holdings Ltd. is also regarded a lender to FLEETSCAPE ADVANTAGE in respect of its capital contribution to the LLC of approximately USD 70,000,000. *See* **EXHIBIT 10** at p. 37 ("Subordinated Loan Agreement").

84.    Fleetscape Capital Holdings, Ltd. at all times material to the Second Restructuring was headed by its managing director Mr. Tobias Backer who was formerly Managing Director and Head of Shipping & Offshore at ICON Investments, having left his post there some time in 2016. *See* **EXHIBIT 11**.

85.     In his former capacity with ICON Investments, Mr. Backer had acted on behalf of ICON in matters relating to Geden Holdings Ltd., indeed in matters in which ICON Investments was adversely claiming against GEDEN HOLDINGS.

86.     While acting on behalf of ICON Investments, Mr. Backer had dealt with the failure of GEDEN HOLDINGS to honor obligations it had undertaken to ICON Investments. In this capacity, he had occasion to look into restructuring plans that Geden was proposing to implement which were based on the transfer of its shipping assets to newly minted corporate entities as proposed in the aforementioned AlixPartners restructuring plan.  *See* **EXHIBIT 9**.

87.     In this regard, Mr. Backer, acting in his capacity as Managing Director and Head of Shipping & Offshore at ICON Investments, rejected such a restructuring proposal.  In e-mail correspondence to Geden and MAT, he referred to these plans as  "…a clear attempt to give preferential treatment to one group of creditors over another. This attempt has been going on behind our [Icon's] backs and has several fraudulence conveyance issues and multiple lender liability concerns."  *See* **EXHIBIT 12** at Bates No.GH 010009.

88.     Several months later, in January 2014, when disputes between Geden and ICON Investments appeared to have, temporarily, calmed down, Geden's Chief Financial Officer, MAT, approached Mr. Backer with an investment proposal, the principal terms of which are contained in the document hereto attached as **EXHIBIT 13** (Bates No. GH 01278 -GH 01286) which may be summarized as follows:

A)  A "Newco" would be established "with new investors" which would "acquire the vessels from Geden affiliates at market premium." *Id*. at Bates No. GH 01280. In fact, such a "Newco" was created by Geden, approximately one year later in the form of ADVANTAGE TANKERS and acquired the vessels as shown in **TABLE I.**

B)  The capital contributions of the respective parties would be:

| | |
|---|---|
| Icon | 75,000,000 |
| New Facility | 300,000.000 |
| Geden Equity | 95,000,000 |

*Id.* at Bates No. GH01281.

C)   The general overview of the transaction is that this will be an investment in a joint venture between Icon Capital or it nominee and the Newco for the acquisition of 10 tankers from Geden Holdings Ltd.

D)   The vessels to be acquired were as those shown in **TABLE I**.

E)   The Parties to the deal would be: "the Company" which would be a newly established Marshall Islands Holding Company, jointly owned by Icon and Newco.

F)   The subsidiaries of the holding company would be 100% owned companies, with their respective assets being owners of a single vessel, each of the vessels to be acquired.

G)   The shareholders of the Company would be Icon and the Newco.   The proposal contemplated that Icon would provide the preferred equity, *i.e.* USD 75,000,000, whereas Newco would provide USD 95,000,000.   The balance of financing would be debt based.

H)   The term sheet also provided for a Cashflow Waterfall upon exit/sale, whereby the Preferred Equity Holder would receive return of its capital, interest at 8% IRR, et seq.

I) The Technical Manager of the Company would be Genel Denizcilik, Turkey.

J)   The Commercial Manager was going to be Genel Denizcilik, Turkey

K)   The corportate management of the Company would be Tugrul Tokgoz- CEO and Mehmet Mat – CFO.

