# EXHIBIT 5

1

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PSARA ENERGY, LTD.,           )
    Plaintiff,                )
                              )
VS.                           )  CIV. ACTION NO. 16-CV-04840
                              )
SPACE SHIPPING, LTD.;         )
ADVANTAGE AVENUE              )
SHIPPING, LLC; GENEL          )
DENIZCILIK NAKLIYATI A.S.     )
A/K/A GEDEN LINES;            )
ADVANTAGE TANKERS, LLC,       )
ADVANTAGE HOLDINGS, LLC;      )
FORWARD HOLDINGS, LLC;        )
MEHMET EMIN KARAMEHMET        )
and GULSUN NAZLI              )
KARAMEHMET WILLIAMS,          )
    Defendants.               )
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF
DAVE CHAPMAN
NOVEMBER 30, 2016

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of DAVE CHAPMAN, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on November 30, 2016, from 1:22 p.m. to 2:32 p.m., before Patricia L. Fairley, RPR, CSR in and for the State of Texas, reported by machine shorthand at the offices of DepoTexas, 13101 Northwest Freeway, Suite 210, Houston, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated in the record or attached hereto.

```
 1                    A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4       Mr. George A. Gaitas
         Mr. Jonathan M. Chalos
 5       CHALOS & CO., P.C.
         7210 Tickner Street
 6       Houston, Texas   77055
         (713)936-2427            (866)702-4577 Facsimile
 7       georgegaitas@chaloslaw.com
         jmc@chaloslaw.com
 8
 9   FOR THE DEFENDANTS ADVANTAGE AVENUE SHIPPING, LLC,
     ADVANTAGE TANKERS, LLC AND ADVANTAGE HOLDINGS, LLC:
10
         Mr. Marc Matthews (Not Present)
11       PHELPS DUNBAR, LLP
         500 Dallas Street
12       Suite 1300
         Houston, Texas   77002
13       (713)626-1386            (713)626-1388 Facsimile
         marc.matthews@phelps.com
14
15   FOR SHELL OIL COMPANY:
16       Mr. Marcus A. Carter
         SHELL OIL COMPANY
17       P.O. Box 2463
         Houston, Texas   77252-2463
18       (713)241-1232            (713)241-1427 Facsimile
         m.carter2@shell.com
19
20
                          *  *  *  *  *
21
22
23
24
25
```

Dave Chapman

42

1  A. I believe that's correct.
2  Q. It was acknowledged on behalf of Shell Western?
3  A. Yes.
4  Q. And would -- would you agree with me that these
5  were binding contracts on Shell Western?
6  A. Yes, I would agree.
7  Q. And if someone told you in one of these time
8  charters that the daily rate was going to be $50,000 a
9  day and the charter itself said 18 1/2 thousand, they
10 would be wrong?  The charter party would be correct?
11 What it says in the charter would be correct?
12 A. Well, it depends upon what other agreements
13 were entered into beyond the charter party agreement.
14 You can write amendments to various agreements.
15 Q. Of course.  But if -- if the charter party
16 specifies 18 1/2 thousand dollars daily rate, that would
17 be correct?  These are correct documents that you were
18 signing; they were not fictitious or --
19 A. No.  Those are binding documents that I signed.
20 Q. Binding and accurate?
21 A. They should be accurate.
22 Q. Truthful?
23 A. Yes.  Correct.
24 Q. So I want to show you now a document,
25 Exhibit 17.

Dave Chapman

51

```
 1    executing the document.  There were people in Shell that
 2    had done that work, I'm certain, because I would have
 3    asked for evidence to that effect; but I wouldn't have
 4    done the work myself.
 5         Q.  So if you look at Paragraph 2 again, "It has
 6    been proposed that each Existing Owner will sell, the
 7    Vessel Sales, all its title, interest to and right in
 8    its Vessel to the relevant companies listed in Annex 1
 9    hereto as new owners, and each wholly owned by the
10    Shareholder, the New Owners."
11              What sense does this make to you?  Who owns
12    the new owners?
13         A.  It says, "each wholly owned by the Shareholder,
14    the New Owner."  I mean, I can't -- I can't interpret it
15    any differently than it says in the paragraph.
16         Q.  Right.  And would you -- would you look at the
17    very first line, please, where it says, "From" --
18         A.  Yes.
19         Q.  -- "Geden Holdings, Limited" --
20         A.  Yes.
21         Q.  -- "the Shareholder"?
22         A.  Correct.
23         Q.  Do you have any reason to believe -- reason to
24    believe this is -- there is anything in here that's
25    untrue or inaccurate?
```

```
                                                                52
 1          A.   No, I have no reason to believe that.
 2          Q.   Give us a minute.
 3          A.   Yeah, please.
 4               (Discussion off the record)
 5          Q.   (BY MR. GAITAS)  All right.  Let's go back on
 6    the record.
 7          A.   Okay.
 8          Q.   Or do you want to take a break?
 9          A.   No, I'm good.  I just don't normally talk this
10    much.  No one at the office lets me.
11          Q.   Right.  Then I'll -- I'll ask you to please
12    look at -- there's -- there's an Appendix 1 that is --
13    Annex 1 that is attached to this.
14          A.   Yes.
15          Q.   Do you see that?
16          A.   I do see that.
17          Q.   And if you -- if you go to the Consent Letter,
18    the front -- the front page --
19          A.   Yes.
20          Q.   -- Item 3, "Upon each Vessel Sale:  the
21    relevant Existing Owner will delete the Vessel from the
22    Maltese flag and the relevant New Owner will register
23    the vessel in its name under the Marshall Islands flag."
24          A.   Yes, I can see that.
25          Q.   From -- from the documents that we saw before,
```

53

1  Exhibits 1 with the exception of that letter of
2  Mr. Soudant, this was done?
3       A.  I presume so.  I --
4       Q.  If you look -- if you look at the -- if you
5  look at the Appendix 1 -- Annex 1 --
6       A.  Yes.
7       Q.  -- vessel PROFIT was renamed ADVANTAGE SOLAR?
8       A.  Correct, and went from --
9       Q.  And --
10      A.  -- the Malta flag to the Marshall flag.
11      Q.  -- went -- and from the charter parties you've
12 seen or if you can see, if you want to -- to look at
13 them closely, indeed, the flag changed?
14      A.  I -- yes, I presume so.
15      Q.  Yeah.  And from the documents we have seen
16 before, the previous exhibits, the condition of this
17 Consent Letter, (b), "the relevant ship mortgage
18 registered in the name of the banks and financial
19 institutions listed in Annex 1 hereto as Existing
20 Mortgagees shall be discharged and shall be replaced
21 with a new ship mortgage to be registered in the name of
22 the banks and financial institutions listed in Annex 1
23 hereto as New Mortgagees," again, from the documents you
24 have seen, this has taken place, has it not?
25      A.  I presume so.