# EXHIBIT 6

| SHIP MANAGEMENT AGREEMENT | THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO) STANDARD SHIP MANAGEMENT AGREEMENT CODE NAME: "SHIPMAN 98"  PART I |
|---|---|
| 1. Date of Agreement<br>10 February 2015 | Name of Vessel<br>ADVANTAGE ARROW |
| 2. Owners (name, place of registered office and law of registry) (Cl. 1) | 3. Managers (name, place of registered office and law of registry) (Cl. 1) |
| Name<br>Advantage Arrow Shipping LLC | Name<br>Genel Denizcilik Nakliyati A.Ş. |
| Place of registered office<br>Trust Company Complex, Ajeltake Road, Ajeltake Islands, Majuro, Marshall Islands MH96960 | Place of registered office<br>Büyükdere Caddesi Yapı Kredi Plaza A Blok Kat:12 34330 Levent / İstanbul |
| Law of registry<br>MARSHALL ISLAND | Law of registry<br>Turkiye |
| 4. Day and year of commencement of Agreement (Cl. 2)   February 2015 | |
| 5. Crew Management (state "yes" or "no" as agreed) (Cl. 3.1)<br>YES | 6. Technical Management (state "yes" or "no" as agreed) (Cl.3.2)<br>YES |
| 7. Commercial Management (state "yes" or "no" as agreed) (Cl. 3.3)<br>YES | 8. Insurance Arrangements (state "yes" or "no" as agreed) Cl. 3.4)<br>YES |
| 9. Accounting Services (state "yes" or "no" as agreed) (Cl. 3.5)<br>YES | 10. Sale or purchase of the Vessel (state "yes" or "no" as agreed) (Cl.3.6)<br>YES |
| 11. Provisions (state "yes" or "no" as agreed) (Cl. 3.7)<br>YES | 12. Bunkering (state "yes" or "no" as agreed) (Cl, 3.8)<br>YES |
| 13. Chartering Services Period (only to be filled in if "yes" stated in Box 7) (Cl. 3.3 (i))<br>5 YEARS | 14. Owners' Insurance (state alternative (i), (ii) or (iii) of Cl. 6.3)<br>YES |
| 15. Annual Management Fee (state annual amount) (Cl. 8.1)<br>USD 365,000 (per annum) | 16. Severance Costs (state maximum amount) (Cl. 8.4(ii))<br>As per Crewing agreement |
| 17. Day and year of termination of Agreement (Cl. 17)<br><br>5 YEARS FROM DATE OF AGREEMENT | 18. Law and Arbitration (state alternative 19.1, 19.2 or 19.3; if 19.3 place of arbitration must be stated) (Cl. 19)<br>English Law |
| 19. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Owners (Cl. 20)<br><br>operations@advantagetankers.com | 20. Notices (state postal and cable address, telex and telefax number for serving notice and communication to the Managers) (Cl. 20)<br>Genel Denizcilik Nakliyati A.Ş.<br>Büyükdere Caddesi Yapı Kredi Plaza A Blok<br>Kat:12 34330 Levent / İstanbul<br>Fax: +90 212 283 16 04-05<br>Tel: +90 212 319 51 00 |

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that this Agreement consisting of PART I and PART II as well as Annexes "A" (Details of Vessel), "B" (Details of Crew) "C" ("Initial Budget") and "D" (Associated Vessels) attached hereto, shall be performed subject to the conditions contained herein. In the event of a conflict of conditions, the provisions of PART I and Annexes "A", "B", "C" and "D" shall prevail over those of PART II to the extent of such conflict but no further.

| Signature(s) (Owners)<br><br>Signed by:<br><br>For & On behalf of the Owner<br>TUGRUL TOKGOZ | Signature(s) (Managers)<br><br>Signed by:<br><br>For & On behalf of the Manager<br>ORHAN KARADEMIR / COO |
|---|---|

PART II
"Shipman 98" Standard Ship Management Agreement

1. **Definitions**

2 In this Agreement save where the context otherwise requires, the following words and expressions shall have the meanings hereby assigned to them.

