JOHN D. GIFFIN, CASB No. 89608
john.giffin@kyl.com
VALERIE I. HOLDER, CASB No. 326667
valerie.holder@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Specially Appearing Defendants
ADVANTAGE SPRING SHIPPING, LLC, ADVANTAGE TANKERS, LLC, and FLEETSCAPE SPRING LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PSARA ENERGY, LTD., Plaintiff, vs. SPACE SHIPPING LTD., GEDEN HOLDINGS LTD.; ADVANTAGE SPRING SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. A/K/A GEDEN LINES; ADVANTAGE TANKERS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; TUGRUL TOKGOZ; MEHMET MAT; FLEETSCAPE SPRING, LLC; FLEETSCAPE ADVANTAGE HOLDINGS, LLC, Defendants. | Case No. 3:20-cv-04102-WHO<br>**IN ADMIRALTY**<br>**RESTRICTED APPEARANCE PURSUANT TO RULE E(8)**<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ADVANTAGE DEFENDANTS' MOTION TO VACATE MARITIME ATTACHMENT AND RELATED ORDERS SUPPLEMENTAL ADMIRALTY RULE E(4)(f)**<br>Date: June 26, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H Orrick |

///

///

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..... 3

I. SUMMARY OF ARGUMENT ..... 5

II. EXPEDITED HEARING UNDER ADMIRALTY AND MARITIME LR E 4-8 ..... 6

III. STATEMENT OF FACTS ..... 7

A. THE UNDERLYING DISPUTE ..... 7

B. THE TEXAS ACTION AND LOUISIANA ACTION ..... 7

IV. ARGUMENT ..... 8

A. PLAINTIFF'S ATTEMPT TO OBTAIN *EX PARTE* SECURITY IS INCONSISTENT WITH THE PURPOSE OF RULE B ATTACHMENT. ..... 9

B. PLAINTIFF FAILED TO SHOW THAT THERE WAS A FRAUDULENT TRANSFER OR THAT ADVANTAGE DEFENDANTS ARE THE ALTER EGO OF SPACE AND/OR GEDEN HOLDINGS. ..... 10

C. EQUITABLE VACATUR IS APPROPRIATE BECAUSE PLAINTIFF OBTAINED SECURITY IN THE LOUISIANA ACTION AND THE TEXAS ACTION. ..... 12

D. PLAINTIFF SHOULD BE SANCTIONED FOR PURSUING YET ANOTHER ABUSIVE ATTACHMENT PROCEEDING. ..... 13

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2nd Cir. 2006) ....................13

*Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*,
622 F. Supp. 2d 46 (S.D.N.Y. 2009) ....................12

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
528 F.Supp.2d 197 (S.D.N.Y. 2007) ....................7

*Chan v. Soc'y Expeditions*,
123 F.3d 1287 (9th Cir. 1997) ....................11

*Chemoil Corp. v. M/V Darya Vishnu*,
No. C13-5494 RBL, 2013 U.S. Dist. LEXIS 171841
(W.D. Wash. Dec. 5, 2013) ....................14

*Chiquita Int'l, Ltd. v. MV Bosse*,
518 F. Supp. 2d 589 (S.D.N.Y. 2007) ....................10

*Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*,
792 F.3d 564 (5th Cir. 2015) ....................14

*Equitorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*,
591 F.3d 1208 (9th Cir. 2010) ....................8

*Frontier Fruit Co. v. Dowling*,
91 F.2d 293, 1937 A.M.C. 1259 (5th Cir. 1937) ....................14

*Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corp*.,
2007 WL 4258238, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. Dec. 4, 2007) ....................7

*Kite Shipping LLC v. San Juan Navigation Corp.*,
2012 U.S. Dist. LEXIS 182358 (S.D. Cal. Dec. 26, 2012) ....................11

*Maersk, Inc. v. Neewra, Inc*.,
443 F. Supp. 2d 519 (S.D.N.Y. 2006) ....................9

*Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*,
817 F.3d 241 (5th Cir. 2016) ....................9

*MS TAGA BAY v. SA Independent Liner Services Pty Ltd.*,
2009 U.S. Dist. LEXIS 64639 (S.D.N.Y. 2009) ....................11

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, No. 06 Civ. 5296, 2006 U.S. Dist. LEXIS 60771, 2006 WL 2474869 (S.D.N.Y. Aug. 28, 2006) ....................10

*Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963) ....................9

*Transfield ER Cape Ltd. v. STX Pan Ocean Co. Ltd.*, 2009 WL 691273, 2007 U.S. Dist. LEXIS 21185, 2009 A.M.C. 1284 (S.D.N.Y. Mar. 17, 2009) ....................7

*Vitol v. Capri Marine, Ltd.*, 2010 U.S. Dist. LEXIS 143095 (D. Md. Dec. 23, 2010) ....................12

*Vitol v. Capri Marine, Ltd.*, 2011 U.S. Dist. LEXIS 132206 (D. Md. Aug. 3, 2011) ....................12

**FEDERAL STATUTES AND RULES**

Fed. R. Civ. P. Supp.

