UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS (BEAUMONT)

| | |
|---|---|
| PSARA ENERGY, LTD.,<br><br>        Plaintiff,<br><br>  v.<br><br>SPACE SHIPPING, LTD.; GEDEN HOLDINGS, LTD.; ADVANTAGE SPRING SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES; ADVANTAGE TANKERS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; TUGRUL TOKGOZ; MEHMET MAT; FLEETSCAPE SPRING, LLC; and FLEETSCAPE ADVANTAGE HOLDINGS, LLC,<br><br>        Defendants. | 1:20-cv-00293-MAC |

**DEFENDANT FLEETSCAPE SPRING, LLC'S
MOTION FOR RELIEF OF ORDER DENYING
<u>MOTION TO VACATE ATTACHMENT</u>**

Fleetscape Spring, LLC ("Fleetscape"), owner of the M/T ADVANTAGE SPRING (the "Vessel"), pursuant to its restricted appearance under Supplemental Rule E(8), moves this Court for relief under Federal Rule of Civil Procedure 60(b) of the California district court's Order denying the Motion to Vacate Attachment issued for the Vessel ADVANTAGE SPRING (the "Order").[1]

---
[1] *See* California Civ. No. 3:20-cv-04102 at ECF 31.

## **PRELIMINARY STATEMENT**

This Court should reconsider the California District Court's denial of the Motion to Vacate the Attachment of the Vessel because the denial was based on manifest errors of law and fact. Specifically, the Court erroneously held Plaintiff Psara Energy, Ltd.'s ("Plaintiff") wholly inadequate fraudulent transfer allegations against Fleetscape were sufficient to form the basis of a valid maritime claim under Supplemental Admiralty Rule B. Not so.

*First*, the Court denied the Motion to Vacate Attachment on the basis that the California lawsuit is **virtually identical** to the Texas and Louisiana Actions, ECF 31 at p. 1, but failed to engage in any analysis of the law or the facts alleged in the Complaint to determine whether Plaintiff actually met its burden under Rule B. Critically, had the Court done so, it would have noted that Plaintiff's California Complaint is far from "identical" to the Texas and Louisiana Actions. In particular, the most important difference is the fact that the Vessel attached is owned by Fleetscape – a company that has no relationship with Plaintiff, either contractual or otherwise, and is a separate and distinct entity from the defendants in the Texas and Louisiana Actions.

*Second*, Plaintiff's failure to assert a valid maritime claim against Fleetscape is fatal to its Rule B attachment of the Vessel. Plaintiff's fraudulent-transfer claim against Fleetscape is a state law tort claim and not a maritime tort, which supports a maritime attachment under Rule B.

*Third*, Plaintiff's underlying claim is against Space Shipping, Ltd. ("Space") for alleged breach of a bareboat charter party. Space does not own the Vessel nor are there any allegations that Space and Fleetscape are related. Plaintiff attempts to overcome this clear disconnect by alleging assets of Space were ultimately transferred to Fleetscape to defraud Plaintiff. Plaintiff fails in this effort. Indeed, Plaintiff's sole "evidence" for its fraudulent-transfer claim against

2

Fleetscape is an unsupported statement made in an email sent seven years ago, involving a transaction that was wholly unrelated to Fleetscape and the Vessel. This evidence fails to meet the pleading standards under Rule 9(b)[2] and the dictates of *Twombly/Iqbal* and does not establish Fleetscape purchased the Vessel with the actual intent to defraud Plaintiff.

Alternatively, in the event the Court affirms the denial of the Motion to Vacate Attachment, the Court should nevertheless reduce the amount of security that Fleetscape was required to post to release the Vessel because the amount claimed is excessive and, in any event, Plaintiff's claim is already fully secured.

Fleetscape further submits that the Court should grant a preliminary injunction to prevent further attachments of Fleetscape's property.

## BACKGROUND/PROCEDURAL HISTORY

### A.   The Underlying Dispute

This lawsuit arises out of the charter of the M/T CV STEALTH ("STEALTH"). Plaintiff is the registered owner of the STEALTH. The vessel was bareboat chartered to Defendant Space. Space subsequently time chartered the vessel to ST Shipping & Transport Pte. Ltd. The STEALTH was detained by authorities in Venezuela in September 2014, and held for several years. Prior to the STEALTH's release by the Venezuelan authorities, Plaintiff commenced binding arbitration in London against Space. Sometime in October 2017, the Venezuelan authorities released the STEALTH, but she was unable to sail and was towed to Port of Spain, Trinidad. Following the STEALTH's release, Plaintiff alleged that the vessel was in dilapidated condition, in violation of

---

[2] Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for fraud claims, and requires a plaintiff to plead circumstances of fraud with particularity. *See* Fed.R.Civ.P. 9(b).

the bareboat charter which required the vessel to be re-delivered to Plaintiff "in the same or as good structure, state, condition and class as that in which she was delivered, fair wear and tear not affecting class excepted."

