# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS (BEAUMONT)

| | |
|---|---|
| PSARA ENERGY, LTD.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SPACE SHIPPING, LTD.; GEDEN HOLDINGS, LTD.; ADVANTAGE SPRING SHIPPING, LLC; GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES; ADVANTAGE TANKERS, LLC; MEHMET EMIN KARAMEHMET; GULSUN NAZLI KARAMEHMET-WILLIAMS; TUGRUL TOKGOZ; MEHMET MAT; FLEETSCAPE SPRING, LLC; and FLEETSCAPE ADVANTAGE HOLDINGS, LLC,<br><br>　　　　　　　　　Defendants. | 1:20-cv-00293-MAC |

## DECLARATION OF CHRISTIAN TOBIAS BACKER

I, Christian Tobias Backer, under the penalty of perjury under the laws of the United States pursuant to 28 U.S.C. §1746, declare the following is true and correct:

1.　I have been advising Oaktree Capital Management, L.P. ("Oaktree") as a consultant since June 2016, and currently hold the title of Senior Advisor for Maritime and Offshore. I also hold the title of Senior Advisor at Fleetscape Capital Holdings, Ltd. ("Fleetscape Capital"), an investment fund backed by Oaktree which was started in September 2017.

2.　I am over the age of eighteen, and have personal knowledge of the proceedings before this Honorable Court[1] wherein Plaintiff Psara Energy, Ltd. ("Plaintiff") attached Defendant

---

[1] This action was originally filed in the United States District Court for the Northern District of California under docket number 3:20-cv-04102-WHO, but was transferred to this Honorable Court under docket 1:20-cv-00293-MAC on July 7, 2020.

Fleetscape Spring, LLC's ("Fleetscape Spring") vessel M/T ADVANTAGE SPRING (the "Vessel") under the provisions of Supplemental Admiralty Rule B.

3. I provide this Declaration in support of Fleetscape's motion for relief and to respond to several inaccurate allegations in Plaintiff's Original Verified Complaint. *See* ECF 1.

A. **The Wholly Unrelated 2013 Dispute between ICON Octavian Center and Center Navigation Ltd.**

4. Prior to joining Fleetscape Capital, I held the position of Managing Director and Head of Shipping & Offshore at ICON Investments ("ICON") from April 2009 to March 2016.

5. While at ICON, I was tasked with working on an existing shipping portfolio of nineteen ships in which ICON had invested. In particular, a majority of those nineteen vessel investments were not performing well and I was tasked with finding a solution for those investments. I was also tasked with building out a new portfolio of loans and leases to shipping companies.

6. In or about 2010-2011, ICON entered into two transactions with Defendant Geden Holdings, Ltd. ("Geden Holdings") and three of its single purpose entities ("SPEs"), including Center Navigation.

7. The structure of the transactions involved a sale of one tanker vessel, the M/T CENTER, and two bulker vessels, the M/V AMAZING and the M/V FANTASTIC, from the three Geden Holdings SPEs to three ICON SPEs. Following the sale, each of the vessels was bareboat chartered back to the Geden Holdings SPEs.

8. In or about 2012, Geden Holdings experienced financial difficulties due to a downturn in the shipping market and informed its banks that it would not be able to meet its payment obligations and was considering restructuring its capital structure.

9. It is my understanding that the banks asked Geden Holdings to hire a structural advisor and, in response, Geden Holdings nominated Alix Partners.

10. In or about 2013, one of the ICON SPEs, ICON Octavian Center, LLC ("ICON Octavian"), claimed Center Navigation failed to honor obligations it had undertaken under the terms of a bareboat charter agreement.

11. As a result of this breach, I engaged in discussions with Geden Holding's Chief Financial Officer Mehmet Mat about a possible restructuring of the bareboat charter between ICON Octavian and Center Navigation.

12. In connection with this dispute, on April 18, 2013, Mehmet Mat sent me an email stating:

> My primary purpose of NY visit is to keep the dialogue open with Icon so I'd like to avoid creating a confrontational situation. I have no problem attending to the meeting but I understand the bank is not ready for this for tomorrow.
>
> Instead of pushing it, I suggest to have a telcon all together sometime next week.

