# EXHIBIT A

# MEMORANDUM OF AGREEMENT

Norwegian Shipbrokers' Association's
Memorandum of Agreement for sale and
purchase of ships. Adopted by BIMCO in 1956.
Code-name
**SALEFORM 2012**
Revised 1966, 1983 and 1986/87, 1993 and 2012

Dated: **1 February 2019**                                                                                                           1

**Advantage Spring Shipping LLC** (*Name of sellers*), hereinafter called the "Sellers", have agreed to sell, and    2

**Fleetscape Spring, LLC** (*Name of buyers*), hereinafter called the "Buyers", have agreed to buy:                3

Name of vessel: **m.v. "ADVANTAGE SPRING"**                                                                          4

IMO Number: **9466582**                                                                                              5

Classification Society: **DNV GL**                                                                                   6

Class Notation: **1A1 Tanker for oil BIS BMON CSR E0 ESP NAV-O SPM TMON VCS(2,B)**                                   7

Year of Build: **2010**        Builder/Yard: **Rongsheug**                                                           8

Flag: **Marshall Islands**  Place of Registration: **Majuro**    GT/NT: **83,805/49,031**                            9

hereinafter called the "Vessel", on the following terms and conditions:                                              10

**Definitions (See also Additional Clause 23 (Further definitions)**                                                 11
"Banking Days" are days on which banks are open both in the country of the currency stipulated for                   12
the Purchase Price in Clause 1 (Purchase Price) and in the place of closing stipulated in Clause 8                   13
(~~Documentation~~**Conditions Precedent**) and _____ (*add additional jurisdictions as appropriate).*             14

"Buyers' Nominated Flag State" means **Marshall Islands** (*state flag state*).                                      15

"Class" means the class notation referred to above.                                                                 16

"Classification Society" means the Society referred to above.                                                        17

~~"Deposit" shall have the meaning given in Clause 2 (Deposit)~~                                                     18

~~"Deposit Holder" means _____ (state name and location of Deposit Holder) or, if left blank, the~~                19
~~Sellers' Bank, which shall hold and release the Deposit in accordance with this Agreement.~~                       20

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a                 21
registered letter, e-mail or telefax.                                                                               22

"Parties" means the Sellers and the Buyers.                                                                         23

"Purchase Price" means the price for the Vessel as stated in Clause 1 (Purchase Price).                             24

"Sellers' Account" means **such account in the name of the Sellers** (*state details of bank account*) at the       25
Sellers' Bank **notified by the Sellers to the Buyers in writing at least five (5) Banking Days prior to the
intended Utilisation Date for the relevant Tranche (each as defined in the Senior Loan Agreement
referred to in Additional Clause 23 (Further definitions)).**
"Sellers' Bank" means **[  ]** (*state name of bank, branch and details*) or, if left blank, the bank               26
notified by the Sellers to the Buyers for receipt of the balance of the Purchase Price **(less the Seller's Credit)** 27
**[SH NOTE: ADVANTAGE TO CONFIRM].**

1.  **Purchase Price**                                                                                               28
    The Purchase Price is **USD 30,825,000 Thirty Million, Eight Hundred and Twenty Five Thousand**                  29
    **United States Dollars** (*state currency and amount both in words and figures*).

2.  ~~**Deposit**~~                                                                                                  30
    ~~As security for the correct fulfilment of this Agreement the Buyers shall lodge a deposit of~~                 31
    ~~_____% (_____ per cent) or, if left blank, 10% (ten per cent), of the Purchase Price (the~~                 32
    ~~"Deposit") in an interest bearing account for the Parties with the Deposit Holder within three (3)~~          33
    ~~Banking Days after the date that:~~                                                                           34

    ~~(i)      this Agreement has been signed by the Parties and exchanged in original or by~~                      35
    ~~          e-mail or telefax; and~~                                                                            36

    ~~(ii)     the Deposit Holder has confirmed in writing to the Parties that the account has been~~               37
    ~~          opened.~~                                                                                           38

    ~~The Deposit shall be released in accordance with joint written instructions of the Parties.~~                 39

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Explanatory Notes for SALEFORM 2012 are available from BIMCO at www.bimco.org

Printed by BIMCO's idea

Copyright Norwegian Shipbrokers' Association, Oslo.
Published by Norwegian Shipbrokers' Association, Oslo and BIMCO, Copenhagen

| | |
|---|---|
| ~~Interest, if any, shall be credited to the Buyers. Any fee charged for holding and releasing the~~ | 40 |
| ~~Deposit shall be borne equally by the Parties. The Parties shall provide to the Deposit Holder~~ | 41 |
| ~~all necessary documentation to open and maintain the account without delay.~~ | 42 |

**3.  Payment**

| | |
|---|---|
| ~~On delivery of the Vessel, but not later than three (3) Banking Days after the date that Notice of~~ | 43 |
| ~~Readiness has been given in accordance with~~ Clause 5 ~~(Time and place of delivery and~~ | 44 |
| | 45 |
| ~~notices):~~ | 46 |

| | |
|---|---|
| ~~(i)      the Deposit shall be released to the Sellers; and~~ | 47 |

| | |
|---|---|
| ~~(ii)     the balance of the Purchase Price and all other sums payable on delivery by the Buyers~~ | 48 |
| ~~to the Sellers under this Agreement shall be paid in full free of bank charges to the~~ | 49 |
| ~~Sellers' Account.~~ | 50 |

