# EXHIBIT F

# Seller's Credit Agreement

## m.v. "ADVANTAGE SPRING"

Dated   1   February   2019

(1)   Advantage Spring Shipping LLC

(2)   Fleetscape Spring, LLC

Stephenson Harwood LLP
1 Finsbury Circus, London EC2M 7SH
T: +44 20 7329 4422 | F: +44 20 7329 7100
DX: 64 Chancery Lane | www.shlegal.com



**Contents**

|   |   | Page |
|---|---|---|
| 1 | Definitions and interpretation | 1 |
| 2 | Grant of seller's credit and drawdown | 2 |
| 3 | Interest and amortisation | 3 |
| 4 | Repayment and offsetting of the Seller's Credit | 3 |
| 5 | Buyer's right to set off | 4 |
| 6 | Payments | 4 |
| 7 | Subordination | 4 |
| 8 | Assignment | 4 |
| 9 | Notices | 4 |
| 10 | Rights of third parties | 4 |
| 11 | Governing law and arbitration | 5 |

**Seller's Credit Agreement**

Dated 1 february 2019

**Between:**

(1)    **Advantage Spring Shipping LLC**, a company incorporated according to the law of The Republic of the Marshall Islands whose registered address is at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (the "**Seller**"); and

(2)    **Fleetscape Spring, LLC**, a company incorporated according to the law of The Republic of the Marshall Islands whose registered address is at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH96960, Marshall Islands (the "**Buyer**"),

**Whereas:**

(A)    Pursuant to a memorandum of agreement dated 1 february 2019 (the "**MOA**"), the Seller has agreed to sell and the Buyer has agreed to purchase the vessel m.v. "ADVANTAGE SPRING" (IMO no. 9466582) (the "**Vessel**").

(B)    In consideration of the Buyer agreeing to purchase the Vessel subject to the terms and conditions of the MOA and to charter the Vessel (as owner) to the Seller (as charterer), the Seller has agreed with the Buyer that a part of the Purchase Price, in the amount of the Seller's Credit, shall be deferred.

**It is agreed** as follows:

**1    Definitions and interpretation**

1.1    In this Agreement:

"**Charter**" means the bareboat charter party together with additional clauses dated on or around the date of this Agreement, entered into between the Seller and the Buyer, pursuant to which the Buyer will charter Vessel to the Seller on the terms and conditions set out therein.

"**Charterer Purchase Price**" means any purchase price payable by the Seller to the Buyer in respect of the Vessel pursuant to the Charter, including without limitation following the exercise of the Purchase Option, the Put Option or the occurrence of a Termination Event.

"**Party**" means a party to this Agreement;

"**Purchase Option**" means the Seller's Purchase Option in respect of the Vessel pursuant to clause 53 (*Purchase Option*) of the Charter.

"**Purchase Price**" means USD30,825,000, being the price payable by the Buyer to the Seller for the Vessel under the MOA.

"**Put Option**" means the Buyer's put option in respect of the Vessel pursuant to clause 54 (*Put Option*) of the Charter.

"**Seller's Credit**" means USD5,535,000 granted by the Seller to the Buyer as deferred payment of part of the Purchase Price.

"**Seller's Credit Period**" means the period commencing from the Actual Delivery Date and ending on the day the Seller's Credit has been repaid, applied in full or offset against the Purchase Option Price under the terms of this Agreement.

1.2 Unless otherwise specified in this Agreement, or unless the context otherwise requires, all words and expressions defined or explained in the Charter shall have the same meanings when used in this Agreement.

1.3 In this Agreement:

    1.3.1 words denoting the plural number include the singular and vice versa;

    1.3.2 words denoting persons include corporations, partnerships, associations of persons (whether incorporated or not) or governmental or quasi-governmental bodies or authorities and vice versa;

    1.3.3 references to Clauses are references to clauses of this Agreement;

    1.3.4 references to this Agreement include the recitals to this Agreement;

    1.3.5 the headings and contents page(s) are for the purpose of reference only, have no legal or other significance, and shall be ignored in the interpretation of this Agreement;

    1.3.6 references to any document (including, without limitation, to any of the Transaction Documents) are, unless the context otherwise requires, references to that document as amended, supplemented, novated or replaced from time to time;

    1.3.7 references to statutes or provisions of statutes are references to those statutes, or those provisions, as from time to time amended, replaced or re-enacted;

    1.3.8 a Termination Event is "continuing" if it has not been waived; and

    1.3.9 references to the Buyer and the Seller include their successors, transferees and assignees.

## 2 Grant of seller's credit and drawdown

2.1 The Seller's Credit shall be deemed granted by the Seller to the Buyer as from the time the Buyer and Seller have duly executed (a) the protocol of delivery and acceptance for the Vessel under the MOA and (b) the protocol of delivery and acceptance for the Vessel under the Charter.

2.2 Subject to the provisions of this Agreement, any deduction of, reduction of, or set off against the Seller's Credit pursuant to this Agreement from a sum to be paid to the Buyer by the Seller under the Charter shall be deemed to be a repayment of the Seller's Credit under this Agreement. The Buyer may not set off amounts outstanding under this Agreement except (a) pursuant to Clause 4.3.1, 4.4.1 or 5; or (b) otherwise with the prior written consent of the Seller. The Seller may not set off any obligations owed by the Buyer against amounts outstanding under this Agreement, except (a) pursuant to Clause 4.3.1 or 4.4.1 or (b) otherwise with the prior written consent of the Buyer.