89.     Comparing the draft term sheet that MAT proposed to Mr. Backer on January 15, 2014 with the loan agreement and mortgage documents obtained from the Marshall Islands ship and mortgage register regarding the MT ADVANTAGE SPRING, it is striking to see that the former is a blueprint and an outline of the latter.  Thus, the "Newco" referred to in the term sheet,

materialized in the form of ADVANTAGE TANKERS.  The "Company" referred to in the term sheet is FLEETSCAPE ADVANTAGE. The transfer of the vessels to one-ship entities controlled by FLEETSCAPE ADVANTAGE, is reflected in the transactions shown in the Revised /Restated Loan Agreement summarized in the foregoing **TABLE II**.   The proposed USD 75,000,000 capital contribution of what would have been Icon in 2014 is actually a capital contribution of USD 70,000,000 by Fleetscape Capital Holdings, Ltd, the other member of the joint venture with ADVANTAGE TANKERS. The debt financing contemplated by the "term sheet" has been provided by the lender /mortgagee Credit Agricole Corporate Investment Bank, and an assortment of other banks. The preferred equity status of Fleetscape Capital Holdings, Ltd. is confirmed by its status as a secured creditor junior only to the lending bank.  The technical and operation manager status of GEDEN LINES is repeatedly confirmed in the Term Loan Facility Agreement.

90.     By reason of the foregoing, and notwithstanding the successive transfer of the vessels originally owned by GEDEN HOLDINGS, first to the Advantage Group and subsequently to the Fleetscape Advantage Group, such transfers are fraudulent as to Plaintiff intended to deprive it from the security granted to it by GEDEN HOLDINGS as guarantor.

91.     The principal reason that Mr. Backer himself  identified when formerly employed by ICON Investments, namely the likely fraudulent nature of the conveyances to the "Newco", Advantage Tankers affects the Second Restructuring of  Geden in the same manner and to the same extent as it had affected creditors such as ICON Investments and Plaintiff after the First Restructuring.   It is not any more lawful than it was when it first came to the attention of Mr. Backer when he originally rejected it and condemned it.

92.     In consequence of the foregoing at all times material hereto: the actual notice to and knowledge of Mr. Backer of the likely fraudulent conveyance of the vessels by GEDEN HOLDINGS to ADVANTAGE TANKERS, and the intent with which they did this, is attributable

to Fleetscape Capital Holdings, Ltd.  The actual knowledge of the fraudulent conveyance and the unlawful purpose for which it was effected, was also possessed by individual defendants EMIN KARAMEHMET; KARAMEHMET-WILLIAMS, TOKGOZ, MAT, and corporate entities GEDEN HOLDINGS, GEDEN LINES, and the respective 11 corporate entities they own an/or manage and/or control as shown in **TABLE  I.**

93.    For the same reasons as in the foregoing paragraph, Defendant FLEETSCAPE ADVANTAGE, through its respective officers and directors, has had knowledge of Plaintiff's claims against SPACE and GEDEN HOLDINGS as guarantor, and of the fraudulent conveyance and unlawful purposes affecting the First and Second Restructuring.

94.    Based on the information known to the managing director of  Fleetscape Capital Holdings, Ltd., that the transfer of the M/T REEF (renamed ADVANTAGE SPRING) by GEDEN HOLDINGS to ADVANTAGE TANKERS  and  ADVANTAGE SPRING SHIPPING, (and similarly with the transfer of other vessels)  were questionable and likely fraudulent conveyances of property.  Fleetscape Capital Holdings, Ltd. should have reasonably anticipated action by unpaid creditors of GEDEN for the attachment of the vessels transferred to the Fleetscape Owners.

95.    Fleetscape Capital Holdings, Ltd. was at all times material hereto, and certainly by August 30, 2018, well aware and on notice of the fact that unpaid creditors of GEDEN HOLDINGS had outstanding claims for which they were arresting or attaching as security vessels of ADVANTAGE TANKERS.  One such vessel was the ADVANTAGE SKY arrested in South Africa in the High Court of South Africa, Kwazulu, Natal Local Division, Durban in Case No. A 50/2018,   IN THE HIGH COURT OF SOUTH AFRICA KWAZULU - NATAL LOCAL DIVISION, DURBAN by applicants Icon Amazing, LLC; Icon Fantastic, LLC and Icon Octaviam Center, LLC.  The said cause has been tried and a decision of the South African court is imminent.

96.    Plaintiff invokes the power of this honorable court as a court of admiralty "…to

protect its jurisdiction from being thwarted by a fraudulent transfer, [by] …. authorizing an attachment to secure an independent maritime claim." *Swift Co Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 694-695 (1950).