6 "Owners" means the party identified in Box 2.
7 "Managers" means the party identified in Box 3.
8 "Vessel" means the vessel or vessels details of which are set out in Annex "A" attached hereto.
10 "Crew" means the Master, officers and ratings of the numbers, rank and nationality specified in Annex "B" hereto.
13 "Crew Support Costs" means all expenses of a general nature which are not particularly referable to any individual vessel for the time being managed by the Managers and which are incurred by the Managers for the purpose of providing an efficient and economic management service and, without prejudice to the generality of the foregoing, shall include the cost of crew standby pay, training schemes for officers and ratings, cadet training schemes, sick pay, study pay, recruitment and interviews.
24 "Severance Costs" means the costs which the employers are legally obliged to pay to or in respect of the Crew as a result of the early termination of any employment contract for service on the Vessel.
29 "Crew Insurances" means insurances against crew risks which shall include but not limited to death, sickness, repatriation, injury, shipwreck unemployment indemnity and loss of personal effects.
34 "Management Services" means the services specified in sub-clauses 3.1 to 3.8 as indicated affirmatively in Boxes 5 to 12.
37 "ISM Code" means the International Management Code for the Safe Operation of Ships and for Pollution Prevention as adopted by the International Maritime Organization (IMO) by resolution A.741 (18) or any subsequent amendment thereto.
43 "STCW 95" means the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, 1978, as amended in 1995 or any subsequent amendment thereto.

47 **2. Appointment of Managers**

48 With effect from the day and year stated in Box 4 and continuing unless and until terminated as provided herein, the Owners hereby appoint the Managers, and the Managers hereby agree to act as the Managers of the Vessel.

53 **3. Basis of Agreement**

54 Subject to the terms and conditions herein provided, during the period of this Agreement, the Managers shall carry out Management Services in respect of the Vessel as agents for and on behalf of the Owners. The Managers shall have authority to take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform this Agreement in accordance with sound ship management practice.

64 **3.1 Crew Management**
65 (only applicable if agreed according to Box 5)
66 The Managers shall provide suitably qualified Crew for the Vessel as required by the Owners in accordance with the STCW 95 requirements, provision of which includes but is not limited to the following functions:
71 (i) selecting and engaging the Vessel's Crew, including payroll arrangements, pension administration, and insurances for the Crew other than those mentioned in Clause 6;
75 (ii) ensuring that the applicable requirements of the law of the flag of the Vessel are satisfied in respect of manning levels, rank, qualification and certification of the Crew and employment regulations including Crew's tax, social insurance, discipline and other requirements;
82 (iii) ensuring that all members of the Crew have passed a medical examination with a qualified doctor certifying that they are fit for the duties for which they are engaged and are in possession of valid medical certificates issued in accordance with appropriate flag State requirements. In the absence of applicable flag State requirements the medical certificate shall be dated not more than three months prior to the respective Crew members leaving their country of domicile and maintained for the duration of their service on board the Vessel;
96 (iv) ensuring that the Crew shall have a command of the English language of a sufficient standard to enable them to perform their duties safely;
100 (v) arranging transportation of the Crew, including repatriation;
102 (vi) training the Crew and supervising their efficiency;
104 (vii) conducting union negotiations;
105 (viii) operating the Managers' drug and alcohol policy unless otherwise agreed.

108 **3.2 Technical Management**
109 (only applicable if agreed according to Box 6)
110 The Managers shall provide technical management, which includes, but is not limited to, the following functions:
113 (i) provision of competent personnel to supervise the maintenance and general efficiency of the Vessel;
116 (ii) arrangement and supervision of dry dockings, repairs, alterations and the upkeep of the Vessel to the standards required by the Owners provided that the Managers shall be entitled to incur the necessary expenditure to ensure that the Vessel will comply with the law of the flag of the Vessel and of the places where she trades, and all requirements and recommendations of the classification society;