Rule E(4)(f) ....................6

Rule E(4)(f) ....................6

Rule E(8) ....................5

The following memorandum is submitted on behalf of Advantage Spring Shipping, LLC; Advantage Tankers, LLC; and Fleetscape Spring, LLC. ("Advantage Defendants"), with full reservation of rights and subject to its Restricted Special Appearance pursuant to Rule E(8).

**I.**

**SUMMARY OF ARGUMENT**

Plaintiff is engaging an in improper *ex parte* campaign to attach assets of innocent third parties to support an apparent claim against another shipping company which is subject to binding arbitration in London. Indeed, this attachment is Plaintiff's ***third*** attempt at obtaining up to $19 million in security for its alleged claims. Plaintiff has already commenced proceedings in the Eastern District of Texas and the Eastern District of Louisiana against the same defendants and based upon the same claims and allegations.[1] *See* ED TX Case No. 18-cv-00178-MAC-ZJH ("Texas Action"); *See also* ED LA Case No. 18-cv-04111-ILRL-JCW ("Louisiana Action"). The Louisiana Action was subsequently consolidated into the Texas Action, which remains active and ongoing.

In 2018, the Court in the Texas Action rejected Plaintiff's contention that it was entitled to $19 million in security for its claims, but did set substitute security at $4,000,000. (*See* Declaration of Marc Matthews ("Matthews Decl.") at ¶ 4; Exh. C). On the same date that Plaintiff filed the Texas Action, it filed the Louisiana Action seeking attachment of a different vessel for the same claims and allegations. (Matthews Decl. at ¶ 6). The judge in the Louisiana Action, referring to the findings in the Texas Action, similarly found that Plaintiff was ***not*** entitled to the $19 million security requested, but did set $800,000 substitute security for towage which was not included in the security set in the Texas Action. (*Id*.; Exh. E). All security ordered by the two courts has been posted by the Defendants. (Matthews Decl. at ¶¶ 5, 9; Exhs. D & G). Despite receiving a warning from Judge Lemelle in the Louisiana Action that he did not want to "see a series of attachments because you want additional security and the reason you want additional security is because you got a magistrate's ruling that didn't give you the valuation you thought you should get," Plaintiff now comes

---

[1] Defendants note that the named defendants in each of the three actions are virtually identical except for the change in owner of the vessel subject to attachment.

to this Court and seeks just over $17mm in security for the same claims and allegations. (ECF No. 1 at p. 32). While Plaintiff acknowledges that it has already obtained $4.8mm in security, it fails to adequately articulate why it is entitled to any further security, especially after two courts have already denied its request for $19mm in security, and fails to provide details or even mention those prior denials. Indeed, Plaintiff's only passing comment as to its current attachment and additional security sought is because the vessel involved in the underlying the dispute was sold for scrap, but Plaintiff fails to include any documents evidencing that sale or any additional losses arising from the sale. (ECF No. 1 at ¶ 39, fn. 3). Furthermore, Plaintiff fails to state why it cannot and has not requested increased security in the still pending Texas Action. Plaintiff is actively litigating its claims against Advantage Defendants, and has already received security from Advantage Defendants − it cannot now go into another jurisdiction and attach another vessel as additional security for those same claims.

The courts in the Texas Action and the Louisiana Action have already assessed Plaintiff's claims and found that it was not entitled to $19mm in security. Plaintiff brings virtually the same claims and allegations against virtually the same defendants (the additional defendants having no impact on the size of the claim and therefore the security sought) in a ***third attempt***, in a ***third jurisdiction***, to obtain the ever elusive $19mm in security. This Court should deny Plaintiff's request and hold Plaintiff in contempt of court for its acts of bad faith.