      B.    <u>The Texas and Louisiana Actions</u>

On or about April 20, 2018, Plaintiff filed Verified Complaints in the Eastern District of Texas[3] and the Eastern District of Louisiana[4] alleging corporate defendants Advantage Holdings, LLC ("Advantage Holdings") and Advantage Tankers, LLC ("Advantage Tankers") are the successor corporations of defendants Genel Denizcilik Nakliyati A.S. a/k/a Geden Lines ("Geden Lines") and Geden Holdings Ltd. ("Geden Holdings") and/or the assets of Geden Lines and Geden Holdings were fraudulently transferred to Advantage Tankers and Advantage Holdings with the intent to hinder, delay or defraud Plaintiff. Fleetscape is not a party to the Texas and Louisiana Actions.

Through those actions, Plaintiff attached the M/T ADVANTAGE ARROW in Texas and the M/V ADVANTAGE START in Louisiana. In both cases, Plaintiff sought in excess of $18 million in security.

On April 26, 2018, the Geden and Advantage Defendants filed a Motion to Vacate Attachment in the Texas Action,[5] and on May 4, 2018, the Court, finding Plaintiff's claims grossly overstated, set substitute security at $4 million.[6]

---

[3] *See* ED TX Case No. 1:18-cv-00178-MAC-ZJH.
[4] *See* ED LA Case No. 1:18-cv-04111-ILRL-JCW.
[5] *See* Dkt. 7 in 1:18-cv-00178.
[6] *See* Dkt. 18 in 1:18-cv-00178.

On May 11, 2018, a Motion to Vacate Attachment[7] was filed in the Louisiana Action, and on May 18, 2018, the Louisiana Court entered an order[8] setting substitute security at $800,000. The Court in the Louisiana Action reviewed and considered the decision previously entered in the Texas Action, considered the order of the Texas Action to be the "law of the case," and found it adequately addressed security for Plaintiff's claims, save for an additional $800,000 for towage that was not included in the security set in the Texas Action.[9] On July 24, 2018, the Louisiana Action and the Texas Action were consolidated and continue to be litigated in the Texas Action.[10]

    C.    <u>The California Action</u>

Over two years later, on June 19, 2020, Plaintiff filed a Verified Complaint in the Northern District of California[11] seeking to attach Fleetscape's Vessel, the ADVANTAGE SPRING, as additional security for its underlying claim against Space. In the Complaint, Plaintiff alleged the assets of Geden Lines and Geden Holdings were fraudulently transferred to Advantage Tankers and then were fraudulently transferred again from Advantage to Fleetscape.

On June 22, 2020, Judge Orrick granted the Ex Parte Order and authorized the issuance of the process of maritime attachment and garnishment of the Vessel.[12] On June 24, 2020, Advantage Spring Shipping, LLC, Advantage Tankers, LLC, Fleetscape Spring, LLC filed a motion to vacate the attachment.[13] On June 26, 2020, the parties attended a motion hearing before Judge Orrick. Later that same day, Judge Orrick issued an Order denying the motion to vacate.[14]

---

[7] *See* Dkt. 9 in 2:18-cv-04111.
[8] *See* Dkt. 25 in 2:18-cv-04111.
[9] *Id.*
[10] *See* Dkt. 32 in 2:18-cv-04111.
[11] *See* California Civ. No. 3:20-cv-04102-WHO.
[12] *See* Dkt. 19 in 3:20-cv-04102.
[13] *See* Dkt. 24 in 3:20-cv-04102.
[14] *See* Dkt. 33 in 3:20-cv-04102.