*See* ECF 1-15, Ex. 12 at GH 01010.

13. At 10:59 pm that same day, I responded to Mr. Mat's email as follows:

> Without prejudice, I am afraid that this cannot wait until next week. We do not feel that Geden and – particularly – the banks have been proposing constructive pro-active solutions involving all affected parties to ensure the future viability of Geden long-term. Rather there seems to be a clear attempt to give preferential treatment to one group of creditors over another. This attempt has been going on behind our backs and has several fraudulent conveyance issues and multiple lender liability concerns. However, as much as we would like to prove our rights after the fact in this regard, these actions leave us no choice but to enforce our rights to the full extend available to us.

*See* ECF 1-15, Ex. 12 at GH 01009.

14. At paragraph 87 of Plaintiff's Verified Complaint, Plaintiff misleads the Court by claiming the sentence "[t]his attempt has been going on behind our backs and has several fraudulent conveyance issues and multiple lender liability concerns" in my April 18, 2013 email was in reference to the March 6, 2013 Project Hermitage Restructuring Plan by AlixPartners (the "Project Hermitage Restructuring Plan"). *See* ECF 1-12, Ex. 9. That is not correct. In fact, that sentence refers to an unfounded rumor we had heard that Geden Holdings may have been stripping assets from the company in order to protect an unrelated bank's loan exposure.

15. While ICON Octavian did not agree to restructure its bareboat charter with Center Navigation pursuant to the terms of the Project Hermitage First Restructuring Plan, and AlixPartners' advisory contract was terminated in June of 2013, I never stated nor implied that the Project Hermitage First Restructuring Plan involved fraudulent conveyance issues and lender liability concerns.

16. Subsequent to the Project Hermitage Restructuring Plan proposal, several different restructuring alternatives were proposed between ICON and Geden Holdings.

17. Approximately two months later, on June 21, 2013, Mr. Mat and I had a telephone call in which he proposed a plan to amend the terms of the bareboat charter. Mr. Mat memorialized the terms of the proposed plan in an email and I responded later that same day that the proposal was a good starting point for further negotiations. *See* ECF 1-15, Ex. 12 at GH 01007 - 01008.

18. In or about August-September 2013, ICON Octavian and Center Navigation reached a commercial understanding in order to manage their dispute, but this understanding was never reduced to a formal written agreement.

### B. Geden's proposal to sell certain product tankers

19. In January 2014, Mr. Mat sent me an email in connection with a new transaction as follows:

> I thought it would be nice to discuss a new transaction over dinner.
>
> We have in mind to establish a Newco for our crude fleet joint venture with new investors with a target to use it as a growth platform and/or a ready to go IPO platform in the mid term. The fleet consists of 5 aframax + 5 suezmax which 8 of them are chartered by Shell and 2 of them by ST Shipping. The details are attached.
>
> The New Co will acquire the vessels from Geden affiliates at market premium (taking into account the value of the charters) so there will not be any legal concern at Geden level.
>
> If interested, please review the attached draft term sheet. I will be happy to discuss whenever is convenient for you.

*See* ECF 1-16, Ex. 13 at GH 01280 – GH 01286.

20. On January 18, 2014, I responded to Mr. Mat and advised the project looked interesting and asked a few questions, including "[w]here will the new common equity come from?" *See* ECF 1-16, Ex. 13 at GH 01278.

21. On January 20, 2014, in response to my question, Mr. Mat advised "Geden will be the shareholder of the New Co." *See* ECF 1-16, Ex. 13 at GH 01278.

22. With respect to this new transaction, I was concerned only with the three vessels involved in the sale between the Geden Holdings SPEs and the ICON SPEs, as noted in paragraph 7 above.

23. My focus on this transaction was threefold: i) that the sale would happen at or above real fair market value (in which case we could not stop it in any event), ii) to try to get access to

5

the sales proceeds to reduce ICON's outstanding exposure, and iii) to try to get the vessel M/T CENTER to be part of the new vehicle.