**(Please see Additional Clause 21 (Payment))**

**4.  Inspection**

| | |
|---|---|
| ~~(a)* The Buyers have inspected and accepted the Vessel's classification records. The Buyers~~ | 51 |
| | 52 |
| ~~have also inspected the Vessel at/in _____ (state place) on _____ (state date) and have~~ | 53 |
| ~~accepted the Vessel following this inspection and the sale is outright and definite, subject only~~ | 54 |
| ~~to the terms and conditions of this Agreement.~~ | 55 |

| | |
|---|---|
| ~~(b)* The Buyers shall have the right to inspect the Vessel's classification records and declare~~ | 56 |
| ~~whether same are accepted or not within _____ (state date/period).~~ | 57 |

| | |
|---|---|
| ~~The Sellers shall make the Vessel available for inspection at/in _____ (state place/range) within~~ | 58 |
| ~~_____ (state date/period).~~ | 59 |

| | |
|---|---|
| ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~ | 60 |
| ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~ | 61 |

| | |
|---|---|
| ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~ | 62 |

| | |
|---|---|
| ~~During the inspection, the Vessel's deck and engine log books shall be made available for~~ | 63 |
| ~~examination by the Buyers.~~ | 64 |

| | |
|---|---|
| ~~The sale shall become outright and definite, subject only to the terms and conditions of this~~ | 65 |
| ~~Agreement, provided that the Sellers receive written notice of acceptance of the Vessel from~~ | 66 |
| ~~the Buyers within seventy-two (72) hours after completion of such inspection or after the~~ | 67 |
| ~~date/last day of the period stated in~~ Line 59, ~~whichever is earlier.~~ | 68 |

| | |
|---|---|
| ~~Should the Buyers fail to undertake the inspection as scheduled and/or notice of acceptance of~~ | 69 |
| ~~the Vessel's classification records and/or of the Vessel not be received by the Sellers as~~ | 70 |
| ~~aforesaid, the Deposit together with interest earned, if any, shall be released immediately to the~~ | 71 |
| ~~Buyers, whereafter this Agreement shall be null and void.~~ | 72 |

| | |
|---|---|
| ~~*4(a) and  4(b)  are alternatives;  delete whichever is not applicable. In the absence of deletions,~~ | 73 |
| ~~alternative 4(a) shall apply.~~ | 74 |

**5.  Time and place of delivery and notices**

| | |
|---|---|
| **(a)** The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or | 75 |
| | 76 |
| anchorage ~~at/in~~ **or at sea within Trading Limits (as defined in Additional Clause 23 (Further** | 77 |
| **definitions))** (state place/range) in the Sellers' option. | |
| Notice of Readiness ~~shall not be tendered before: _____~~ (date) | 78 |

| | |
|---|---|
| Cancelling Date (see Clauses 5(c), 6 (a)(i), 6 (a) (iii) and 14): **the date falling three (3) months after the** | 79 |
| **date of the Senior Loan Agreement or such later date as the Buyers may agree.** | |
| **(b)** ~~The  Sellers  shall  keep  the  Buyers  well  informed  of the Vessel's itinerary and shall~~ | 80 |
| ~~provide the Buyers with twenty (20), ten (10), five (5) and three (3) days' notice of the date the~~ | 81 |
| ~~Sellers intend to tender Notice of Readiness and of the intended place of delivery.~~ | 82 |

| | |
|---|---|
| ~~When the Vessel is at the place of delivery and physically ready for delivery in accordance with~~ | 83 |
| ~~this Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.~~ | 84 |

| | |
|---|---|
| **(c)** If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the | 85 |
| Vessel will not be ready for delivery by the Cancelling Date they may notify the Buyers in writing | 86 |
| stating the date when they anticipate that the Vessel will be ready for delivery and proposing a | 87 |
| new Cancelling Date. Upon receipt of such notification the Buyers shall have the option of | 88 |
| either cancelling this Agreement in accordance with Clause 14 (Sellers' Default) within three (3) | 89 |
| Banking Days of receipt of the notice or of accepting the new date as the new Cancelling Date. | 90 |
| If the Buyers have not declared their option within three (3) Banking Days of receipt of the | 91 |
| Sellers' notification or if the Buyers accept the new date, the date proposed in the Sellers' | 92 |

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

2

notification shall be deemed to be the new Cancelling Date and shall be substituted for the
Cancelling Date stipulated in line 79.

93
94

If this Agreement is maintained with the new Cancelling Date all other terms and conditions
hereof including those contained in Clauses 5(b) and 5(d) shall remain unaltered and in full
force and effect.

95
96
97

**(d)** Cancellation, failure to cancel or acceptance of the new Cancelling Date shall be entirely
without prejudice to any claim for damages the Buyers may have under Clause 14 (Sellers'
Default) for the Vessel not being ready by the original Cancelling Date.

98
99
100

**(e)** Should the Vessel become an actual, constructive or compromised total loss before delivery
the Deposit together with interest earned, if any, shall be released immediately to the Buyers
whereafter this Agreement shall be null and void.

101
102
103

6.  **Divers Inspection / Drydocking**
    **(a)***

104
105

(i)      The Buyers shall have the option at their cost and expense to arrange for an underwater
inspection by a diver approved by the Classification Society prior to the delivery of the
Vessel. Such option shall be declared latest nine (9) days prior to the Vessel's intended
date of readiness for delivery as notified by the Sellers pursuant to Clause 5(b) of this
Agreement. The Sellers shall at their cost and expense make the Vessel available for
such inspection. This inspection shall be carried out without undue delay and in the
presence of a Classification Society surveyor arranged for by the Sellers and paid for by
the Buyers. The Buyers' representative(s) shall have the right to be present at the diver's
inspection as observer(s) only without interfering with the work or decisions of the
Classification Society surveyor. The extent of the inspection and the conditions under
which it is performed shall be to the satisfaction of the Classification Society. If the
conditions at the place of delivery are unsuitable for such inspection, the Sellers shall at
their cost and expense make the Vessel available at a suitable alternative place near to
the delivery port, in which event the Cancelling Date shall be extended by the additional
time required for such positioning and the subsequent re-positioning. The Sellers may
not tender Notice of Readiness prior to completion of the underwater inspection.