## 3 Interest and amortisation

The Seller's Credit shall be non-interest bearing and non-amortising.

## 4 Repayment and offsetting of the Seller's Credit

4.1 Subject to the terms hereof and clause 53 and clause 54 of the Charter, the Seller's Credit becomes repayable upon a date being the earlier of:

    4.1.1 the date on which the Buyer receives either:

        (a) the applicable amount payable by the Seller to the Buyer on delivery of the Vessel to the Seller, as buyer, following the exercise of either the Purchase Option or the Put Option; or

        (b) the Termination Sum following a Termination Event pursuant to the Charter;

    4.1.2 the date falling six (6) months after the Termination Payment Date; and

    4.1.3 the date on which the Vessel is sold by the Buyer to a third party,

**provided that** this Clause 4.1 shall not apply in the event that the Vessel becomes a Total Loss or the enforcement by the Senior Security Trustee of the mortgage registered against the Vessel in its favour in relation to which Clause 4.2 shall apply.

4.2 The Seller's Credit shall become due and payable:

    4.2.1 in the event that the Vessel becomes a Total Loss, on the earlier of (a) receipt of insurance proceeds and (b) one hundred and twenty (120) days after the Total Loss Date; and

    4.2.2 following enforcement by the Senior Security Trustee of the mortgage registered against the Vessel in its favour, unless the Charterers are in default under the Charter,

subject to the Indebtedness having been discharged in full.

4.3 If the Purchase Option Price is greater than the Seller's Credit then:

    4.3.1 the Purchase Option Price shall be offset against the Seller's Credit;

    4.3.2 the Buyer shall not be required to make any payment to the Seller in respect of the Seller's Credit.

4.4 If the Purchase Option Price is less than the Seller's Credit then:

    4.4.1 the Seller's Credit shall be offset against the Purchase Option Price;

    4.4.2 the Seller shall not be required to make any payment to the Buyer in respect of the Purchase Option Price; and

    4.4.3 the Buyer shall pay the amount of the Seller's Credit less the amount of the Purchase Option Price to the Seller on the date the Purchase Option Price is due and payable, and if it does not do so, the Seller shall be entitled to claim compensation for its losses and for all expenses incurred together with interest from the Buyer.

4.5 Clauses 54(d), (e), (f), (g) and (h) of the Charter shall apply to this Agreement as if they are set out in full and as if (a) references to the Charterers are references to the Seller, (b) as if references to the Owners are references to the Buyer and (c) as if references to the Charter are references to this Agreement.

4.6 The Buyer shall be entitled to repay the Seller's Credit in whole or in part at any time by giving the Seller not less than 3 Business Days irrevocable notice, subject to the Indebtedness having been discharged in full.

**5   Buyer's right to set off**

If the Seller fails to perform its obligations under the Bareboat Charter (including without limitation pursuant to the Purchase Option or the Put Option), the Buyer shall have the right (but not the obligation) to set off any obligation due from the Seller under or in relation to the Charter against any amount owed by the Buyer under this Agreement. The Buyer may exercise this right of set-off by serving written notice on the Seller setting out the amount which is to be set off pursuant to this Clause. Such amount having been used for set off will be regarded as reimbursed, and reduce the Seller's Credit correspondingly.

**6   Payments**

6.1 All payments to be made by the Buyer pursuant to this Agreement shall be made in USD to an account designated by the Seller.

6.2 If any payment pursuant to this Agreement is due on a day which is not a Business Day, payment shall be made on the next Business Day.

**7   Subordination**

The Seller's rights under this Agreement shall be fully subordinated to and rank in priority after all rights and claims of the Finance Parties against the Buyer.

**8   Assignment**

8.1 The Seller may not assign any of its rights or obligations under this Agreement without the prior written consent of the Buyer.

8.2 The Buyer may not assign any of their rights or obligations under this Agreement to any party, other than a Security Trustee, without the prior written consent of the Seller.

**9   Notices**

The provisions of clause 65 (*Notices*) of the Charter shall (mutatis mutandis) apply to this Agreement as if it were set out in full with references to this Agreement substituted for references to the Charter, with references to the Buyer substituted for references to the Owners and with references to the Seller substituted for references to the Charterers.

**10   Rights of third parties**

A person who is not a Party has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement.

## 11 Governing law and arbitration

11.1 This Agreement shall be governed by and construed in all respects in accordance with English law and any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

11.2 The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

11.3 The reference shall be to three (3) arbitrators. A Party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other Party requiring the other Party to appoint its own arbitrator within fourteen (14) calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other Party appoints its own arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the other Party does not appoint its own arbitrator and give notice that is has done so within the fourteen (14) days specified, the Party referring a dispute to arbitration may, without the requirement of any further prior notice to the other Party, appoint its arbitrator as sole arbitrator and shall advise the other Party accordingly. The award of a sole arbitrator shall be binding on both Parties as if he/she had been appointed by agreement.

11.4 Nothing herein shall prevent the Parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

11.5 In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the Parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

**This Agreement has been entered into on the date stated at the beginning of this Agreement.**

**Signature page**

For and on behalf of Seller
**Advantage Spring Shipping LLC**

By: _____
Name: Civanc Kanan
Title: Attorney-in-fact

For and on behalf of Buyer
**Fleetscape Spring, LLC**

By: _____
Name:
Title:

Jennifer Ashford
Attorney in fact