97.    The rationale underlying the transfer of the 11 Tanker Vessels from GEDEN HOLDINGS to ADVANTAGE TANKERS and then to FLEETSCAPE ADVANTAGE as noted in the foregoing was:  First, by means of the First Restructuring, GEDEN HOLDING'S assets were stripped and "ringfenced" in a Newco in order to avoid "arrests," as recourse by its creditors; Next, by means of the  Second Restructuring, the unlawfully stripped GEDEN HOLDINGS' assets were transferred into and a new LLC whereby they would be sheltered as part of a joint venture with third parties that had not participated in GEDEN HOLDINGS'S fraudulent restructuring conduct. In these circumstances, it would be fair and reasonable for the Court to inversely pierce the corporate veil of FLEETSCAPE ADVANTAGE and FLEETSCAPE SPRING and order the attachment of the Motor Tanker ADVANTAGE SPRING.

### VI.    SUPPLEMENTAL ADMIRALTY RULE B

98.    None of the Defendants are or were at the time of the filing of this suit present within the District or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims and under the laws of California governing personal jurisdiction. *See* Attorney Declaration of Yoni Weinberg attached hereto as **EXHIBIT 14**. Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

99.    More specifically, there is presently, or imminently due to arrive in the Northern District of California, the Motor Tanker ADVANTAGE SPRING, a tanker vessel registered in the Marshall Islands, as pled in the foregoing.

100.   Defendants have used and continue to use the purportedly corporate separateness, and incorporated status of their surrogate entities ADVANTAGE SPRING, ADVANTAGE TANKERS, FLEETSCAPE ADVANTAGE abusively, to wit: to engage in fraudulent corporate restructuring and asset reallocation practices in order to escape  their lawful obligation to pay for the extensive damage to the CV STEALTH;   and also pay earned bareboat charter and other amounts under the bareboat charter.

101.   Plaintiff has maritime claims against the Defendants arising out of the breach of a maritime contract (*i.e.* – the bareboat charter party with CV STEALTH dated February 23, 2010, and the performance guarantee dated April 4, 2010).

102.   The amounts of Plaintiff's claims as reasonably as it can be estimated is as follows:

| | | |
|---|---|---|
| A. | The repaired cost of the CV STEALTH………….......$ | 18,000,000.00 |
| B. | Unpaid charter hire due and owing………………….....$ | 510,208.00 |
| C. | Awarded legal costs……………………………............$ | 5,562.00 |
| | Security obtained……………………………………. $ | (4,800,000.00) |
| | | |
| C. | Interest at 5% compounded quarterly for 4 years…………..$ | 3,035,592.00 |
| E. | Recoverable Legal Fees and Costs……………………… $ | 300,000.00 |

**Total Claim……………………………………………$      17,087,362.00**

Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of **USD 17,087,362.00 (SEVENTEEN MILLION EIGHTY-SEVEN THOUSAND THREE HUNDERD SIXTY-TWO DOLLARS).**

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.    That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants

be cited to appear and answer the allegations of this Original Verified Complaint;

B.     That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including, but not limited to the M/T ADVANTAGE SPRING and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.     That judgment be entered against each of the Defendants and each of them in the sum of **USD 17,087,362.00 (SEVENTEEN MILLION EIGHTY-SEVEN THOUSAND THREE HUNDERD SIXTY-TWO DOLLARS)** together with interest and costs, be applied in satisfaction thereof;

E.     That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully Submitted,

Dated: June 19, 2020                   **LAW OFFICES OF YONI WEINBERG, P.C.**
                                       By: /s/ Yoni Weinberg
                                           Yoni Weinberg
                                           Attorney for Plaintiff
                                           *Psara Energy, Ltd.*

*Of Counsel:*
George A. Gaitas
Jonathan M. Chalos
*Pro Hac Vice Applications Forthcoming*
**GAITAS & CHALOS, P.C.**

1908 N. Memorial Way
Houston, Texas 77007
Telephone:     (281) 501-1800
Facsimile:      (832) 962-8178
E-mail:          gaitas@gkclaw.com
                    chalos@gkclaw.com