127  (iii) arrangement of the supply of necessary
128       stores, spares and lubricating oil;
129  (iv) appointment of surveyors and
130       technical consultants as the
131       Managers may consider from time to
132       time to be necessary;
133  (v)  development, implementation and
134       maintenance of a Safety
135       Management System (SMS)in
136       accordance with the ISM Code (see
137       sub-clauses 4.2 and 5.3).
138  (vi) development, implementation and
139       compliance with International Port Facility
140       Security Code (ISPS)
141  3.3 Commercial Management
142  (only applicable if agreed according to Box 7)
143  The Managers shall provide the commercial
144  operation of the Vessel, as required by the
145  Owners, which includes, but is not limited to, the
146  following functions:
147  (i)   providing chartering services in
148        accordance with the Owners'
149        instructions which include, but are not
150        limited to, seeking and negotiating
151        employment for the Vessel and the
152        conclusion (including the execution
153        thereof) of charter parties or other
154        contracts relating to the employment
155        of the Vessel. If such a contract
156        exceeds the period stated in Box 13,
157        consent thereto in writing shall first be
158        obtained from the Owners.
159  (ii)  arranging of the proper payment to
160        Owners or their nominees of all hire
161        and/or freight revenues or other
162        moneys of whatsoever nature to which
163        Owners may be entitled arising out of
164        the employment of or otherwise in
165        connection with the Vessel.
166  (iii) providing voyage estimates and
167        accounts and calculating of hire,
168        freights, demurrage and/or despatch
169        moneys due from or due to the
170        charterers of the Vessel;
171  (iv)  issuing of voyage instructions;
172  (v)   appointing agents;
173  (vi)  appointing stevedores;
174  (vii) arranging surveys associated with
175        the commercial operation of the
176        Vessel.
177  3.4 Insurance Arrangements
178  (only applicable if agreed according to Box 8)
179  The Managers shall arrange insurances in
180  accordance with Clause 6, on such terms and
181  conditions as the Owners shall have instructed or
182  agreed, in particular regarding conditions, insured
183  values, deductibles and franchises.
184
185  3.5 Accounting Services
186  (only applicable if agreed according to Box 9)
187  The Managers shall
188  (i)   establish an accounting system which
189        meets the requirements of the
190        Owners and provide regular
191        accounting services, supply regular
192        reports and records,
193  (ii)  maintain the records of all costs and
194        expenditure incurred as well as data
195        necessary or proper for the
196        settlement of accounts between the
197        parties.
198
199  3.6 Sale or Purchase of the Vessel
200  (only applicable if agreed according to Box 10)
201  The Managers shall, in accordance with the
202  Owners' instructions, supervise the sale or
203  purchase of the Vessel, including the performance
204  of any sale or purchase agreement, but not
205  negotiation of the same.
206  3.7 Provisions (only applicable if agreed according
207  to Box 11)
208  The Managers shall arrange for the supply of
209  provisions.
210  3.8 Bunkering (only applicable if agreed according
211  to Box 12)The Managers shall arrange for the
212  provision of bunker fuel of the quality specified by
213  the Owners as required for the Vessel's trade.
214
215  4. Managers' Obligations
216  4.1 The Managers undertake to use their best
217  endeavors to provide the agreed Management
218  Services as agents for and on behalf of the
219  Owners in accordance with sound ship
220  management practice and to protect and promote
221  the interests of the Owners in all matters relating
222  to the provision of services hereunder.
223       Provided, however, that the Managers in the
224  performance of their management responsibilities
225  under this Agreement shall be entitled to have
226  regard to their overall responsibility in relation to
227  all vessels as may from time to time be entrusted
228  to their management and in particular, but
229  without prejudice to the generality of the
230  foregoing, the Managers shall be entitled to
231  allocate available supplies, manpower and
232  services in such manner as in the prevailing
233  circumstances the Managers in their absolute
234  discretion consider to be fair and reasonable.
235  4.2 Where the Managers are providing Technical
236  Management in accordance with sub-clause 3.2,
237  they shall procure that the requirements of the
238  law of the flag of the Vessel are satisfied and they
239  shall in particular be deemed to be the
240  "Company" as defined by the ISM Code, assuming
241  the responsibility for the operation of the Vessel
242  and taking over the duties and responsibilities
243  imposed by the ISM Code when applicable.
244  5. Owners' Obligations
245  5.1 The Owners shall pay all sums due to the
246  Managers punctually in accordance with the
247  terms of this Agreement.
248  5.2 Where the Managers are providing Technical
249  Management in accordance with sub-clause 3.2,
250  the Owners shall:
251  (i)   procure that all officers and ratings
252        supplied by them or on their behalf comply
253        with the requirements of STCW 95;
254  (ii)  instruct such officers and ratings to obey
255        all reasonable orders of the Managers in

connection with the operation of the Managers' safety management system.