## II.

## <u>EXPEDITED HEARING UNDER ADMIRALTY AND MARITIME LR E 4-8</u>

Federal Admiralty Rule E(4)(f) and Local Rule E 4-8 expressly provide for a prompt hearing on a motion to vacate attachment given the extraordinary remedy of a pre-judgment attachment afforded to the plaintiff on an *ex parte* basis. *See* Fed. R. Civ. P. Supp. Adm. Rule E(4)(f). The Northern District of California local rule E 4-8 provides that "[t]he adversary hearing following arrest or attachment or garnishment that is called for in Fed. R. Civ. P. Supp. E(4)(f) shall be conducted upon 3 court days written notice to plaintiff, unless otherwise ordered."

Defendants hereby request that this Court hear their Motion to Vacate Writ of Attachment under Supplemental Admiralty Rule E (4)(f) as soon as possible but no later than June 26, 2020.

## III.

## STATEMENT OF FACTS

### A. THE UNDERLYING DISPUTE.

This lawsuit arises out of the charter of the M/T CV STEALTH ("STEALTH"). Psara Energy, Ltd. ("Psara" or "Plaintiff") is the registered owner of the STEALTH. ECF No. 1 ¶ 2. The vessel was bareboat chartered to Defendant Space Shipping, Ltd. ("Space"). *Id*. at ¶ 3. Space subsequently time chartered the vessel to ST Shipping & Transport Pte. Ltd. *Id*. at ¶ 21.The vessel was detained by authorities in Venezuela in September 2014, and held for several years. *Id*. at ¶ 22-23. Prior to the STEALTH's release by the Venezuelan authorities, Psara commenced binding arbitration in London against Space.[2] *Id*. at ¶ 25. Sometime in October 2017, the Venezuelan authorities released the STEALTH, but she was unable to sail and was towed to the Port of Spain, Trinidad *Id*. at ¶ 27. Following the vessel's release, Psara alleged that the vessel was in dilapidated condition, in violation of the bareboat charter which required the vessel to be re-delivered to Psara "in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted." *Id*. at ¶¶ 27-29.

### B. THE TEXAS ACTION AND LOUISIANA ACTION.

On or about April 20, 2018, Plaintiff filed identical Verified Complaints in the Texas Action and the Louisiana Action. (Matthews Decl. at ¶ 2; Exhs. A & B). Through those actions, Plaintiff attached the M/T ADVANTAGE ARROW in Texas and the M/V ADVANTAGE START in Louisiana. (Matthews Decl. at ¶¶ 3, 6). In both cases, Plaintiff sought in excess of $18mm in security. (*Id.*) On April 26, 2018, Defendants filed a Motion to Vacate Attachment in the Texas Action, and on May 4, 2018, the Court, finding Plaintiff's claims grossly overstated, set substitute security at $4mm.

---

[2] Plaintiff fails to provide full disclosure to this Court as to the status of the Texas Action, which is an ongoing substantive action regarding the merits of Plaintiff's claims. Plaintiff has thus breached the heightened duty of disclosure imposed in Rule B attachment actions. *Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corp*., 2007 WL 4258238 at 2, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. Dec. 4, 2007) ("In an *ex parte* proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party are correspondingly greater.")(citations omitted); *see also, Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F.Supp.2d 197, 201 (S.D.N.Y. 2007)(citation omitted); *Transfield ER Cape Ltd. v. STX Pan Ocean Co. Ltd*., 2009 WL 691273 *4, 2007 U.S. Dist. LEXIS 21185, 2009 A.M.C. 1284 (S.D.N.Y. Mar. 17, 2009).

(Matthews Decl. at ¶ 4). On May 11, 2018, a Motion to Vacate Attachment was filed in the Louisiana Action, and on May 18, 2018, the Court entered an order setting substitute security at $800,000. (Matthews Decl. at ¶¶ 6-7; Exh. E). The Court in the Louisiana Action reviewed and considered the decision previously entered in the Texas Action, considered the order of the Texas Action to be the "law of the case," and found it adequately addressed security for Plaintiff's claims, save for an additional $800,000 for towage that was not included in the security set in the Texas Action. (Matthews Decl. at ¶ 8; Exh. F). On July 24, 2018, the Louisiana Action and the Texas Action were consolidated and continue to be litigated in the Texas Action. (Matthews Decl. at ¶¶ 10-11).