On or about July 2, 2020, Defendants Advantage Spring Shipping, LLC, Advantage Tankers, LLC, Advantage Holdings, LLC, and Fleetscape provided a Special Release Bond in the amount of $4,325,000 to Plaintiff and the Vessel was released from attachment.[15]

On July 8, 2020, the case was transferred from the Northern District of California to this Honorable Court for further proceedings.[16]

## LAW AND ARGUMENT

### A. Motion for Reconsideration

#### 1. Standard of Review

Motions requesting reconsideration of court orders generally fall under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Ford v. Troyer*, No. 97-890, 1997 WL 731945, at *1 (E.D. La. Nov. 21, 1997). While the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, "[a]ny motion termed as such will be treated as either a motion to alter or amend the judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b)." *Harrington v. Runyon*, No. 96-60117, 1996 WL 556754, at *1 (5th Cir. Sept. 3, 1996) (*citing Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)).

If a motion for reconsideration is filed within twenty-eight days of the entry of the order being challenged, "it will be treated as a 59(e) motion; if it is filed after [twenty-eight] days, it will be treated as a 60(b) motion." *Id*. (*citing Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 288 (5th Cir. 1989); *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 667-69 (5th Cir.1986)). A Rule 60(b) motion is governed by more exacting substantive requirements than a Rule 59(e) motion. *Lavespere*, 910 F.2d at 174. Because more than twenty-eight days have passed

---

[15] *See* Dkt. 39 in 3:20-cv-04102.
[16] *See* Dkt. 41.

since the Order denying Fleetscape's Motion to Vacate Attachment was issued, the instant Motion is governed by Rule 60(b).

A district court has considerable discretion to grant or deny a motion for reconsideration. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993). In exercising its discretion, the Court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Id*. at 355. Reconsideration "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *see also Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998), *aff'd*, 182 F.3d 353 (5th Cir. 1999). To succeed on the motion, a party must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

The California District Court erred as a matter of law and the June 26, 2020 Order denying the motion to vacate warrants reconsideration because Plaintiff does not possess a valid maritime claim against Fleetscape.

### 2. Relief is Required Because Plaintiff Failed To State A Valid Maritime Claim Against Fleetscape

Rules B and E of the Supplemental Admiralty Rules authorize a court to issue an order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements and can show that (1) plaintiff possesses a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property can be found within the district; and (4) there is no statutory or maritime bar to the attachment. *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (*citing Aqua Stoli*

*Shipping Ltd. v. Gardner Smith Pty Ltd*, 460 F.3d 434, 445 (2d Cir. 2006). To that end, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*, 460 F.3d at 445, n.5.

Here, for the Rule B attachment to be valid, Plaintiff must possess a maritime claim against Fleetscape whose property, the Vessel, is the subject of the attachment order. In actuality, Plaintiff's claim is against Space, for alleged breach of a bareboat charter party. Space does not own the Vessel ADVANTAGE SPRING nor are there any allegations that Space and Fleetscape are related. Despite this clear disconnect, Plaintiff generated a maritime claim against Fleetscape by asserting conclusory allegations that assets of Space were ultimately transferred to Fleetscape to defraud Plaintiff. *See* California Compl. at ¶¶ 74-97.

In admiralty, courts apply federal common law and may look to state law in situations where there is no admiralty rule on point. *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line*, 160 F.3d 170, 176 (4th Cir. 1998). Since there is no admiralty rule on point for fraudulent transfer, the California court should have applied California law to the question of fraudulent transfer. Under the California Uniform Voidable Transactions Act ("UFTA"), a transfer is fraudulent, both as to present and future creditors, if it is made:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>>
>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. Code, § 3439.04 (a).

In addition, since Plaintiff's claim is based on fraud, the allegations in the Complaint must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert denied*, 130 S. Ct. 199, 175 L.Ed.2d 125 (2009) (internal quotation omitted). Further, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)… [and] plaintiffs must set forth specific facts supporting an inference of fraud." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (emphasis in original). *See also Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2009) ("a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Plaintiff fails to meet its burden here.

In the California Complaint, Plaintiff alleges, in relevant part: "the actual notice to and knowledge of Mr. Backer of the likely fraudulent conveyance of the vessels by GEDEN HOLDINGS to ADVANTAGE TANKERS, and the intent with which they did this, *is attributable* to Fleetscape Capital Holdings, Ltd." *See* California Compl. at ¶ 92; emphasis added. To support this allegation, Plaintiff quotes an email from the acting Managing Director and Head of Shipping & Offshore at ICON Investments ("'ICON"), Christian Tobias Backer ("Mr. Backer"), pertaining to restructuring plans that Geden was proposing to implement, which were based on the transfer of its shipping assets to newly minted corporate entities, stating, "[t]his attempt has been going on behind our backs and has several fraudulent conveyance issues and multiple lender liability

concerns." The email does not prove there was a fraudulent conveyance nor does it provide the "who, what, where" required to establish Fleetscape's "actual intent to hinder, delay, or defraud" Plaintiff, as required by Rule 9(b) and the pleading standards under *Twombly/Iqbal*. And, in any event, Mr. Backer's quote was misconstrued and taken out of context.