24. After I left ICON in March 2016, ICON sold the vessels M/T CENTER, M/V AMAZING and M/V FANTASTIC to unrelated third parties.

25. I was not involved in and have no knowledge of the transaction involving the sale of the eleven vessels from Geden Holdings to Advantage Tankers.

### C. The February 1, 2019 Sale and Purchase from Advantage to Fleetscape

26. As noted in paragraph 1 above, I have been advising Oaktree since June 2016, and I helped start Fleetscape Capital in September 2017.

27. I was personally involved in the transaction involving the sale of ten vessels from SPEs owned by Advantage Tankers to SPEs owned by Fleetscape Capital.

28. This was a bona fide transaction for which Fleetscape paid substantial fair market consideration for the vessels we acquired.

29. The purpose of the sale from Advantage Tankers to Fleetscape was to refinance the loan in order to extend debt maturities, which was needed to allow for an extension of the existing time charters on all the vessels.

30. Fleetscape contributed new cash to refinance the existing lenders at par value. All existing lenders fully cooperated with the refinancing and did not object to the terms of the Advantage - Fleetscape deal.

31. The Advantage - Fleetscape sale and purchase was an at-market deal and not a restructuring plan like the Project Hermitage Restructuring Plan in which lenders were expected to take a write-down on their exposure.

32. By a Memorandum of Agreement ("MOA") dated February 1, 2019, Advantage Spring Shipping LLC agreed to sell and Fleetscape Spring, LLC agreed to purchase the vessel ADVANTAGE SPRING. A true and correct copy of the MOA is attached as Ex. A.

33. The purchase price of the vessel was $30,825,000. A true and correct copy of the Bill of Sale is attached as Ex. B.

34. The purchase price was very substantial and was close to the appraised value of $31,000,000 - $32,000,000 for the vessel. A true and correct copy of the January 29, 2019 valuation done by Arrow Valuations is attached as Ex. C.

35. In connection with the transaction, on February 1, 2019, the parties executed various agreements including:

    i. Eleven entities, including Fleetscape Spring, as joint and several Borrowers and Hedge Guarantors, entered into a Facility Agreement with Credit Agricole Corporate and Investment Bank relating to the financing of eleven vessels, including the ADVANTAGE SPRING (the "Facility Agreement"). A true and correct copy of the Facility Agreement is attached as Ex. D.

    ii. Fleetscape Capital, as Subordinated Creditor, executed a Subordination Agreement relating to the Facility Agreement. A true and correct copy of the General Subordination Agreement is attached as Ex. E.

    iii. Advantage Spring Shipping LLC and Fleetscape Spring, LLC entered into a Seller's Credit Agreement. A true and correct copy of the Seller's Credit Agreement is attached as Ex. F.

    iv. Fleetscape Spring, LLC, as Buyer, Advantage Spring Shipping LLC, as Subordinated Creditor, and Credit Agricole Corporate and Investment Bank

    executed a Subordination Agreement relating to the Seller's Credit Agreement. A true and correct copy of the Security Subordination Agreement is attached as Ex. G.

  v. The eleven borrowers, including Fleetscape Spring, the Financial Institutions, and Fleetscape Capital executed a Junior Loan Agreement. A true and correct copy of the Junior Loan Agreement is attached as Ex. H.

36. The February 1, 2019 transaction between Advantage and Fleetscape is a sale and lease back transaction which is common in the shipping industry and the standard form of transaction for most of Fleetscape's deals.

37. Contrary to the allegations in the Verified Complaint and, in particular, paragraphs 90 – 97, I have no knowledge of any fraudulent conveyances of the vessels by Geden Holdings to Advantage Tankers or from Advantage Tankers to Fleetscape.

38. In my opinion, the transaction were all bona fide and involved payments by Fleetscape which reflected the fair market value of the vessels.

Pursuant to Title 28 of the United States Code, section § 1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on 11 August 2020

Christian Tobias Backer