106
107
108
109
110
111
112
113
114
115
116
117
118
119
120
121

(ii)     If the rudder, propeller, bottom or other underwater parts below the deepest load line are
found broken, damaged or defective so as to affect the Vessel's class, then (1) unless
repairs can be carried out afloat to the satisfaction of the Classification Society, the
Sellers shall arrange for the Vessel to be drydocked at their expense for inspection by
the Classification  Society of  the Vessel's underwater parts below the deepest load line,
the extent of the inspection being in accordance with the Classification Society's rules (2)
such defects shall be made good by the Sellers at their cost and expense to the
satisfaction of the Classification Society without condition/recommendation** and (3) the
Sellers shall pay for the underwater inspection and the Classification Society's
attendance.

122
123
124
125
126
127
128
129
130
131

Notwithstanding anything to the contrary in this Agreement, if the Classification Society
do not require the aforementioned defects to be rectified before the next class
drydocking survey, the Sellers shall be entitled to deliver the Vessel with these defects
against a deduction from the Purchase Price of the estimated direct cost (of labour and
materials) of carrying out the repairs to the satisfaction of the Classification Society,
whereafter the Buyers shall have no further rights whatsoever in respect of the defects
and/or repairs. The estimated direct cost of the repairs shall be the average of quotes
for the repair work obtained from two reputable independent shipyards at or in the
vicinity of the port of delivery, one to be obtained by each of the Parties within two (2)
Banking Days from the date of the imposition of the condition/recommendation, unless
the Parties agree otherwise. Should either of the Parties fail to obtain such a quote within
the stipulated time then the quote duly obtained by the other Party shall be the sole basis
for the estimate of the direct repair costs. The Sellers may not tender Notice of
Readiness prior to such estimate having been established.

132
133
134
135
136
137
138
139
140
141
142
143
144
145

(iii)    If the Vessel is to be drydocked pursuant to Clause 6(a)(ii) and no suitable dry-docking
facilities are available at the port of delivery, the Sellers shall take the Vessel to a port
where suitable drydocking facilities are available, whether within or outside the delivery
range as per Clause 5(a). Once drydocking has taken place the Sellers shall deliver the
Vessel at a port within the delivery range as per Clause 5(a) which shall, for the purpose
of this Clause, become the new port of delivery. In such event the Cancelling Date shall
be extended by the additional time required for the drydocking and extra steaming, but
limited to a maximum of fourteen (14) days.

146
147
148
149
150
151
152
153

**(b)*** The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the

154

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Classification Society of the Vessel's underwater parts below the deepest load line, the extent 155
of the inspection being in accordance with the Classification Society's rules. If the rudder, 156
propeller, bottom or other underwater parts below the deepest load line are found broken, 157
damaged or defective so as to affect the Vessel's class, such defects shall be made good at the 158
Sellers' cost and expense to the satisfaction of the Classification Society without 159
condition/recommendation\*\*. In such event the Sellers are also to pay for the costs and 160
expenses in connection with putting the Vessel in and taking her out of drydock, including the 161
drydock dues and the Classification Society's fees. The Sellers shall also pay for these costs 162
and expenses if parts of the tailshaft system are condemned or found defective or broken so as 163
to affect the Vessel's class. In all other cases, the Buyers shall pay the aforesaid costs and 164
expenses, dues and fees. 165

(c) If the Vessel is drydocked pursuant to Clause 6 (a)(ii) or 6 (b) above: 166

(i)    The Classification Society may require survey of the tailshaft system, the extent of the 167
survey being to the satisfaction of  the Classification surveyor. If such survey is 168
not required by the Classification Society, the Buyers shall have the option to require the 169
tailshaft to be drawn and surveyed by the Classification Society, the extent of the survey 170
being in accordance with the Classification Society's rules for tailshaft survey and 171
consistent with the  current  stage of the Vessel's survey cycle. The Buyers shall declare 172
whether they require the tailshaft to be drawn and surveyed not later than by the 173
completion of the inspection by the Classification Society. The drawing and refitting of 174
the tailshaft shall be arranged by the Sellers. Should any parts of the tailshaft system be 175
condemned or found defective so as to affect the Vessel's class, those parts shall be 176
renewed or made good at the Sellers' cost and expense to the satisfaction of 177
Classification Society without condition/recommendation\*\*. 178

(ii)   The costs and expenses relating to the survey of the tailshaft system shall be borne by 179
the Buyers unless the Classification Society requires such survey to be carried out or if 180
parts of the system are condemned or found defective or broken so as to affect the 181
Vessel's class, in which case the Sellers shall pay these costs and expenses. 182

(iii)  The Buyers' representative(s) shall have the right to be present in the drydock, as 183
observer(s) only without interfering with the work or decisions of the Classification 184
Society surveyor. 185

(iv)   The Buyers  shall  have  the  right  to  have  the  underwater  parts of the Vessel cleaned 186
and painted at their risk, cost and expense without interfering with the Sellers' or the 187
Classification Society surveyor's work, if any, and without affecting the Vessel's timely 188
delivery. If, however,  the  Buyers'  work  in  drydock  is  still  in  progress  when  the 189
Sellers  have completed  the  work  which  the Sellers are required to do, the additional 190
docking time needed to complete the Buyers' work shall be for the Buyers' risk, cost and 191
expense. In the event that the Buyers' work requires such additional time, the Sellers 192
may upon completion of the Sellers' work tender Notice of Readiness for delivery whilst 193
the Vessel is still in drydock and, notwithstanding Clause 5(a), the Buyers shall be 194
obliged to take delivery in accordance with Clause 3 (Payment), whether the Vessel is in 195
drydock or not. 196

\*6 (a) and 6 (b) are alternatives; delete whichever is not applicable. In the absence of deletions, 197
alternative 6 (a) shall apply. 198