5.3 Where the Managers are not providing Technical Management in accordance with sub-clause 3.2, the Owners shall procure that the requirements of the law of the flag of the Vessel are satisfied and that they, or such other entity as may be appointed by them and identified to the Managers, shall be deemed to be the "Company" as defined by the ISM Code assuming the responsibility for the operation of the Vessel and taking over the duties and responsibilities imposed by the ISM Code when applicable.

6. Insurance Policies

The Owners shall procure, whether by instructing the Managers under sub-clause 3.4 or otherwise, that throughout the period of this Agreement:

6.1 at the Owners' expense, the Vessel is insured for not less than her sound market value or entered for her full gross tonnage, as the case may be for:
  (i) usual hull and machinery marine risks (including crew negligence) and excess liabilities;
  (ii) protection and indemnity risks (including pollution risks, and Crew Insurances); and
  (iii) war risks (including protection and indemnity and crew risks) in accordance with the best practice of prudent owners of vessels of a similar type to the Vessel, with first class insurance companies underwriters or associations ("the Owners' Insurances");

6.2 all premiums and calls on the Owners' Insurances are paid promptly by their due date,

6.3 the Owners' Insurances name the Managers and, subject to underwriters' agreement, any third party designated by the Managers as a joint assured, with full cover, with the Owners obtaining cover in respect of each of the insurances specified in sub-clause 6.1:
  (i) ~~on terms whereby the Managers and any such third party are liable in respect of premiums or calls arising in connection with the Owners' Insurances; or~~
  (ii) if reasonably obtainable, on terms such that neither the Managers nor any such third party shall be under any liability in respect of premiums or calls arising in connection with the Owners' Insurances or
  (iii) ~~on such other terms as may be agreed in writing.~~
  Indicate alternative ~~(i), (ii) or (iii) in Box 14.~~ If Box 14 is left blank then (i) applies

6.4 written evidence is provided, to the reasonable satisfaction of the Managers, of their compliance with their obligations under Clause 6 within a reasonable time of the commencement of the Agreement, and of each renewal date and, if specifically requested, of each payment date of the Owners' Insurances.

7. Income Collected and Expenses Paid on Behalf of Owners

7.1 All moneys collected by the Managers under the terms of this Agreement (other than moneys payable by the Owners to the Managers) and any interest thereon shall be held to the credit of the Owners in a separate bank account.

7.2 All expenses incurred by the Managers under the terms of this Agreement on behalf of the Owners (including expenses as provided in Clause 8) may be debited against the Owners in the account referred to under sub-clause 7.1 but shall in any event remain payable by the Owners to the Managers on demand.

8. Management Fee

8.1 The Owners shall pay to the Managers for their services as Managers under this Agreement an annual management fee as stated in Box 15, which shall be payable by equal monthly instalments in advance, the first instalment being payable on the commencement of this Agreement (see Clause 2 and Box 4) and subsequent instalments being payable every month.

8.2 The management fee is fixed (see Box 15) for the first two years and increasing by 5% per year thereafter.

8.3 The Managers shall, at no extra cost to the Owners, provide their own office accommodation, office staff, facilities and stationery. Without limiting the generality of Clause 7 the Owners shall reimburse the Managers for postage and communication expenses, travelling expenses, and other out of pocket expenses properly incurred by the Managers in pursuance of the Management Services.

8.4 In the event of the appointment of the Managers being terminated by the Owners or the Managers in accordance with the provisions of Clauses 17 and 18 other than by reason of default by the Managers, or if the Vessel is lost, sold or otherwise disposed of, the "management fee" payable to the Managers according to the provisions of sub-clause 8.1, shall continue to be payable for a further period of three calendar months as from the termination date. In addition, provided that the Managers provide Crew for the Vessel in accordance with sub-clause 3.1:
(i) the Owners shall continue to pay Crew Support Costs during the said further period of *three calendar months and*
(ii) The Owners shall pay an equitable proportion of any Severance Costs which may materialize, not exceeding the amount stated in Box 16.

8.5 If the Owners decide to lay-up the Vessel whilst this Agreement remains in force and such lay-up lasts for more than three months, an appropriate reduction of the management fee for the period exceeding three months until one month before the Vessel is again put into service shall be mutually agreed between the parties.