## IV.

## ARGUMENT

To sustain a Rule B writ of attachment, Plaintiff must allege and show: (1) a valid prima facie admiralty claim against each defendant; (2) defendants cannot be found within the district; (3) property of the defendants can be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Equitorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010). Here, Plaintiff seeks to attach property allegedly belonging to the Advantage Defendants, for a third time, and after not finding success in its alter ego/piercing the corporate veil theory in prior matters, now claims fraudulent transfer, which is in essence the same claim.

The attachment of the M/T ADVANTAGE SPRING must be vacated. First, Plaintiff's attempt to obtain supplemental security through this action is inconsistent with the purpose of a Rule B attachment. Second, Plaintiff cannot satisfy its burden to show that the Advantage Defendants are the alter ego of Space and Geden Holdings, or that a fraudulent transfer occurred. Furthermore, as to some of the named Defendants, in 2016 Magistrate Francis Stacey in the Southern District of Texas already found that there was insufficient evidence to prove beyond a preponderance of the evidence that the Advantage Defendants are the alter ego of Geden Holdings.

///

///

### A. <u>PLAINTIFF'S ATTEMPT TO OBTAIN *EX PARTE* SECURITY IS INCONSISTENT WITH THE PURPOSE OF RULE B ATTACHMENT</u>.

Rule B allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant. *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016)(internal citations omitted). The rule has two purposes: (1) to secure a respondent's appearance and (2) to assure satisfaction in case the suit is successful. *Id*; *See also Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963). Courts have "inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff." *Maersk, Inc. v. Neewra, Inc*., 443 F. Supp. 2d 519, 528 (S.D.N.Y. 2006).

Here, Plaintiff has already obtained security from the Advantage Defendants in the Texas Action and the Louisiana Action totaling $4.8mm. Plaintiff's attempt at obtaining further security for its claims is inappropriate and inconsistent with the purpose of Rule B. The purpose of Rule B has already been fulfilled through the Texas Action and Louisiana Action. Furthermore, because the litigation is ongoing in the Texas Action (the Louisiana Action was consolidated into the Texas Action) there is no risk of the *res* or the Defendant disappearing over the horizon. Plaintiff does not need a ***third*** attachment here to maintain a link to the Defendants. It already has one. As stated by the Honorable Judge Lemelle in the Louisiana Action:

> I just hate to see a series of attachments because you want additional security and the reason you want additional security is because you got a magistrate's ruling that didn't give you the valuation you thought you should get on fair value of the so-called "wreck," when the other recourse, the natural recourse, would appear to me to have been an appeal or reconsideration of that ruling. And that would have been easy by simply appealing the record to the district judge.

(Matthews Decl. at ¶ 2; Exh. F at p. 26:16-24). Unfortunately, Defendants now find themselves in the exact situation Judge Lemelle warned against – pursuing yet another baseless attachment as part of an ongoing attempt to get a new answer to a question that has already been resolved.

Instead, to the extent Plaintiff believes it is entitled to additional security as a result of the subsequent scrap sale of the STEALTH, it should petition the Court in the Texas Action for

increased security.[3] It has not done so. (Matthews Decl. at ¶ 12).; *see also Chiquita Int'l, Ltd. v. MV Bosse*, 518 F. Supp. 2d 589, 597 (S.D.N.Y. 2007) ("Essentially, Bosse abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related *Chiquita* action arising out of the same facts and between the same parties.")[4]; *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, No. 06 Civ. 5296, 2006 U.S. Dist. LEXIS 60771, 2006 WL 2474869, at *2 (S.D.N.Y. Aug. 28, 2006) (improper for the plaintiff to obtain *ex parte* security when an earlier case arising out of the same event, between the same parties, and before the same court, was still pending).

For this reason alone, this Court should vacate the attachment and dismiss this action.

## B. PLAINTIFF FAILED TO SHOW THAT THERE WAS A FRAUDULENT TRANSFER OR THAT ADVANTAGE DEFENDANTS ARE THE ALTER EGO OF SPACE AND/OR GEDEN HOLDINGS.

After not finding the success it sought on its claim of alter ego/piercing the corporate veil, Plaintiff has renamed its claim here to one of fraudulent transfer/successor liability. Whether Plaintiff claims alter ego or successor liability is irrelevant. Indeed, Plaintiff's successor liability claim appears to be nothing more than a species of its alter ego claim. What is relevant, and controlling, is that Plaintiff's claims are already being actively litigated in the Texas Action. To the extent it does have a new and separate claim for fraudulent transfer/successor liability, that claim should be pursued in the Texas Action and before the court that has retained jurisdiction over this matter. Furthermore, the courts in ***both*** Texas and Louisiana have considered Plaintiff's claims and determined that it is not entitled to $19mm in security. The Advantage Defendants have already

[3] Defendants do not suggest that Plaintiff is or would be entitled to the increased security should it petition for it in the Texas Action, but rather that is the appropriate avenue through which Plaintiff should address its request.