*First*, Plaintiff's state law tort claim against Fleetscape for fraudulent transfer is not a maritime claim and, thus, a maritime attachment under Rule B is not available. *See Great Lakes Ins. SE v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, No. 19-CV-10656 (RA), 2020 U.S. Dist. LEXIS 140912, at *30 (S.D.N.Y. Aug. 6, 2020) (dismissing the case for lack of maritime subject matter jurisdiction because plaintiff's state law tort claims for prima facie tort, promissory fraud, civil conspiracy, unjust enrichment, and negligence are "not maritime in nature".)

Further, as set forth in the August 11, 2020 Declaration of Christian Tobias Backer (the "Backer Declaration"), in or about 2010-2011, ICON entered into two transactions with Geden Holdings and three of its single purpose entities ("SPEs"), including Center Navigation Ltd. ("Center Navigation").[17] The structure of the transactions involved a sale of one tanker vessel, the M/T CENTER, and two bulker vessels, the M/V AMAZING and the M/V FANTASTIC, from the three Geden Holdings SPEs to three ICON SPEs.[18] Following the sale, each of the vessels was bareboat chartered back to the Geden Holdings SPEs.[19]

Geden Holdings subsequently experienced financial difficulties due to a downturn in the shipping market and informed its banks that it would not be able to meet its payment obligations and was considering restructuring its capital structure.[20] The banks asked Geden Holdings to hire

---

[17] *See* Ex. 1, Backer Declaration at ¶ 6. The attached Exhibits A-H serve as supporting exhibits to the Backer Declaration.
[18] *Id*. at ¶ 7.
[19] *Id*.
[20] *Id*. at ¶ 8.

a structural advisor and, in response, Geden Holdings nominated Alix Partners.[21] In 2013, one of the ICON SPEs, ICON Octavian Center, LLC ("ICON Octavian"), claimed Center Navigation failed to honor obligations it had undertaken under the terms of a bareboat charter agreement.[22] As a result of this breach, Mr. Backer corresponded with Geden Holding's Chief Financial, Officer Mehmet Mat about a possible restructuring of the bareboatcharter between ICON Octavian and Center Navigation.[23] Mehmet Mat stated the following in an email on April 18, 2013:

> My primary purpose of NY visit is to keep the dialogue open with Icon so I'd like to avoid creating a confrontational situation. I have no problem attending to the meeting but I understand the bank is not ready for this for tomorrow.
>
> Instead of pushing it, I suggest to have a telcon all together sometime next week.[24]

In a response email and on the same day, Mr. Backer replied the following:

> Without prejudice, I am afraid that this cannot wait until next week. We do not feel that Geden and - particularly - the banks have been proposing constructive pro-active solutions involving all affected parties to ensure the future viability of Geden long-term. Rather there seems to be a clear attempt to give preferential treatment to one group of creditors over another. **This attempt has been going on behind our backs and has several fraudulent conveyance issues and multiple lender liability concerns.** However, as much as we would like to prove our rights after the fact in this regard, these actions leave us no choice but to enforce our rights to the full extend available to us.[25]

Mr. Backer's email response referencing fraudulent conveyance issues did not pertain to the 2013 restructuring plan by AlixPartners (the "Project Hermitage Restructuring Plan"). Indeed,

---

[21] *Id*. at ¶ 9.
[22] *Id*. at ¶ 10.
[23] *Id*. at ¶ 11.
[24] *Id*. at ¶ 12.
[25] *Id*. at ¶ 13 (emphasis added).

the sentence Plaintiff quotes refers to an unfounded rumor that Geden Holdings may have been stripping assets from the company to protect an unrelated bank's loan exposure.[26]

In short, Plaintiff has not alleged any facts that establish Fleetscape purchased the Vessel from Advantage with an "actual intent to hinder, delay, or defraud" creditors, as required under the UFTA. Thus, there exists no valid state law based fraudulent-transfer claim against Fleetscape, and concomitantly no valid maritime claim exists upon which the Rule B attachment may be based. For the reasons set forth herein, Fleetscape moves this Court to reverse the denial of the Motion to Vacate Attachment because same was based on a manifest error of law.