\*\*Notes or memoranda, if any, in the surveyor's report which are accepted by the Classification 199
Society without condition/recommendation are not to be taken into account. 200

**7.   Spares, bunkers and other items** 201
The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board 202
and on shore. All spare parts and equipment including spare tail-end shaft(s) and/or 203
spare propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection**delivery** 204
used or unused, whether on board or not shall become the Buyers' property, but spares on 205
order are excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers 206
are not required to replace spare parts including spare tail-end shaft(s) and spare 207
propeller(s)/propeller blade(s) which are taken out of spare and used as replacement prior to 208
delivery, but the replaced items shall be the property of the Buyers. Unused stores and 209
provisions shall be included in the sale and be taken over by the Buyers without extra payment. 210

Library and forms exclusively for use in the Sellers' vessel(s) and captain's, officers' and crew's 211
personal belongings including the slop chest are excluded from the sale without compensation, 212
as well as the following additional items:  _____ (include list) 213

**The items listed in the Schedule to the Additional Clauses are excluded from the sale without** 214

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.
4

**compensation.**

~~Items on board which are on hire or owned by third parties, listed as follows, are excluded from the sale without compensation: _____ *(include list)*~~ — 215

Items on board at the time of ~~inspection~~ **delivery** which are on hire or owned by third parties, not listed above, shall be replaced or procured by the Sellers prior to delivery at their cost and expense. — 216 / 217

**Any remaining and unused lubricating and hydraulic oils and greases in storage tanks and unopened drums shall remain the property of the Sellers. All bunkers and fuel oil onboard are and shall remain the property of the Sub-Charterers and shall not form part of the sale.** — 218

~~The Buyers shall take over remaining bunkers and unused lubricating and hydraulic oils and greases in storage tanks and unopened drums and pay either:~~ — 219

~~(a) *the actual net price (excluding barging expenses) as evidenced by invoices or vouchers; or~~ — 220

~~(b) *the current net market price (excluding barging expenses) at the port and date of delivery of the Vessel or, if unavailable, at the nearest bunkering port,~~ — 221 / 222

~~for the quantities taken over.~~ — 223

~~Payment under this Clause shall be made at the same time and place and in the same currency as the Purchase Price.~~ — 224 / 225

~~"inspection" in this Clause 7, shall mean the Buyers' inspection according to Clause 4(a) or 4(b) (Inspection), if applicable. If the Vessel is taken over without inspection, the date of this Agreement shall be the relevant date.~~ — 226 / 227 / 228

~~*(a) and (b) are alternatives, delete whichever is not applicable. In the absence of deletions alternative (a) shall apply.~~ — 229 / 230

## 8. ~~Documentation~~**Conditions Precedent** — 231
The place of closing: **London** — 232

(a) ~~In exchange for P~~**p**ayment of the Purchase Price **(less the Seller's Credit) is conditional upon** the Sellers ~~shall~~ provid**ing**~~e~~ the Buyers with the following delivery documents: — 233 / 234

(i) Legal Bill(s) of Sale in a form recordable in the Buyers' Nominated Flag State, transferring title of the Vessel and stating that the Vessel is free from all mortgages, encumbrances and maritime liens or any other debts whatsoever, duly notarially attested and legalised or apostilled, as required by the Buyers' Nominated Flag State; — 235 / 236 / 237 / 238

(ii) Evidence that all necessary corporate, shareholder and other action has been taken by the Sellers to authorise the execution, delivery and performance of this Agreement; — 239 / 240

(iii) Power of Attorney of the Sellers appointing one or more representatives to act on behalf of the Sellers in the performance of this Agreement, duly notarially attested and legalised or apostilled (as appropriate); — 241 / 242 / 243

(iv) Certificate or Transcript of Registry issued by the competent authorities of the flag state on the date of delivery evidencing the Sellers' ownership of the Vessel and that the Vessel is free from registered encumbrances and mortgages, to be faxed or e-mailed by such authority to the closing meeting with the original to be sent to the Buyers as soon as possible after delivery of the Vessel; — 244 / 245 / 246 / 247 / 248

(v) Declaration of Class or (depending on the Classification Society) a Class Maintenance Certificate issued within three (3) Banking Days prior to delivery confirming that the Vessel is in Class free of condition/recommendation; — 249 / 250 / 251

~~(vi) Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and provide a certificate or other official evidence of deletion to the Buyers promptly and latest within four (4) weeks after the Purchase Price has been paid and the Vessel has been delivered;~~ — 252 / 253 / 254 / 255 / 256 / 257 / 258

~~(vii) A copy of the Vessel's Continuous Synopsis Record certifying the date on which the Vessel ceased to be registered with the Vessel's registry, or, in the event that the registry does not as a matter of practice issue such certificate immediately, a written undertaking from the Sellers to provide the copy of this certificate promptly upon it being issued~~ — 259 / 260 / 261 / 262

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.
5

~~together with evidence of submission by the Sellers of a duly executed Form 2 stating~~ 263
~~the date on which the Vessel shall cease to be registered with the Vessel's registry;~~ 264

**(viii~~vi~~)** Commercial Invoice for the Vessel; 265

~~(ix)    Commercial Invoice(s) for bunkers, lubricating and hydraulic oils and greases;~~ 266

~~(x)    A copy of the Sellers' letter to their satellite communication provider cancelling the~~ 267
~~Vessel's communications contract which is to be sent immediately after delivery of the~~ 268
~~Vessel;~~ 269

**(vii~~xi~~)**    Any additional documents as may reasonably be required by the competent authorities of 270
the Buyers' Nominated Flag State for the purpose of registering the Vessel, provided the 271
Buyers notify the Sellers of any such documents as soon as possible after the date of 272
this Agreement **but in any event not later than fifteen (15) Banking Dates prior to the** 273
**proposed Delivery Date;** ~~and~~