8.6 Unless otherwise agreed in writing all discounts and commissions obtained by the

386 Managers in the course of the management of the
387 Vessel shall be credited to the Owners.

388     9.   Budgets and Management of Funds

390 9.1 The Managers shall present to the Owners
391 annually a budget for the following twelve
392 months in such form as the Owners require. The
393 budget for the first year hereof is set out in
394 Annex "C" hereto. Subsequent annual budgets
395 shall be prepared by the Managers and
396 submitted to the Owners not less than three
397 months before the anniversary date of the
398 commencement of this Agreement (see Clause 2
399 and Box 4).

400 9.2 The Owners shall indicate to the Managers
401 their acceptance and approval of the annual
402 budget within one month of presentation and in
403 the absence of any such indication the Managers
404 shall be entitled to assume that the Owners have
405 accepted the proposed budget.

406 9.3 Following the agreement of the budget, the
407 Managers shall prepare and present to the
408 Owners their estimate of the working capital
409 requirement of the Vessel and the Managers
410 shall each month update this estimate, based
411 thereon, the Managers shall each month request
412 the Owners in writing for the funds required to
413 run the Vessel for the ensuing month including
414 the payment of any occasional or extraordinary
415 item of expenditure, such as emergency repair
416 costs, additional insurance premiums, bunkers,
417 or provisions. Such funds shall be received by the
418 Managers within ten running days after the
419 receipt by the Owners of the Managers' written
420 request and shall be held to the credit of the
421 Owners in a separate bank account.

422 9.4 The Managers shall produce a comparison
423 between budgeted and actual income and
424 expenditure of the Vessel in such form as
425 required by the Owners monthly or at such other
426 intervals as mutually agreed.

427 9.5 Notwithstanding anything contained herein
428 to the contrary, the Managers shall in no
429 circumstances be required to use or commit
430 their own funds to finance the provision of the
431 Management Services.

432     10. Managers' Right to Sub-Contract

433 The Managers shall ~~not~~ have the right to sub-
434 contract any of their obligations hereunder,
435 including those mentioned in sub-clause 3.1
436 without the prior written consent of the Owners
437 which shall not be unreasonably withheld. In the
438 event of such a sub-contract, the Managers shall
439 remain fully liable for the due performance of
440 their obligations under this Agreement.

441     11. Responsibilities

442 11.1 Force Majeure - Neither the Owners nor
443 the Managers shall be under any liability for any
444 failure to perform any of their obligations
445 hereunder by reason of any cause whatsoever of
446 any nature or kind beyond their reasonable
447 control.

448 11.2 Liability to Owners –
449     (i)

450     Without prejudice to sub-clause 11.1, the
451     Managers shall be under no liability
452     whatsoever to the Owners for any loss,
453     damage, delay or expense of whatsoever
454     nature, whether direct or indirect,
455     (including but not limited to loss of profit
456     arising out of or in connection with
457     detention of or delay to the Vessel) and
458     howsoever arising in the course of
459     performance of the Management
460     Services UNLESS same is proved to have
461     resulted solely from the negligence, gross
462     negligence or wilful default of the
463     Managers or their employees, or agents
464     or sub-contractors employed by them in
465     connection with the Vessel, in which case
466     (save where loss, damage, delay or
467     expense has resulted from the Managers'
468     personal act or omission committed with
469     the intent to cause same or recklessly
470     and with knowledge that such loss,
471     damage, delay or expense would
472     probably result) the Managers' liability
473     for each incident or series of incidents
474     giving rise to a claim or claims shall never
475     exceed a total of ten times the annual
476     management fee payable hereunder.

477     (ii)     Notwithstanding anything that
478     may appear to the contrary in this
479     Agreement, the Managers shall not be
480     liable for any of the actions of the Crew,
481     even if such actions are negligent, grossly
482     negligent or wilful, except only to the
483     extent that they are shown to have
484     resulted from a failure by the Managers
485     to discharge their obligations under sub-
486     clause 3.1, in which case their liability
487     shall be limited in accordance with the
488     terms of this Clause 11.

489 11.3 Indemnity - Except to the extent and solely
490 for the amount therein set out that the Managers
491 would be liable under sub- clause 11.2, the
492 Owners hereby undertake to keep the Managers
493 and their employees, agents and sub-contractors
494 indemnified and to hold them harmless against all
495 actions, proceedings, claims, demands or
496 liabilities whatsoever or howsoever arising which
497 may be brought against them or incurred or
498 suffered by them arising out of or in connection
499 with the performance of the Agreement, and
500 against and in respect of all costs, losses, damages
501 and expenses (including legal costs and expenses
502 on a full indemnity basis) which the Managers
503 may suffer or incur (either directly or indirectly) in
504 the course of the performance of this Agreement.