[4] *See Id*. at 599. "The purpose of a maritime attachment is to "secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory." GWF, however, was not an "absent party," and securing jurisdiction was unnecessary considering the pending *Chiquita* action. Given Bosse's knowledge of the pending *Chiquita* action, seeking an *ex parte* order of attachment in the *Bosse* action was an improper practice and showed a want of equity on the part of Bosse." (citations omitted). Here, Plaintiff has already obtained jurisdiction and security in the consolidated Texas Action. Plaintiff is fully aware of and actively prosecuting the Texas Action, and was entirely capable of seeking additional security in that forum if it deemed it proper to do so. Instead, it attached yet another vessel in California in an unsubtle, abusive attempt to bypass the rulings in the Texas and Louisiana Actions.

posted the security determined to be appropriate by the courts in Louisiana and Texas and it should not be subject to Plaintiff taking a third bite at the apple.

Despite the change in name, Plaintiff's claim boils down to one of alter ego. Plaintiff has failed to meet its burden of alleging facts showing that the Advantage Defendants are the alter ego of Space and/or Geden Holdings, such that the Advantage Defendants' own separate assets can be attached and held hostage for potential debts of Space and/or Geden Holdings. Absent extraordinary circumstances, corporate separateness is to be respected. "[D]isregard of corporate separateness requires that the controlling corporate entity exercise total dominion of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Chan v. Soc'y Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997). Piercing the veil is the rare exception, not the rule. Federal courts in admiralty will pierce the corporate veil only where "a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Id*. Allegations of common ownership are insufficient. *Id*; *MS TAGA BAY v. SA Independent Liner Services Pty Ltd.*, 2009 U.S. Dist. LEXIS 64639 at *7 (S.D.N.Y. 2009). "Actual dominion, rather than the opportunity to exercise control, must be shown." *Id*. at *8 (*citing De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69-70 (2nd Cir. 1996).

Alleging various companies to be interconnected, as Plaintiff has done, is not enough to pierce the corporate veil. The Southern District of California addressed this issue in *Kite Shipping LLC v. San Juan Navigation Corp.*, 2012 U.S. Dist. LEXIS 182358, *18-11 (S.D. Cal. Dec. 26, 2012). In that case, the plaintiff sought to hold one company liable for another's debts based upon the relationship of other entities in the same conglomerate. The court granted vacatur, noting that the plaintiff offered only rank speculation that the owner of the property and the party against whom it had a claim were alter egos. *Id*. at *14; *see also Vitol v. Capri Marine, Ltd.*, 2010 U.S. Dist. LEXIS 143095 at *12-13 (D. Md. Dec. 23, 2010) (Vitol I) (allegations that companies are "interconnected" insufficient to support alter ego attachment; plaintiff carries burden of showing actual domination or control by the defendant); *Vitol v. Capri Marine, Ltd.*, 2011 U.S. Dist. LEXIS 132206 at *21 (D. Md. Aug. 3, 2011) (Vitol II).

Courts evaluate a number of factors to determine whether the application of an alter ego theory is appropriate: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the alleged dominated corporation; (7) whether the dealings between the entities are at arms' length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009) (conclusory allegations of dominion and control without any factual support are insufficient to sustain alter ego theory).

Plaintiff's Verified Complaint fails to allege facts to plausibly support a finding that the Advantage Defendants are the alter ego of Space and/or Geden Holdings. Plaintiff's allegations are merely conclusory recitations of the elements and because it will not be able to satisfy its burden the attachment should be vacated and the Verified Complaint dismissed.

### C. EQUITABLE VACATUR IS APPROPRIATE BECAUSE PLAINTIFF OBTAINED SECURITY IN THE LOUISIANA ACTION AND THE TEXAS ACTION.

As noted above, Plaintiff has already obtained $4.8 million in security for its alleged claims in the Louisiana Action and the Texas Action. Instead of seeking supplemental security through its already ongoing litigation in the Texas Action, Plaintiff remarkably attaches another asset of the Advantage Defendants, seeks the same near $18 million in security in another jurisdiction and outside of the view of the Texas court.