### B. Motion to Reduce Security

Alternatively, in the event the Court affirms the denial of the Motion to Vacate Attachment, the Court should nevertheless reduce the amount of security that Fleetscape was required to post – $4,325,000 – to release the Vessel because Plaintiff is already fully secured for its alleged claim.

The Court may, for good cause shown, reduce the amount of security pursuant to Fed. R. Civ. P. Supp. Admiralty Rule E(6). Rule E(6) provides:

> Reduction or Impairment of Security. Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

*Id.* Rule E itself provides no further instructions on calculating the "fairly stated" value of a plaintiff's claim, and "guiding standards are sparse." *Billfish Marina One, Inc. v. M/Y Hideaway*, 2017 A.M.C. 1743 (S.D. Fla. Jan. 23, 2017). Evidence from outside the complaint (i.e. affidavits) may be considered in determining the fairly stated amount of a plaintiff's claim. *20th Century Fox*

---

[26] *Id.* at ¶ 14.

*Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1429, 1430 (M.D. Fla. 1997) (The court "may look beyond the 'four corners' of the claim" in determining the "fairly stated" claim amount) (citing 7A Moores Fed. Prac. 2d Ed. ¶ E.13[2] at E–612–613); *see also Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp.*, 2009 A.M.C. 2628 (2d Cir. 2009) ("In light of the historical practice and purpose of maritime attachments, we conclude that a court may assess preliminarily the reasonableness of plaintiff's damages claim when setting a security under Rule E(5)."). A plaintiff does not need to prove damages with "exactitude," but the court should satisfy itself during the preliminary assessment that a plaintiff's claims are not "frivolous." *Transportes Navieros*, 2009 A.M.C. 2628.

Rule E(6) is particularly necessary to provide judicial review over security amounts which have been obtained for the release of a vessel under pressured circumstances, where a plaintiff can easily inflate its alleged damages. *Transportes Navieros*, 572 F.3d at 108-09 ("Absent district court discretion to… reduce the security based on a weighing of the equities, there would be no mechanism to ensure that maritime plaintiffs do not abuse the attachment procedure by claiming damages that have no basis in reality… it would work inestimable hardship on the defendant if a plaintiff could obtain an attachment for any amount it claimed in damages, no matter how exaggerated." (Internal citations omitted)); *The City of Hartford*, 11 F. 89, 90 (S.D.N.Y. 1882) ("The power to ... abat[e] exorbitant security[ ] has long been recognized as one of the incidental powers of the court in regulating its practice and proceedings"). Rule E(6) addresses the very concerns recognized in *The Monarch*, 30 F. 283 (D. S.C. 1887) (issued before the passage of Rule E(6)), where owners are forced to post inequitable amounts of security under protest and duress because of the pressures of timing inherent the shipping industry. *Id.*; *see also Transportes Navieros*, *supra*.

This is precisely a case in which Rule E(6) was intended to provide relief. Here, despite knowing Fleetscape is not the judgment debtor, nor is it a party to the underlying bareboat charter party contract between Plaintiff and Space, Plaintiff improperly inflated its claim in the California Action to $17,087,362.00 to obtain excess amounts of security, but neglected to inform the California court that (1) this Court had already found Plaintiff's claim to be grossly overstated. In particular, Judge Hawthorn determined Plaintiff's fairly stated claim amounts to $2,694,507.78. (*see* ED TX Case No. 18-cv-00178-MAC-ZJH at ECF 18) and (2) Plaintiff has already obtained $4.8 million in security for its alleged claims in the Louisiana Action and the Texas Action.

As such, Plaintiff is fully secured for its alleged claim and the Court should reduce the amount of security that Fleetscape was required to post to obtain release of the Vessel.

**C. Motion for Preliminary Injunction to Prevent Further Attachments**

Under Fed. R. Civ. P. 65, a preliminary injunction or temporary restraining order is available where the movant shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. *Ridgely v. Fed. Emergency Mgmt. Agency*, 12 F.3d 727, 734 (5th Cir. 2008). Fleetscape respectfully urges this Court to issue a preliminary injunction to prevent further attachments of its assets because each of the foregoing factors is present in this case.