**(xii~~viii~~)**    The Sellers' letter of confirmation that to the best of their knowledge, the Vessel is not 274
black listed by any nation or international organisation;~~.~~ 275

**(ix)    The Seller's Credit Agreement duly signed by the Sellers;**

**(x)    A certificate from a director / officer of the Sellers confirming that all copies of
documents provided under this Agreement are true copies of such documents; and**

**(xi)    The Buyers being satisfied that, in their opinion, the conditions precedent set out in the
Bareboat Charter have been satisfied on the Delivery Date.**

**The conditions set out in this Clause 8(a) are for the sole benefit of the Buyers and may be
waived or deferred by the Buyers in whole or in part and with or without conditions. The
foregoing is without prejudice to the Buyers' rights to require fulfilment of any such conditions
by the Sellers in whole or in part at any time after the date of payment or release of the Purchase
Price (less the Seller's Credit).**

**(b)** At the time of delivery the Buyers shall provide the Sellers with: 276

**(i)**    Evidence that all necessary corporate, shareholder and other action has been taken by 277
the Buyers to authorise the execution, delivery and performance of this Agreement; ~~and~~ 278

**(ii)**    Power of Attorney of the Buyers appointing one or more representatives to act on behalf 279
of the Buyers in the performance of this Agreement, duly notarially attested and legalised 280
or apostilled (as appropriate);~~.~~ 281

**(iii)    The Seller's Credit Agreement duly signed by the Buyers; and**

**(iv)    Provided that, in the Buyers' opinion, Clause 8(a)(xi) above has been satisfied at the
time of delivery, written confirmation from the Buyers addressed to the Sellers that the
conditions precedent set out in the Bareboat Charter have been satisfied on the Delivery
Date.**

**(c)** If any of the documents listed in Sub-clauses (a) and (b) above are not in the English 282
language they shall be accompanied by an English translation by an authorised translator or 283
certified by a lawyer qualified to practice in the country of the translated language. 284

**(d)** The Parties shall to the extent possible exchange copies, drafts or samples of the 285
documents listed in Sub-clause (a) and Sub-clause (b) above for review and comment by the 286
other party not later than _____ (*state number of days*), or if left blank, nine (9) days prior to the 287
Vessel's intended date of readiness for delivery as notified by the Sellers pursuant to 288
Clause 5(b) of this Agreement. 289

**(e)** Concurrent with the exchange of documents in Sub-clause (a) and Sub-clause (b) above, 290
~~the Sellers shall also hand to~~ the Buyers **shall gain title and ownership to** the classification 291
certificate(s) as well as all plans,
drawings  and manuals~~, (excluding ISM/ISPS manuals),~~ which are on board the Vessel **and shall** 292
**remain on board the Vessel**. Other
certificates which are on board the Vessel shall also be handed over to the Buyers unless 293
the Sellers are required to retain same, in which case the Buyers have the right to take copies. 294

**(f)** Other technical documentation which may be in the Sellers' possession shall promptly after 295
delivery be forwarded to the Buyers at their expense, if they so request. The Sellers may keep 296

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.
6

the Vessel's log books but the Buyers have the right to take copies of same. 297

**(g)** The Parties shall sign and deliver to each other a Protocol of Delivery and Acceptance 298
confirming the date and time of delivery of the Vessel from the Sellers to the Buyers. 299

**9.    Encumbrances** 300
The Sellers warrant that the Vessel, at the time of delivery, is free from all charters **(other than the** 301
**Bareboat Charter and the Sub-Charter)**,
encumbrances, mortgages and maritime liens or any other debts whatsoever, and is not subject 302
to Port State or other administrative detentions. The Sellers hereby undertake to indemnify the 303
Buyers against all consequences of claims made against the Vessel which have been incurred 304
prior to the time of delivery. 305

**10.   Taxes, fees and expenses** 306
Any taxes, fees and expenses in connection with the purchase and registration in the Buyers' 307
Nominated Flag State shall be for the ~~Buyers'~~ **Sellers'** account, whereas similar charges in connection 308
with the closing of the Sellers' register shall be for the Sellers' account. 309

**11.   Condition on delivery** 310
The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is 311
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be 312
delivered and taken over **"as** ~~she was~~**is where is"** at the time of ~~inspection, fair wear and tear~~ 313
~~excepted~~**delivery**.

However, the Vessel shall be delivered ~~free of cargo and~~ free of stowaways with her Class 314
maintained without condition/recommendation\*, free of average damage affecting the Vessel's 315
class, and with her classification certificates and national certificates, as well as all other 316
certificates the Vessel had at the time of ~~inspection~~**delivery**, valid and unextended without 317
condition/recommendation\* by the Classification Society or the relevant authorities at the time 318
of delivery. 319

~~"inspection" in this~~ ~~Clause 11,~~ ~~shall mean the Buyers' inspection according to Clause 4(a)~~ ~~or~~ 320
~~4(b) (Inspections), if applicable. If the Vessel is taken over without inspection, the date of this~~ 321
~~Agreement shall be the relevant date.~~ 322
**See also Additional Clause 20 (Delivery under Bareboat Charter)**

*\*Notes and memoranda, if any, in the surveyor's report which are accepted by the Classification* 323
*Society without condition/recommendation are not to be taken into account.* 324

~~12.~~  ~~**Name/markings**~~ 325
~~Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel~~ 326
~~markings.~~ 327

**13.   Buyers' default** 328
~~Should the Deposit not be lodged in accordance with~~ ~~Clause 2~~ ~~(Deposit), the Sellers have the~~ 329
~~right to cancel this Agreement, and they shall be entitled to claim compensation for their losses~~ 330
~~and for all expenses incurred together with interest.~~ 331