505 11.4 "Himalaya" - It is hereby expressly agreed
506 that no employee or agent of the Managers
507 (including every sub - contractor from time to
508 time employed by the Managers) shall in any
509 circumstances whatsoever be under any liability
510 whatsoever to the Owners for any loss, damage or
511 delay of whatsoever kind arising or resulting
512 directly or indirectly from any act, neglect or
513 default on his party while acting in the course of
514 or in connection with his employment and,

without prejudice to the generality of the foregoing provisions in this Clause 11, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Managers or to which the Managers are entitled hereunder shall also be available and shall extend to protect every such employee or agent of the Managers acting as aforesaid and for the purpose of all the foregoing provisions of this Clause 11 the Managers are or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be their servants or agents from time to time (including sub-contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to this Agreement.

## 12. Documentation

Where the Managers are providing Technical Management in accordance with sub-clause 3.2 and/or Crew Management in accordance with sub-clause 3.1, they shall make available, upon Owners' request, all documentation and records related to the Safety Management System (SMS) and/or the Crew which the Owners need in order to demonstrate compliance with the ISM Code and STCW 95 or to defend a claim against a third party.

## 13. General Administration

13.1 The Managers shall notify Owners of all claims arising out of the Management Services hereunder and keep the Owners informed regarding any incident of which the Managers become aware which gives or may give rise to claims or disputes involving third parties.

13.2 The owners shall bring or defend actions, suits or proceedings in connection with matters entrusted to the Managers according to this Agreement.

13.3 The Owners shall obtain legal or technical or other outside expert advice in relation to the handling and settlement of claims and disputes or all other matters affecting the interests respect of the Vessel.

13.4 The Owners shall arrange for the provision of any necessary guarantee bond or other security.

13.5 Any costs reasonably incurred by the Managers in carrying out their obligations according to Clause 13 shall be reimbursed by the Owners.

## 14. Auditing

The Managers shall at all times maintain and keep true and correct accounts and shall make the same available for inspection and auditing by the Owners at such times as may be mutually agreed. On the termination, for whatever reasons, of this Agreement, the Managers shall release to the Owners, if so requested, the originals where possible, or otherwise certified copies, of all such accounts and all documents specifically relating to the Vessel and her operation.

## 15. Inspection of Vessel

The Owners shall have the right at any time after giving reasonable notice to the Managers to inspect the Vessel for any reason they consider necessary.

## 16. Compliance with Laws and Regulations

The Managers will not do or permit to be done anything which might cause any breach or infringement of the laws and regulations of the Vessel's flag, or of the places where she trades.

## 17. Duration of the Agreement

This Agreement shall come into effect on the day and year stated in Box 4 and shall continue until the date stated in Box 17. Thereafter it shall continue until terminated by either party giving to the other notice in writing, in which event the Agreement shall terminate upon the expiration of a period of two months from the date upon which such notice was given.

## 18. Termination

### 18.1 Owners' Default

(i) The Managers shall be entitled to terminate the Agreement with immediate effect by notice in writing if any moneys payable by the Owners under this Agreement and/or ~~the owners of any associated vessel, details of which are listed in Annex "D",~~ shall not have been received in the Managers' nominated account within ten running days of receipt by the Owners of the Manager's written request or if the Vessel is repossessed by the Mortgagees.

(ii) If the Owners:
  (a) fail to meet their obligations under clause 5.2 and 5.3 of this Agreement for any reason within their control, or
  (b) proceed with the employment of or continue to employ the Vessel in the carriage of contraband, blockade running, or an unlawful trade, or on a voyage which in the reasonable opinion of the Managers is unduly hazardous or improper,

The Managers may give notice of the default to the Owners, requiring them to remedy it as soon as practically possible. In the event that the Owners fail to remedy it within a reasonable time to the satisfaction of the Managers, the Managers shall be entitled to terminate the Agreement with immediate effect by notice in writing.

### 18.2 Managers' Default

If the Managers fail to meet their obligations under Clauses 3 and 4 of this Agreement for any reason within the control of the Managers, the Owners may give notice to the Managers of the default, requiring them to remedy it as soon as practically possible. In the event that the Managers fail to remedy it within a reasonable time to the satisfaction of the Owners, the Owners shall be entitled to terminate the Agreement with immediate effect by notice in writing.