Furthermore, Magistrate Francis Stacey in the Southern District of Texas, in *Tank Punk, Inc. v. Spike Shipping, Ltd., Advantage Arrow Shipping, LLC et al*, Case No. 15-1645, already found that a claim of alter ego fails as to some of the Defendants in this case. In that case, the attachment of the M/V ADVANTAGE ARROW "was based on an alter ego/piercing the corporate veil theory that Geden Holdings Ltd., by and through its principal, Mehmet Emin Karamehmet, is one and the same as the Advantage Defendants, thereby justifying the attachment of the Advantage

Defendants' property to satisfy and/or provide security for claims against Geden Holdings, Ltd." (Matthews Decl. at ¶ 2, Exh. A, p.2). There, after the parties had conducted extensive discovery into the alter ego issue, the Magistrate ultimately found that the plaintiff was unable to meet its burden and prove by a preponderance of the evidence on their alter ego/piercing the corporate veil allegations and the Rule B attachment was vacated.[5]

The Court should vacate the attachment based on equitable grounds where a Plaintiff has already obtained security for its claims and where a Magistrate judge has already determined that a claim for alter ego/piercing the corporate veil cannot be sustained. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir. 2006) (court should vacate writ of attachment where plaintiff has already obtained security for the potential judgment). Plaintiff has not shown that the security it already obtained is insufficient, nor has it attempted to increase its security within the Texas Action.

**D. <u>PLAINTIFF SHOULD BE SANCTIONED FOR PURSUING YET ANOTHER ABUSIVE ATTACHMENT PROCEEDING</u>.**

Plaintiff's filing of the present Verified Complaint and subsequent attachment of the M/T ADVANTAGE SPRING was done maliciously, in bad faith, and warrants the imposition of sanctions. Plaintiff has now filed **three** actions in three separate jurisdictions all seeking security for the same claim, which amounts to roughly $19 million. Despite the fact that two courts, in Texas and Louisiana, already reviewed Plaintiff's allegations and denied that it was entitled to $19 million in security, Plaintiff filed a nearly identical Verified Complaint in this Court and attached the vessel. Even worse, Plaintiff's litigation in the Texas Action for the same claims as alleged here, remains ongoing. Plaintiff has not only intentionally and maliciously interfered with Defendants' business by attaching its vessel, which will result in the loss of tens of thousands of dollars each day, but it blatantly abused the extraordinary *ex parte* process plaintiffs are entitled to under Admiralty Rule B. Plaintiff failed to pursue the appropriate avenue available to it to obtain the increased security by petitioning the Texas court. (*See* Matthews Decl., ¶ 12).

[5] This finding was never adopted by the court because the parties settled the matter in the interim.

As stated by the Fifth Circuit Court of Appeals in *Frontera Fruit Co. v. Dowling*:

> The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party. The reasons for the award of damages are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith with malice, or through a wanton disregard of the legal rights of his adversary.

91 F.2d 293, 1937 A.M.C. 1259 (5th Cir. 1937); *see also Chemoil Corp. v. M/V Darya Vishnu*, No. C13-5494 RBL, 2013 U.S. Dist. LEXIS 171841, at *7 (W.D. Wash. Dec. 5, 2013); *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 576 (5th Cir. 2015).

Here, Plaintiff has used Admiralty Rule B, and the filing of this action, as a means to harass Defendants into providing it with supplemental security, which request has already been denied by two courts. Because the Texas Action remains open and is actively being litigated, Plaintiff should have pursued its request for additional security there, rather than going to another jurisdiction and attaching yet another one of Defendants' vessels. Plaintiff's actions are not only an improper use of the Admiralty Rules, but an abuse of the rules. Plaintiff must be sanctioned for its actions. Defendants seek leave of the court to submit a calculation of their damages resulting from the wrongful attachment of the ADVANTAGE SPRING, which damages are continuing and increasing with each day the ship is held

## V.

## CONCLUSION

For these reasons, specially appearing Defendants respectfully request that the Court vacate the writ of attachment issued against the M/V ADVANTAGE SPRING.

DATED: June 24, 2020

*/s/ John D. Giffin* ____________________________

JOHN D. GIFFIN
VALERIE I. HOLDER
KEESAL, YOUNG & LOGAN
Attorneys for Specially Appearing Defendants
ADVANTAGE SPRING SHIPPING, LLC,
ADVANTAGE TANKERS, LLC,
and FLEETSCAPE SPRING LLC