    **1. There Is a Substantial Likelihood of Success on the Merits**

The amount of Plaintiff's claim, if anything, is $2,694,507.78. *See* ED TX Case No. 18-cv-00178-MAC-ZJH at ECF 18. Plaintiff has already obtained $4.8 million in security for its

alleged claims in the Louisiana Action and the Texas Action. Therefore, it is not entitled to any more security to support another Rule B attachment. Thus, Fleetscape respectfully submits that, as fully set forth herein, it has a substantial likelihood of success on the merits in the event Plaintiff commences further maritime attachment actions.

> **2. There Is a Substantial Threat that Failure to Grant the Injunction Will Result in Irreparable Injury**

Irreparable injury is harm that "cannot be undone through monetary damages," that is, harm for which money damages are inadequate or for which money damages are "especially difficult" to compute. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 n. 1 (5th Cir. 1989). The "central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." *Allied Marketing Group, Inc.*, 878 F.2d at 810 n. 1.

Here, Plaintiff has improperly inflated its claim to $17,087,362.00. Plaintiff has already obtained a total of $9,125,000 in security, *i.e.*, $4.8 million in the Louisiana and Texas Actions and $4,325,000 from Fleetscape in the California Action. There is a strong likelihood that Plaintiff will continue to attach the Vessel belongingly to Fleetscape to obtain security for the remainder of its claim, *i.e.*, $7,962,362. As such, Fleetscape would be harmed by Plaintiff carrying through on its threats because this would, at least temporarily, take the Vessel out of service. Thus, the harm that would be done to Fleetscape by the wrongful attachment of its Vessel might not be able to be undone through monetary damages. Moreover, a seizure of Fleetscape's Vessel no doubt would damage Fleetscape's reputation, and therefore creditworthiness, in the marine industry. These damages would be especially difficult to compute, providing additional ground for a finding of

irreparable harm if Plaintiff carries through on its threats. Accordingly, there is a substantial threat that the failure to grant the injunction will result in irreparable injury.

### 3. The Threatened Injury Outweighs any Damage that the Injunction May Cause Plaintiff

For the reasons given in the preceding sections, the harm that would result in further attachments by Plaintiff would be severe. Plaintiff has already obtained a total of $9,125,000 in security, *i.e.*, $4.8 million in the Louisiana and Texas Actions and $4,325,000 from Fleetscape in the California Action and, thus, the damage that the injunction may cause Plaintiff is nonexistent. This requirement for granting the preliminary injunction is easily met.

### 4. The Injunction Will Not Disserve the Public Interest

Lastly, there is no public interest that will be disserved by granting Fleetscape a preliminary injunction. The reality is that there is a simple commercial dispute over Space's alleged liability for breach of a charter party. Plaintiff has already obtained $4.8 million in security for its alleged claims in the Louisiana Action and the Texas Action, which is more than its fairly stated claim. Moreover, as set forth herein, Plaintiff does not have a valid maritime claim against Fleetscape. There is no public interest that will be adversely effected by ordering an injunction that prevents Plaintiff from wrongfully commencing further attachment actions against Fleetscape in respect of its claims against Space. It is respectfully submitted that this final requirement for the issuance of a preliminary injunction is fulfilled.

## Conclusion

For the foregoing reasons, Fleetscape respectfully submits that the Court should reconsider the denial of the Motion to Vacate Attachment. In the alternative, the Court should reduce the security which Fleetscape was required to post as a consequence of the Rule B attachment.

Fleetscape further submits that the Court should grant a preliminary injunction to prevent further attachments and/or seizures of Fleetscape's property.

Dated: August 14, 2020          Respectfully submitted,

*/s/ Keith B. Letourneau*
Keith B. Letourneau
State Bar No. 00795893
Federal I.D. No. 20041
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Ph.: (713) 402-7650
Fax: (713) 228-6605
Email: kletourneau@blankrome.com

*Attorneys for Defendant Fleetscape Spring, LLC*

**OF COUNSEL:**

**BLANK ROME LLP**

John D. Kimball
Lauren B. Wilgus
1271 Avenue of the Americas
New York, NY  10020
(212) 885-5000

### CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that I conferred with opposing counsel on August 14, 2020, who have noted their opposition to this Motion.

*/s/Zachary J. Wyatte*
Zachary J. Wyatte

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument was served upon all counsel of record pursuant to the Court's CM/ECF system and Rule 5 of the Federal Rules of Civil Procedure on this 14th day of August, 2020.

                                                              */s/Keith B. Letourneau*
                                                              Keith B. Letourneau