Should the Purchase Price **(less the Seller's Credit)** not be paid in accordance with Clause ~~3~~**21** 332
(Payment), the Sellers
have the right to cancel this Agreement.~~, in which case the Deposit together with interest~~ 333
~~earned, if any, shall be released to the Sellers. If the Deposit does not cover their loss, the~~ 334
~~Sellers shall be entitled to claim further compensation for their losses and for all expenses~~ 335
~~incurred together with interest.~~ 336

**14.   Sellers' default** 337
Should the Sellers ~~fail to give Notice of Readiness in accordance with~~ ~~Clause 5(b)~~ ~~or~~ fail to be 338
ready to validly complete a legal transfer by the Cancelling Date the Buyers shall have the 339
option of cancelling this Agreement. ~~If after Notice of Readiness has been given but before~~ 340
~~the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not~~ 341
~~made physically ready again by the Cancelling Date and new Notice of Readiness given, the~~ 342
~~Buyers shall retain their option to cancel. In the event that the Buyers elect to cancel this~~ 343
~~Agreement, the Deposit together with interest earned, if any, shall be released to them~~ 344
~~immediately.~~ 345

Should the Sellers ~~fail to give Notice of Readiness by the Cancelling Date or~~ fail to be ready to 346
validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers 347
for their loss and for all expenses together with interest if their failure is due to proven 348
negligence and whether or not the Buyers cancel this Agreement. 349

**15.   Buyers' representatives** 350
~~After this Agreement has been signed by the Parties and the Deposit has been lodged, the~~ 351

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~Buyers have the right to place two (2) representatives on board the Vessel at their sole risk and~~        352
~~expense.~~        353

~~These representatives are on board for the purpose of familiarisation and in the capacity of~~        354
~~observers only, and they shall not interfere in any respect with the operation of the Vessel. The~~        355
~~Buyers and the Buyers' representatives shall sign the Sellers' P&I Club's standard letter of~~        356
~~indemnity prior to their embarkation.~~        357

**16.  Law and Arbitration**        358
**(a)** *This Agreement shall be governed by and construed in accordance with English law and        359
any dispute arising out of or in connection with this Agreement shall be referred to arbitration in        360
London in accordance with the Arbitration Act 1996 or any statutory modification or re-        361
enactment thereof save to the extent necessary to give effect to the provisions of this Clause.        362

The arbitration shall be conducted in accordance with the London Maritime Arbitrators        363
Association (LMAA) Terms current at the time when the arbitration proceedings are        364
commenced.        365

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall        366
appoint its arbitrator and send notice of such appointment in writing to the other party requiring        367
the other party to appoint its own arbitrator within fourteen (14) calendar days of that notice and        368
stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own        369
arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the        370
other party does not appoint its own arbitrator and give notice that it has done so within the        371
fourteen (14) days specified, the party referring a dispute to arbitration may, without the        372
requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator        373
and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on        374
both Parties as if the sole arbitrator had been appointed by agreement.        375

In cases where neither the claim nor any counterclaim exceeds the sum of US$100,000 the        376
arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at        377
the time when the arbitration proceedings are commenced.        378

~~**(b)** *This Agreement shall be governed by and construed in accordance with Title 9 of the~~        379
~~United States Code and the substantive law (not including the choice of law rules) of the State~~        380
~~of New York and any dispute arising out of or in connection with this Agreement shall be~~        381
~~referred to three (3) persons at New York, one to be appointed by each of the parties hereto,~~        382
~~and the third by the two so chosen; their decision or that of any two of them shall be final, and~~        383
~~for the purposes of enforcing any award, judgment may be entered on an award by any court of~~        384
~~competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the~~        385
~~Society of Maritime Arbitrators, Inc.~~        386

~~In cases where neither the claim nor any counterclaim exceeds the sum of US$ 100,000 the~~        387
~~arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the~~        388
~~Society of Maritime Arbitrators, Inc.~~        389

~~**(c)** This Agreement shall be governed by and construed in accordance with the laws of~~ _____        390
~~(state place) and any dispute arising out of or in connection with this Agreement shall be~~        391
~~referred to arbitration at~~ _____ ~~(state place), subject to the procedures applicable there.~~        392

~~*16(a), 16(b) and 16(c) are alternatives; delete whichever is not applicable. In the absence of~~        393
~~deletions, alternative 16(a) shall apply.~~        394

**17.  Notices**        395
All notices to be provided under this Agreement shall be in writing.        396

Contact details for recipients of notices are as follows:        397

For the Buyers:        398
**c/o Oaktree Capital Management, L.P.**
**333 South Grand Avenue**
**Los Angeles**
**CA 90071**
**United States of America**

**with a copy to:**

**Oaktree Capital Management (Europe) LLP of Verde**
**10 Bressenden Place**
**London**
**England**

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of
any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association
assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.
8

**SW1E 5DH**

**Email:**
**info@fleetscape.com / accounting@fleetscape.com / jbaker@fleetscape.com**

For the Sellers:                                                                                399
**Levent Mah.**
**Comert Sokak**
**YKB Plaza A Blok K. 18**
**34330 Levent**
**Istanbul**
**Turkey**
**Fax: +90 212 325 5814**

**18.  Entire Agreement**                                                                       400
The written terms of this Agreement comprise the entire agreement between the Buyers and        401
the Sellers in relation to the sale and purchase of the Vessel and supersede all previous       402
agreements whether oral or written between the Parties in relation thereto.                     403

Each of the Parties acknowledges that in entering into this Agreement it has not relied on and  404
shall have no right or remedy in respect of any statement, representation, assurance or         405
warranty (whether or not made negligently) other than as is expressly set out in this Agreement. 406

Any terms implied into this Agreement by any applicable statute or law are hereby excluded to   407
the extent that such exclusion can legally be made. Nothing in this Clause shall limit or exclude 408
any liability for fraud.                                                                         409

For and on behalf of the Sellers              For and on behalf of the Buyers
**Advantage Spring Shipping LLC**             **Fleetscape Spring, LLC**
Name: Kivanc Kanan                            Name: _____

Title: Attorney in fact                       Title: _____ Jennifer Ashford
                                                              Attorney in fact

This document is a computer generated SALEFORM 2012 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

9

**ADDITIONAL CLAUSES**
**TO MEMORANDUM OF AGREEMENT FOR**
**m.v. "ADVANTAGE SPRING"**

19.  **Sellers' representation**

The Sellers represent and warrant as at the date hereof and on the Delivery Date that:

(a)  they are the registered legal owners of the Vessel;

(b)  they are not a Prohibited Person; and

(c)  neither themselves nor any of their directors, officers or employees or any person acting on their behalf has received notice or are aware of any claim, action, suit, proceeding or investigation against any of them or the Vessel with respect to Sanctions by a Sanctions Authority.