### 18.3 Extraordinary Termination

This Agreement shall be deemed to be terminated in the case of the sale of the Vessel or if the Vessel becomes a total loss or is declared as a

644 constructive or compromised or arranged total
645 loss or is requisitioned.
646 18.4 For the purpose of sub-clause 18.3 hereof
647 (i) the date upon which the Vessel is to be
648 treated as having been sold or otherwise
649 disposed of shall be the date on which the
650 Owners cease to be registered as Owners
651 of the Vessel;
652 (ii) the Vessel shall not be deemed to be lost
653 unless either she has become an actual
654 total loss or agreement has been reached
655 with her underwriters in respect of her
656 constructive, compromised or arranged
657 total loss or if such agreement with her
658 underwriters is not reached it is adjudged
659 by a competent tribunal that a
660 constructive loss of the Vessel has
661 occurred.
662 18.5 This Agreement shall terminate forthwith in
663 the event of an order being made or resolution
664 passed for the winding up, dissolution, liquidation
665 or bankruptcy of either party (otherwise than for
666 the purpose of reconstruction or amalgamation)
667 or if a receiver is appointed, or it if suspends
668 payment, ceases to carry on business or makes
669 any special arrangement or composition with its
670 creditors.
671 18.6 The termination of this Agreement shall be
672 without prejudice to all rights accrued due
673 between the parties prior to the date of
674 termination.
675 19. Law and Arbitration
676 19.1 This Agreement shall be governed by and
677 construed in accordance with English law and any
678 dispute arising out of or in connection with this
679 Agreement shall be referred to arbitration in
680 London in accordance with the Arbitration Act
681 1996 or any statutory modification or re-
682 enactment thereof save to the extent necessary
683 to give effect to the provisions of this Clause. The
684 arbitration shall be conducted in accordance with
685 the London Maritime Arbitrators Association
686 (LMAA) Terms current at the time when the
687 arbitration proceedings are commenced.
688 The reference shall be to three arbitrators. A
689 party wishing to refer a dispute to arbitration shall
690 appoint its arbitrator and send notice of such
691 appointment in writing to the other party
692 requiring the other party to appoint its own
693 arbitrator within 14 calendar days of that notice
694 and stating that it will appoint its arbitrator as
695 sole arbitrator unless the other party appoints its
696 own arbitrator and gives notice that it has done so
697 within the 14 days specified. If the other party
698 does not appoint its own arbitrator and give
699 notice that it has done so within the 14 days
700 specified, the party referring a dispute to
701 arbitration may, without the requirement of any
702 further prior notice to the other party, appoint its
703 arbitrator as sole arbitrator and shall advise the
704 other party accordingly. The award of a sole
705 arbitrator shall be binding on both parties as if he
706 had been appointed by agreement.
707 Nothing herein shall prevent the parties agreeing
708 in writing to vary these provisions to provide for
709 the appointment of a sole arbitrator.
710 In cases where neither the claim nor any
711 counterclaim exceeds the sum of USD 50,000 (or
712 such other sum as the parties may agree) the
713 arbitration shall be conducted in accordance with
714 the LMAA Small Claims Procedure current at the
715 time when the arbitration proceedings are
716 commenced.
717 19.2 ~~This Agreement shall be governed by and~~
718 ~~construed in accordance with Title 9 of the~~
719 ~~United States Code and the Maritime Law of the~~
720 ~~United States and any dispute arising out of or in~~
721 ~~connection with this Agreement shall be referred~~
722 ~~to three persons at New York, one to be~~
723 ~~appointed by each of the parties hereto, and the~~
724 ~~third by the two so chosen; their decision that of~~
725 ~~any two of them shall be final, and for the~~
726 ~~purposes of enforcing any award, judgment may~~
727 ~~be entered on an award by any court of~~
728 ~~competent jurisdiction. The proceedings shall be~~
729 ~~conducted in accordance with the rules of the~~
730 ~~Society of Maritime Arbitrators, Inc. In cases~~
731 ~~where neither the claim not any counterclaim~~
732 ~~exceeds the sum of USD 50,000 (or such other~~
733 ~~sum as the parties may agree) the arbitration~~
734 ~~shall be conducted in accordance with the~~
735 ~~Shortened Arbitration Procedure of the Society~~
736 ~~of Maritime Arbitrators, Inc. current at the time~~
737 ~~when the arbitration proceedings are~~
738 ~~commenced.~~
739 19.3 This Agreement shall be governed by and
740 construed in accordance with the laws of the
741 ~~place mutually agreed by the parties and any~~
742 ~~dispute arising out of or in connection with this~~
743 ~~Agreement shall be referred to arbitration at a~~
744 ~~mutually agreed place, subject to the procedures~~
745 ~~applicable there.~~
746 19.4 If Box 18 in Part I is not appropriately filled
747 in, sub-clause 19.1 of this Clause shall apply.
748 Note: 19.1, 19.2 and 19.3 are alternatives;
749 indicate alternative agreed in Box 18.
750 20. Notices
751 20.1 Any notice to be given by either party to the
752 other party shall be in writing and may be sent
753 by fax, telex, registered or recorded mail or by
754 personal service.
755 20.2 The address of the Parties for service of
756 such communication shall be as stated in Boxes
757 19 and 20, respectively.