20.  **Delivery under Bareboat Charter**

(a)  Immediately after the delivery of the Vessel under this Agreement, the Vessel shall be delivered to the Sellers as charterers pursuant a bareboat charterparty dated on or about the date of this Agreement (the **"Bareboat Charter"**) made or to be made (as the case may be) between the Buyers (as owners) and the Sellers (as charterers).

(b)  The Sellers shall be fully responsible for the Buyers' fulfilment of physical delivery as new owner of the Vessel to the Sellers (as charterers) under the Bareboat Charter. The Buyers' obligation to take delivery of the Vessel under this Agreement is subject to the Sellers (as charterers) taking delivery of the Vessel immediately thereafter under the Bareboat Charter. Without prejudice to the foregoing, the Sellers' obligation to deliver the Vessel under this Agreement is subject to the Buyers delivering the same under the Bareboat Charter immediately after taking delivery of the Vessel under this Agreement.

(c)  If the Bareboat Charter is cancelled, terminated or otherwise ceases to be in full force and effect prior to the delivery of the Vessel under this Agreement or the delivery of the Vessel does not take place under the Bareboat Charter by the Cancelling Date, this Agreement shall be null and void, provided however that (i) Clause 13 (Buyers' default) shall survive and entitle the Sellers to compensation for its losses and expenses due to the default of the Buyers and (ii) Clause 14 (Sellers' default) shall survive and entitle the Buyers to compensation for its losses and expenses due to the default of the Sellers.

21.  **Payment**

(a)  The Sellers and the Buyers agree that the Purchase Price less the Seller's Credit shall be paid by the Buyers free of bank charges, any deduction Taxes or withholding whatsoever as follows:

(A)  if agreed by the Sellers' Bank, the Redemption Amount shall be transferred to the bank account of the Senior Agent's lawyers on or before two (2) Banking Days prior to the Delivery Date (the **"Prepositioning Date"**) **provided that** on or before the Prepositioning Date the Senior Agent's lawyers shall issue a letter

of undertaking to the Buyers, the Senior Agent and the Sellers' Bank in a format acceptable to the Buyers and the Sellers setting out the basis on which the Senior Agent's lawyers shall hold and release the Redemption Amount, and the Redemption Amount shall be so released to the Sellers' Bank with value date as of the Delivery Date and if such manner is not agreed by the Sellers' Bank, in such other manner as may be agreed between the Buyers and the Sellers; and

(B)     on the Delivery Date any Surplus Cash shall be retained by the Sellers, the Guarantor or one or more of the Related Owners.

(b)     the Buyers' obligation to pay the Purchase Price is always subject to the Buyers being satisfied that:

(A)     the conditions precedent required under Clause 8 (*Conditions Precedent*) (other than the conditions precedent required under paragraphs (a)(i), (a)(iv), (a)(v), (a)(vi), and (a)(x) of Clause 8 (*Conditions Precedent*), together the "**Delivery Date CPs**") have been received by the Buyers;

(B)     the Delivery Date CPs will be received on or before the Delivery Date;

(C)     the conditions precedent listed in Schedule 2, Part A, Part B and Part C of the Senior Loan Agreement have been satisfied or will be satisfied on or before the Delivery Date; and

(D)     the Buyers have received:

(i)     the Redemption Statement;

(ii)     such evidence as the Buyers may require that the Advantage Group has or will have cash reserves of at least US$13,000,000 on the later of (a) the Delivery Date of the Vessel and (b) the date of delivery of the final Related Vessel to be delivered under a Related MOA;

(iii)     a certificate duly signed by the chief executive officer or chief financial officer of the Sellers attaching:

(1)     the unaudited financial statements of the Sellers and the unaudited consolidated financial statements of the Guarantor for the financial quarter ended 30 September 2018;

(2)     a statement of the cash position of the Sellers; and

(3)     such other financial information in relation to the Sellers or the Guarantor as the Buyers may reasonably request.

(c)     The Sellers agree to release, discharge, defend, indemnify, waive and hold harmless the Buyers from and against any liability, obligation or claim which may be asserted, claimed or recovered against the Buyers for any reason directly arising out of or in any manner connected with the release or the failure to release (as the

case may be) of the Redemption Amount by the Sellers' Bank (as provided for in paragraph (a) above) except if the same solely results from or is a direct consequence of the Buyers' failure to perform their obligations under or in breach of any provisions under this Agreement or the Bareboat Charter.

(d)  If for any reason any part of the Redemption Amount paid to the Sellers' Bank by the Buyers is neither released in accordance with paragraph (b) above nor returned to the Buyers or (as the case may be) an Agent within five (5) Banking Days after the Cancelling Date, the Sellers shall refund to the Buyers or (as the case may be) an Agent that part of the Redemption Amount within six (6) Banking Days after the Cancelling Date.

## 22.   Further definitions

22.1  In this Agreement:

"**Delivery Date**" means the date of delivery of the Vessel by the Sellers to the Buyers pursuant to this Agreement.