ANNEX "A" (DETAILS OF VESSEL OR VESSELS) TO THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO) STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

| | |
|---|---|
| NAME OF VESSEL: | ADVANTAGE ARROW |
| OWNER: | ADVANTAGE ARROW SHIPPING LLC |
| IMO no: | 9419448 |
| Type: | Oil Tanker / Double Hull |
| Built: | 2009 - SAMSUNG HEAVY INDUSTRIES CO. LTD. KOJE, KOREA |
| Class: | Det Norske Veritas |
| Tonnage: | 61341 GT / 35396 NT |
| Deadweight: | 115804 mt |
| LOA: | 240,63 mtrs |
| Breadth: | 43,80 mtrs |
| Main Engine: | MAN B&W 6S60MC-C, 13560 kW @ 105 RPM |
| Auxilliary Boilers: | KANGRIM PB-25 25000 kg/hr 6/16 kg/cm2 |

ANNEX "B" (DETAILS OF CREW) TO THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO) STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement : As mentioned in box 1
Detail of Crew : 25 Crew Members in total
Contract Duration : abt 4 months Senior Officers
abt 5 -7 months Junior Officers,
abt 6 months Ratings

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | Master | Turkish |
| 1 | Chief Officer | Turkish |
| 1 | 2nd Officer | Turkish |
| 1 | 3rd Officer | Turkish |
| 1 | 4th Officer | Turkish |
| 1 | Extra Officer | Turkish |
| 1 | Chief Engineer | Turkish |
| 1 | 2nd Engineer | Turkish |
| 1 | 3rd Engineer | Turkish |
| 1 | 4th Engineer | Turkish |
| 1 | Elect. Eng. | Turkish |
| 1 | Pumpman | Turkish |
| 5 | Able Seaman | Turkish |
| 2 | Ordinary Seaman | Turkish |
| 1 | Fitter | Turkish |
| 3 | Oiler | Turkish |
| 1 | Chief Cook | Turkish |
| 1 | Steward | Turkish |

This complement is for standard trade. In case of Special requirements (STS, Storage etc.) the complement may be adopted accordingly.

D02413

ANNEX "C" (BUDGET) TO THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO) STANDARD SHIP MANAGEMENT AGREEMENT - CODE NAME: "SHIPMAN 98"

Date of Agreement : 10 FEBRUARY 2015

Manager's Budget for the first year with the effect from the commencement date of this agreement:
Please refer to operating Expense budget with detailed break down of the operating expenses

Estimated budget for 2015 in USD for MT ADVANTAGE ARROW

|  | Budget in USD Perday |
| --- | --- |
| Crewing | 4,400 |
| Victualing | 250 |
| Luboil | 500 |
| Technical | 1,000 |
| Insurance and other miscellaneous items | 1,100 |
| G&A - inclusive of management fees | 1,000 |
| Total | 8,250 |

Remarks:
Crewing is based on complement of 25 crew members with Turkish officers & ratings.
Luboil based on 270 seagoing days and on today's prices.
Technical expenses include all costs for stores , spares services,class for engine and deck department
General include all costs for ; communication,represantations,travelling,vetting,transportation,ISM/ISPS,port expenses.
Excluding dry docking and related costs.

D02414