"**Prohibited Person**" means any person or entity, whether or not having a separate legal personality (a "**Person**"), whether designated by name or by reason of being included in a class of persons, that is, or that is owned or controlled by Persons that are or any vessel that is:

(a)  listed on, or directly or indirectly owned or controlled by a Person listed on, a Sanctions List, or a person acting on behalf of such a Person;

(b)  located or resident in, incorporated or organised under the laws of, or owned or (directly or indirectly) controlled by, or acting on behalf of, a Person located or resident in a country or territory that is or whose government is the subject of Sanctions, broadly prohibiting dealings with such government, country or territory including country or territory wide Sanctions and in each case thereby itself becomes the target of such Sanctions;

(c)  otherwise a target of Sanctions ("**target of Sanctions**", for the purpose of this paragraph (c), amongst other things, signifying a Person with whom a US Person or other national of a Sanctions Authority would be prohibited or restricted by law from engaging in trade, business or other activities or against whom Sanctions are otherwise directed); or

(d)  acting our purporting to act on behalf of any of the Persons listed in paragraphs (a) to (c) above with which any Finance Party is prohibited from (i) dealing or (ii) otherwise engaging in any transaction pursuant to Sanctions.

"**Redemption Amount**" means the amount owing by the Sellers to the Sellers' Bank in respect of the existing financing of the Vessel.

"**Redemption Statement**" means a statement issued by the Sellers' Bank to the Sellers evidencing the Redemption Amount or such other evidence of the Redemption Amount as is acceptable to the Buyers and the Agents (acting on the instructions of the relevant Lenders under the relevant Finance Documents) (acting reasonably).

**"Sanctions"** means any trade, economic or financial sanctions, laws, regulations, embargoes, freezing provisions, prohibitions or other restrictive measures imposed, administered, enacted or enforced from time to time by any Sanctions Authority.

**"Sanctions Authority"** means the US, including without limitation the Office of Foreign Assets Control of the U.S. Department of the Treasury, the U.S. Department of State, the U.S. Department of Commerce, the United Nations Security Council, the European Union or any of its member states, including without limitation the Federal Republic of Germany, including without limitation the German Bundesbank, Federal Ministry of Economics and Energy (*Bundesministerium für Wirtschaft und Energie*), the United Kingdom, including Her Majesty's Treasury of the United Kingdom, Switzerland, including without limitation the State Secretariat for Economic Affairs of Switzerland (SECO) or the Swiss Directorate of International Law (DIL), Japan or, without prejudice to the foregoing, any other relevant sanctions authority enacting, administering or imposing Sanctions applicable by law to any Finance Party or an Obligor.

**"Sanctions List"** means any list of specially designated nationals and blocked persons or designated persons or vessels, the Sectoral Sanctions Identification List or the List of Foreign Sanctions Evaders (or equivalent) or any similar list maintained by a Sanctions Authority as a measure of imposing, administering, enacting or enforcing Sanctions, in each case as amended, supplemented or substituted from time to time.

**"Sectoral Sanctions Identification List"** means a list identifying certain countries and/or certain persons operating in certain sectors of activity which are the subject of Sanctions (e.g. the sectoral sanctions identifications list published by the Office of Foreign Assets Control of the U.S. Department of the Treasury).

**"Seller's Credit"** means five million, five hundred and thirty five thousand US Dollars (US$ 5,535,000) advanced by the Sellers to the Buyers as deferred payment of part of the purchase price of the Vessel pursuant to this Agreement and/or the principal amount thereof outstanding from time to time following any set-off pursuant to the Seller's Credit Agreement.

**"Seller's Credit Agreement"** means the seller's credit agreement dated on or around the date of this Agreement entered into between the Buyers and the Sellers pursuant to which the Sellers agreed to advance the Seller's Credit to the Buyers.

**"Senior Finance Party"** means a party defined as "Finance Party" under the Senior Loan Agreement from time to time and **"Senior Finance Parties"** means together all parties defined as "Finance Parties" under the Senior Loan Agreement from time to time.

**"Senior Lender"** means a party defined as "Lender" under the Senior Loan Agreement from time to time and **"Senior Lenders"** means together all parties defined as "Lenders" under the Senior Loan Agreement from time to time.

**"Senior Loan"** means a term loan facility in the total amount of up to one hundred and ninety million US Dollars (US$190,000,000) to be made available by the Senior Lenders to, among others, the Buyers under the Senior Loan Agreement to, among other things, assist the Buyers in financing the Purchase Price.

**"Senior Loan Agreement"** means an agreement dated on or around the date of this Agreement entered into between, among others, the Buyers and the Senior Finance Parties pursuant to which the Senior Loan will be made available to, among others, the Buyers (as such agreement may be amended, restated, supplemented or varied from time to time).

**"Surplus Cash"** means the amount by which the Purchase Price exceeds the Redemption Amount, and if the Redemption Amount exceeds the Purchase Price the Surplus Cash shall

be deemed zero.

**"Trading Limits"** means worldwide trading always within Institute Navigation Limits; always via safe/always afloat ice fee port(s)/berth(s) excluding Cuba (unless the United States of America sanctions are lifted), Iran, North Korea, war/war risked countries and countries which result in blacklisting/sanctions by the United Nations, the United States of America, the United Kingdom or the European Union or its member states.

22.2    Unless otherwise specified in this Agreement, or unless the context otherwise requires, all words and expressions defined or explained in the Bareboat Charter shall have the same meanings when used in this Agreement.

**In witness** of which the parties to this Agreement have executed this Agreement the day and year first before written.

**THE SELLERS**

**ADVANTAGE SPRING SHIPPING LLC**

by:

Name: *Kivanc Kanan*

Title: *Attorney in fact*

Date: *1 February 2019*

**THE BUYERS**

**FLEETSCAPE SPRING, LLC**

by:

Name:

Title:

Date: *Jennifer Ashford Attorney in fact 1 February 2019*